## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## HATTIESBURG DIVISION

JAMES E. CROUCH                                                **PLAINTIFF**

**VERSUS**                          CIVIL ACTION NO. .2:05-CV-00045-KS-JMR

AMSOUTH BANK, INA SUE CROUCH
and JOHN and JANE DOES 1-10                          **DEFENDANTS**

### DECLARATION OF PAUL J. DELCAMBRE, JR. IN
### OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

My name is Paul J. Delcambre, Jr. and I am an adult resident citizen of the state of Mississippi and reside in Gulfport, Mississippi. I am an attorney with Balch & Bingham LLP in its Gulfport, Mississippi office. I make this Declaration from personal knowledge.

I am an attorney who represents AmSouth Bank ("AmSouth") in the matter filed against it by James E. Crouch ("Plaintiff"). As such, I am familiar with the documents attached as Exhibits to this Declaration and verify that Exhibits A, B and C are true and correct copies of correspondence that was exchanged between counsel for AmSouth and Plaintiff in this matter. I was the author of Exhibits A and C and mailed same to counsel for Plaintiff. I received Exhibit B from counsel for Plaintiff.

Pursuant to 28 U.S.C. Section 1746, I make this declaration under penalty of perjury that the foregoing is true and correct.

Paul J. Delcambre, Jr.

**BℨB**

BALCH & BINGHAM LLP

Alabama · Georgia · Mississippi · Washington, D.C.

Paul J. Delcambre
(228) 214-0409

(888) 506-8672 (direct fax)
pdelcambre@balch.com

June 24, 2004

<u>BY FACSIMILE 601-544-8889</u>

Glenn L. White, Esq.
Holmes & White, PLLC
P.O. Box 662
Petal, MS 39465

Re:    **James E. Crouch v. AmSouth Bank**
       **Cause Number 02-0672-GN-W**
       **Our File No. 007001/403**

Dear Glenn:

As you will recall from our discussions regarding your motion to compel discovery responses, the primary concern for my client is disclosure of information protected under the Gramm-Leach-Bliley Act, 15 U.S.C. §6801 et seq. and its regulations, 16 C.F.R. §§ 313 and 314. My original order proposed that we give notice to anyone else identified in the Bank's records that may have an interest in the account and give them a certain period of time to enter an appearance and object to the disclosure. Unfortunately, it appears that such would be ineffective to protect AmSouth.

I am enclosing herein, copies of the relevant sections from the Code of Federal Regulations. Under the Act and the Regulations, it does not appear that my client can effectively have a customer waive his or her rights under the act by failing to enter an appearance. It appears that they may have to take some affirmative action to do so, and even then, if they opt out of the disclosure, the documents may remain confidential under the Act and the Regulations and my client may not be able to release the documents.

I am trying to contact all parties who may have an interest and obtain from them an authorization to release the records. If they object, it may require that they be made a party to the proceedings in order to protect my client's interest. It seems that the act makes them a necessary party.



Glenn L. White, Esq.
June 24, 2004
Page 2


      Please be assured that I am not trying to avoid a resolution of this issue, I am just trying to protect my client's interest.

                    Sincerely,

                    BALCH & BINGHAM LLP

                    Paul J. Delcambre, Jr.

PJD:lh

cc: Laura Betty

**Federal Trade Commission**                          **§ 313.1**

obtain access to information of their choice online, and on the availability of websites directed to children; and report to Congress on the results of this review.

**§ 312.12  Severability.**

The provisions of this part are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

## PART 313—PRIVACY OF CONSUMER FINANCIAL INFORMATION

Sec.
313.1  Purpose and scope.
313.2  Rule of construction.
313.3  Definitions.

### Subpart A—Privacy and Opt Out Notices

313.4  Initial privacy notice to consumers required.
313.5  Annual privacy notice to customers required.
313.6  Information to be included in privacy notices.
313.7  Form of opt out notice to consumers; opt out methods.
313.8  Revised privacy notices.
313.9  Delivering privacy and opt out notices.

### Subpart B—Limits on Disclosures

313.10  Limitation on disclosure of nonpublic personal information to nonaffiliated third parties.
313.11  Limits on redisclosure and reuse of information.
313.12  Limits on sharing account number information for marketing purposes.

### Subpart C—Exceptions

313.13  Exception to opt out requirements for service providers and joint marketing.
313.14  Exceptions to notice and opt out requirements for processing and servicing transactions.
313.15  Other exceptions to notice and opt out requirements.

### Subpart D—Relation to Other Laws; Effective Date

313.16  Protection of Fair Credit Reporting Act.
313.17  Relation to State laws.
313.18  Effective date; transition rule.

APPENDIX A TO PART 313—SAMPLE CLAUSES

AUTHORITY: 15 U.S.C. 6801 *et seq.*

SOURCE: 65 FR 33677, May 24, 2000, unless otherwise noted.

**§ 313.1  Purpose and scope.**

(a) *Purpose.* This part governs the treatment of nonpublic personal information about consumers by the financial institutions listed in paragraph (b) of this section. This part:

(1) Requires a financial institution in specified circumstances to provide notice to customers about its privacy policies and practices;

(2) Describes the conditions under which a financial institution may disclose nonpublic personal information about consumers to nonaffiliated third parties; and

(3) Provides a method for consumers to prevent a financial institution from disclosing that information to most nonaffiliated third parties by "opting out" of that disclosure, subject to the exceptions in §§ 313.13, 313.14, and 313.15.

(b) *Scope.* This part applies only to nonpublic personal information about individuals who obtain financial products or services primarily for personal, family or household purposes from the institutions listed below. This part does not apply to information about companies or about individuals who obtain financial products or services for business, commercial, or agricultural purposes. This part applies to those "financial institutions" and "other persons" over which the Federal Trade Commission ("Commission") has enforcement authority pursuant to Section 505(a)(7) of the Gramm-Leach-Bliley Act. An entity is a "financial institution" if its business is engaging in a financial activity as described in Section 4(k) of the Bank Holding Company Act of 1956, 12 U.S.C. 1843(k), which incorporates by reference activities enumerated by the Federal Reserve Board in 12 CFR 211.5(d) and 12 CFR 225.28. The "financial institutions" subject to the Commission's enforcement authority are those that are not otherwise subject to the enforcement authority of another regulator under Section 505 of the Gramm-Leach-Bliley Act. More specifically, those entities include, but are not limited to, mortgage lenders, "pay day" lenders, finance companies,

§313.2

16 CFR Ch. I (1–1–04 Edition)

mortgage brokers, account servicers, check cashers, wire transferors, travel agencies operated in connection with financial services, collection agencies, credit counselors and other financial advisors, tax preparation firms, non-federally insured credit unions, and investment advisors that are not required to register with the Securities and Exchange Commission. They are referred to in this part as "You." The "other persons" to whom this part applies are third parties that are not financial institutions, but that receive nonpublic personal information from financial institutions with whom they are not affiliated. Nothing in this part modifies, limits, or supersedes the standards governing individually identifiable health information promulgated by the Secretary of Health and Human Services under the authority of sections 262 and 264 of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. 1320d–1320d–8. Any institution of higher education that complies with the Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232g, and its implementing regulations, 34 CFR part 99, and that is also a financial institution subject to the requirements of this part, shall be deemed to be in compliance with this part if it is in compliance with FERPA.

§313.2  Rule of construction.

The examples in this part and the sample clauses in Appendix A of this part are not exclusive. Compliance with an example or use of a sample clause, to the extent applicable, constitutes compliance with this part. For non-federally insured credit unions, compliance with an example or use of a sample clause contained in 12 CFR part 716, to the extent applicable, constitutes compliance with this part. For intrastate securities broker-dealers and investment advisors not registered with the Securities and Exchange Commission, compliance with an example or use of a sample clause contained in 17 CFR part 248, to the extent applicable, constitutes compliance with this part.

§313.3  Definitions.

As used in this part, unless the context requires otherwise:

(a) *Affiliate* means any company that controls, is controlled by, or is under common control with another company.

(b)(1) *Clear and conspicuous* means that a notice is reasonably understandable and designed to call attention to the nature and significance of the information in the notice.

(2) *Examples*—(i) *Reasonably understandable.* You make your notice reasonably understandable if you:

(A) Present the information in the notice in clear, concise sentences, paragraphs, and sections;

(B) Use short explanatory sentences or bullet lists whenever possible;

(C) Use definite, concrete, everyday words and active voice whenever possible;

(D) Avoid multiple negatives;

(E) Avoid legal and highly technical business terminology whenever possible; and

(F) Avoid explanations that are imprecise and readily subject to different interpretations.

(ii) *Designed to call attention.* You design your notice to call attention to the nature and significance of the information in it if you:

(A) Use a plain-language heading to call attention to the notice;

(B) Use a typeface and type size that are easy to read;

(C) Provide wide margins and ample line spacing;

(D) Use boldface or italics for key words; and

(E) In a form that combines your notice with other information, use distinctive type size, style, and graphic devices, such as shading or sidebars, when you combine your notice with other information.

(iii) *Notices on web sites.* If you provide a notice on a web page, you design your notice to call attention to the nature and significance of the information in it if you use text or visual cues to encourage scrolling down the page if necessary to view the entire notice and ensure that other elements on the web site (such as text, graphics, hyperlinks, or sound) do not distract attention from the notice, and you either:

(A) Place the notice on a screen that consumers frequently access, such as a

394

**Federal Trade Commission**      **§313.3**

page on which transactions are conducted; or

(B) Place a link on a screen that consumers frequently access, such as a page on which transactions are conducted, that connects directly to the notice and is labeled appropriately to convey the importance, nature and relevance of the notice.

(c) *Collect* means to obtain information that you organize or can retrieve by the name of an individual or by identifying number, symbol, or other identifying particular assigned to the individual, irrespective of the source of the underlying information.

(d) *Company* means any corporation, limited liability company, business trust, general or limited partnership, association, or similar organization.

(e)(1) *Consumer* means an individual who obtains or has obtained a financial product or service from you that is to be used primarily for personal, family, or household purposes, or that individual's legal representative.

(2) *Examples*—(i) An individual who applies to you for credit for personal, family, or household purposes is a consumer of a financial service, regardless of whether the credit is extended.

(ii) An individual who provides non-public personal information to you in order to obtain a determination about whether he or she may qualify for a loan to be used primarily for personal, family, or household purposes is a consumer of a financial service, regardless of whether the loan is extended.

(iii) An individual who provides nonpublic personal information to you in connection with obtaining or seeking to obtain financial, investment, or economic advisory services is a consumer, regardless of whether you establish a continuing advisory relationship.

(iv) If you hold ownership or servicing rights to an individual's loan that is used primarily for personal, family, or household purposes, the individual is your consumer, even if you hold those rights in conjunction with one or more other institutions. (The individual is also a consumer with respect to the other financial institutions involved.) An individual who has a loan in which you have ownership or servicing rights is your consumer, even if you, or an-

other institution with those rights, hire an agent to collect on the loan.

(v) An individual who is a consumer of another financial institution is not your consumer solely because you act as agent for, or provide processing or other services to, that financial institution.

(vi) An individual is not your consumer solely because he or she has designated you as trustee for a trust.

(vii) An individual is not your consumer solely because he or she is a beneficiary of a trust for which you are a trustee.

(viii) An individual is not your consumer solely because he or she is a participant or a beneficiary of an employee benefit plan that you sponsor or for which you act as a trustee or fiduciary.

(f) *Consumer reporting agency* has the same meaning as in section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f)).

(g) *Control* of a company means:

(1) Ownership, control, or power to vote 25 percent or more of the outstanding shares of any class of voting security of the company, directly or indirectly, or acting through one or more other persons;

(2) Control in any manner over the election of a majority of the directors, trustees, or general partners (or individuals exercising similar functions) of the company; or

(3) The power to exercise, directly or indirectly, a controlling influence over the management or policies of the company.

(h) *Customer* means a consumer who has a customer relationship with you.

(i)(1) *Customer relationship* means a continuing relationship between a consumer and you under which you provide one or more financial products or services to the consumer that are to be used primarily for personal, family, or household purposes.

(2) *Examples*—(i) *Continuing relationship.* A consumer has a continuing relationship with you if the consumer:

(A) Has a credit or investment account with you;

(B) Obtains a loan from you;

(C) Purchases an insurance product from you;

(D) Holds an investment product through you, such as when you act as a custodian for securities or for assets in an Individual Retirement Arrangement;

(E) Enters into an agreement or understanding with you whereby you undertake to arrange or broker a home mortgage loan, or credit to purchase a vehicle, for the consumer;

(F) Enters into a lease of personal property on a non-operating basis with you;

(G) Obtains financial, investment, or economic advisory services from you for a fee;

(H) Becomes your client for the purpose of obtaining tax preparation or credit counseling services from you;

(I) Obtains career counseling while seeking employment with a financial institution or the finance, accounting, or audit department of any company (or while employed by such a financial institution or department of any company);

(J) Is obligated on an account that you purchase from another financial institution, regardless of whether the account is in default when purchased, unless you do not locate the consumer or attempt to collect any amount from the consumer on the account;

(K) Obtains real estate settlement services from you; or

(L) Has a loan for which you own the servicing rights.

(ii) *No continuing relationship.* A consumer does not, however, have a continuing relationship with you if:

(A) The consumer obtains a financial product or service from you only in isolated transactions, such as using your ATM to withdraw cash from an account at another financial institution; purchasing a money order from you; cashing a check with you; or making a wire transfer through you;

(B) You sell the consumer's loan and do not retain the rights to service that loan;

(C) You sell the consumer airline tickets, travel insurance, or traveler's checks in isolated transactions;

(D) The consumer obtains one-time personal or real property appraisal services from you; or

(E) The consumer purchases checks for a personal checking account from you.

(j) *Federal functional regulator* means:

(1) The Board of Governors of the Federal Reserve System;

(2) The Office of the Comptroller of the Currency;

(3) The Board of Directors of the Federal Deposit Insurance Corporation;

(4) The Director of the Office of Thrift Supervision;

(5) The National Credit Union Administration Board; and

(6) The Securities and Exchange Commission.

(k)(1) *Financial institution* means any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. 1843(k)). An institution that is significantly engaged in financial activities is a financial institution.

(2) *Examples of financial institution.* (i) A retailer that extends credit by issuing its own credit card directly to consumers is a financial institution because extending credit is a financial activity listed in 12 CFR 225.28(b)(1) and referenced in section 4(k)(4)(F) of the Bank Holding Company Act and issuing that extension of credit through a proprietary credit card demonstrates that a retailer is significantly engaged in extending credit.

(ii) A personal property or real estate appraiser is a financial institution because real and personal property appraisal is a financial activity listed in 12 CFR 225.28(b)(2)(i) and referenced in section 4(k)(4)(F) of the Bank Holding Company Act.

(iii) An automobile dealership that, as a usual part of its business, leases automobiles on a nonoperating basis for longer than 90 days is a financial institution with respect to its leasing business because leasing personal property on a nonoperating basis where the initial term of the lease is at least 90 days is a financial activity listed in 12 CFR 225.28(b)(3) and referenced in section 4(k)(4)(F) of the Bank Holding Company Act.

(iv) A career counselor that specializes in providing career counseling services to individuals currently employed by or recently displaced from a

financial organization, individuals who are seeking employment with a financial organization, or individuals who are currently employed by or seeking placement with the finance, accounting or audit departments of any company is a financial institution because such career counseling activities are financial activities listed in 12 CFR 225.28(b)(9)(iii) and referenced in section 4(k)(4)(F) of the Bank Holding Company Act.

(v) A business that prints and sells checks for consumers, either as its sole business or as one of its product lines, is a financial institution because printing and selling checks is a financial activity that is listed in 12 CFR 225.28(b)(10)(ii) and referenced in section 4(k)(4)(F) of the Bank Holding Company Act.

(vi) A business that regularly wires money to and from consumers is a financial institution because transferring money is a financial activity referenced in section 4(k)(4)(A) of the Bank Holding Company Act and regularly providing that service demonstrates that the business is significantly engaged in that activity.

(vii) A check cashing business is a financial institution because cashing a check is exchanging money, which is a financial activity listed in section 4(k)(4)(A) of the Bank Holding Company Act.

(viii) An accountant or other tax preparation service that is in the business of completing income tax returns is a financial institution because tax preparation services is a financial activity listed in 12 CFR 225.28(b)(6)(vi) and referenced in section 4(k)(4)(G) of the Bank Holding Company Act.

(ix) A business that operates a travel agency in connection with financial services is a financial institution because operating a travel agency in connection with financial services is a financial activity listed in 12 CFR 211.5(d)(15) and referenced in section 4(k)(4)(G) of the Bank Holding Company Act.

(x) An entity that provides real estate settlement services is a financial institution because providing real estate settlement services is a financial activity listed in 12 CFR 225.28(b)(2)(viii) and referenced in sec-

tion 4(k)(4)(F) of the Bank Holding Company Act.

(xi) A mortgage broker is a financial institution because brokering loans is a financial activity listed in 12 CFR 225.28(b)(1) and referenced in section 4(k)(4)(F) of the Bank Holding Company Act.

(xii) An investment advisory company and a credit counseling service are each financial institutions because providing financial and investment advisory services are financial activities referenced in section 4(k)(4)(C) of the Bank Holding Company Act.

(3) *Financial institution* does not include:

(i) Any person or entity with respect to any financial activity that is subject to the jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act (7 U.S.C. 1 *et seq.*);

(ii) The Federal Agricultural Mortgage Corporation or any entity chartered and operating under the Farm Credit Act of 1971 (12 U.S.C. 2001 *et seq.*); or

(iii) Institutions chartered by Congress specifically to engage in securitizations, secondary market sales (including sales of servicing rights) or similar transactions related to a transaction of a consumer, as long as such institutions do not sell or transfer nonpublic personal information to a nonaffiliated third party other than as permitted by §§ 313.14 and 313.15 of this part.

(iv) Entities that engage in financial activities but that are not significantly engaged in those financial activities.

(4) *Examples of entities that are not significantly engaged in financial activities.*
(i) A retailer is not a financial institution if its only means of extending credit are occasional "lay away" and deferred payment plans or accepting payment by means of credit cards issued by others.

(ii) A retailer is not a financial institution merely because it accepts payment in the form of cash, checks, or credit cards that it did not issue.

(iii) A merchant is not a financial institution merely because it allows an individual to "run a tab."

(iv) A grocery store is not a financial institution merely because it allows individuals to whom it sells groceries to cash a check, or write a check for a higher amount than the grocery purchase and obtain cash in return.

(l)(1) *Financial product or service* means any product or service that a financial holding company could offer by engaging in a financial activity under section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. 1843(k)).

(2) *Financial service* includes your evaluation or brokerage of information that you collect in connection with a request or an application from a consumer for a financial product or service.

(m)(1) *Nonaffiliated third party* means any person except:

(i) Your affiliate; or

(ii) A person employed jointly by you and any company that is not your affiliate (but *nonaffiliated third party* includes the other company that jointly employs the person).

(2) *Nonaffiliated third party* includes any company that is an affiliate by virtue of your or your affiliate's direct or indirect ownership or control of the company in conducting merchant banking or investment banking activities of the type described in section 4(k)(4)(H) or insurance company investment activities of the type described in section 4(k)(4)(I) of the Bank Holding Company Act (12 U.S.C. 1843(k)(4)(H) and (I)).

(n)(1) *Nonpublic personal information* means:

(i) Personally identifiable financial information; and

(ii) Any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any personally identifiable financial information that is not publicly available.

(2) *Nonpublic personal information* does not include:

(i) Publicly available information, except as included on a list described in paragraph (n)(1)(ii) of this section; or

(ii) Any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived without using any personally identifiable financial information that is not publicly available.

(3) *Examples of lists*—(i) Nonpublic personal information includes any list of individuals' names and street addresses that is derived in whole or in part using personally identifiable financial information (that is not publicly available), such as account numbers.

(ii) Nonpublic personal information does not include any list of individuals' names and addresses that contains only publicly available information, is not derived, in whole or in part, using personally identifiable financial information that is not publicly available, and is not disclosed in a manner that indicates that any of the individuals on the list is a consumer of a financial institution.

(o)(1) *Personally identifiable financial information* means any information:

(i) A consumer provides to you to obtain a financial product or service from you;

(ii) About a consumer resulting from any transaction involving a financial product or service between you and a consumer; or

(iii) You otherwise obtain about a consumer in connection with providing a financial product or service to that consumer.

(2) *Examples*—(i) Information included. Personally identifiable financial information includes:

(A) Information a consumer provides to you on an application to obtain a loan, credit card, or other financial product or service;

(B) Account balance information, payment history, overdraft history, and credit or debit card purchase information;

(C) The fact that an individual is or has been one of your customers or has obtained a financial product or service from you;

(D) Any information about your consumer if it is disclosed in a manner that indicates that the individual is, or has been your consumer;

(E) Any information that a consumer provides to you or that you or your agent otherwise obtain in connection with collecting on, or servicing, a credit account;

**Federal Trade Commission** §313.4

(F) Any information you collect through an Internet "cookie" (an information collecting device from a web server); and

(G) Information from a consumer report.

(ii) *Information not included.* Personally identifiable financial information does not include:

(A) A list of names and addresses of customers of an entity that is not a financial institution; and

(B) Information that does not identify a consumer, such as aggregate information or blind data that does not contain personal identifiers such as account numbers, names, or addresses.

(p)(1) *Publicly available information* means any information that you have a reasonable basis to believe is lawfully made available to the general public from:

(i) Federal, State, or local government records;

(ii) Widely distributed media; or

(iii) Disclosures to the general public that are required to be made by Federal, State, or local law.

(2) *Reasonable basis.* You have a reasonable basis to believe that information is lawfully made available to the general public if you have taken steps to determine:

(i) That the information is of the type that is available to the general public; and

(ii) Whether an individual can direct that the information not be made available to the general public and, if so, that your consumer has not done so.

(3) *Examples*—(i) *Government records.* Publicly available information in government records includes information in government real estate records and security interest filings.

(ii) *Widely distributed media.* Publicly available information from widely distributed media includes information from a telephone book, a television or radio program, a newspaper, or a web site that is available to the general public on an unrestricted basis. A web site is not restricted merely because an Internet service provider or a site operator requires a fee or a password, so long as access is available to the general public.

(iii) *Reasonable basis*—(A) You have a reasonable basis to believe that mortgage information is lawfully made available to the general public if you have determined that the information is of the type included on the public record in the jurisdiction where the mortgage would be recorded.

(B) You have a reasonable basis to believe that an individual's telephone number is lawfully made available to the general public if you have located the telephone number in the telephone book or the consumer has informed you that the telephone number is not unlisted.

(q) *You* includes each "financial institution" (but excludes any "other person") over which the Commission has enforcement jurisdiction pursuant to section 505(a)(7) of the Gramm-Leach-Bliley Act.

**Subpart A—Privacy and Opt Out Notices**

§313.4 **Initial privacy notice to consumers required.**

(a) *Initial notice requirement.* You must provide a clear and conspicuous notice that accurately reflects your privacy policies and practices to:

(1) *Customer.* An individual who becomes your customer, not later than when you establish a customer relationship, except as provided in paragraph (e) of this section; and

(2) *Consumer.* A consumer, before you disclose any nonpublic personal information about the consumer to any nonaffiliated third party, if you make such a disclosure other than as authorized by §§313.14 and 313.15.

(b) *When initial notice to a consumer is not required.* You are not required to provide an initial notice to a consumer under paragraph (a) of this section if:

(1) You do not disclose any nonpublic personal information about the consumer to any nonaffiliated third party, other than as authorized by §§313.14 and 313.15; and

(2) You do not have a customer relationship with the consumer.

(c) *When you establish a customer relationship*—(1) *General rule.* You establish a customer relationship when you and the consumer enter into a continuing relationship.

(2) *Special rule for loans.* You establish a customer relationship with a consumer when you originate a loan to the consumer for personal, family, or household purposes. If you subsequently transfer the servicing rights to that loan to another financial institution, the customer relationship transfers with the servicing rights.

(3)(i) *Examples of establishing customer relationship.* You establish a customer relationship when the consumer:

(A) Opens a credit card account with you;

(B) Executes the contract to obtain credit from you or purchase insurance from you;

(C) Agrees to obtain financial, economic, or investment advisory services from you for a fee; or

(D) Becomes your client for the purpose of your providing credit counseling or tax preparation services, or to obtain career counseling while seeking employment with a financial institution or the finance, accounting, or audit department of any company (or while employed by such a company or financial institution);

(E) Provides any personally identifiable financial information to you in an effort to obtain a mortgage loan through you;

(F) Executes the lease for personal property with you;

(G) Is an obligor on an account that you purchased from another financial institution and whom you have located and begun attempting to collect amounts owed on the account; or

(H) Provides you with the information necessary for you to compile and provide access to all of the consumer's on-line financial accounts at your Web site.

(ii) *Examples of loan rule.* You establish a customer relationship with a consumer who obtains a loan for personal, family, or household purposes when you:

(A) Originate the loan to the consumer and retain the servicing rights; or

(B) Purchase the servicing rights to the consumer's loan.

(d) *Existing customers.* When an existing customer obtains a new financial product or service from you that is to be used primarily for personal, family,

or household purposes, you satisfy the initial notice requirements of paragraph (a) of this section as follows:

(1) You may provide a revised privacy notice, under §313.8, that covers the customer's new financial product or service; or

(2) If the initial, revised, or annual notice that you most recently provided to that customer was accurate with respect to the new financial product or service, you do not need to provide a new privacy notice under paragraph (a) of this section.

(e) *Exceptions to allow subsequent delivery of notice.* (1) You may provide the initial notice required by paragraph (a)(1) of this section within a reasonable time after you establish a customer relationship if:

(i) Establishing the customer relationship is not at the customer's election; or

(ii) Providing notice not later than when you establish a customer relationship would substantially delay the customer's transaction and the customer agrees to receive the notice at a later time.

(2) *Examples of exceptions*—(i) *Not at customer's election.* Establishing a customer relationship is not at the customer's election if you acquire a customer's loan, or the servicing rights, from another financial institution and the customer does not have a choice about your acquisition.

(ii) *Substantial delay of customer's transaction.* Providing notice not later than when you establish a customer relationship would substantially delay the customer's transaction when:

(A) You and the individual agree over the telephone to enter into a customer relationship involving prompt delivery of the financial product or service; or

(B) You establish a customer relationship with an individual under a program authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 *et seq.*) or similar student loan programs where loan proceeds are disbursed promptly without prior communication between you and the customer.

(iii) *No substantial delay of customer's transaction.* Providing notice not later than when you establish a customer relationship would not substantially

**Federal Trade Commission**                                              **§ 313.6**

delay the customer's transaction when the relationship is initiated in person at your office or through other means by which the customer may view the notice, such as through a web site.

(f) *Delivery.* When you are required to deliver an initial privacy notice by this section, you must deliver it according to § 313.9. If you use a short-form initial notice for non-customers according to § 313.6(d), you may deliver your privacy notice according to § 313.6(d)(3).

**§ 313.5  Annual privacy notice to customers required.**

(a)(1) *General rule.* You must provide a clear and conspicuous notice to customers that accurately reflects your privacy policies and practices not less than annually during the continuation of the customer relationship. *Annually* means at least once in any period of 12 consecutive months during which that relationship exists. You may define the 12-consecutive-month period, but you must apply it to the customer on a consistent basis.

(2) *Example.* You provide a notice annually if you define the 12-consecutive-month period as a calendar year and provide the annual notice to the customer once in each calendar year following the calendar year in which you provided the initial notice. For example, if a customer opens an account on any day of year 1, you must provide an annual notice to that customer by December 31 of year 2.

(b)(1) *Termination of customer relationship.* You are not required to provide an annual notice to a former customer.

(2) *Examples.* Your customer becomes a former customer when:

(i) In the case of a closed-end loan, the customer pays the loan in full, you charge off the loan, or you sell the loan without retaining servicing rights;

(ii) In the case of a credit card relationship or other open-end credit relationship, you sell the receivables without retaining servicing rights;

(iii) In the case of credit counseling services, the customer has failed to make required payments under a debt management plan, has been notified that the plan is terminated, and you no longer provide any statements or notices to the customer concerning that relationship;

(iv) In the case of mortgage or vehicle loan brokering services, your customer has obtained a loan through you (and you no longer provide any statements or notices to the customer concerning that relationship), or has ceased using your services for such purposes;

(v) In the case of tax preparation services, you have provided and received payment for the service and no longer provide any statements or notices to the customer concerning that relationship;

(vi) In the case of providing real estate settlement services, at the time the customer completes execution of all documents related to the real estate closing, you have received payment, or you have completed all of your responsibilities with respect to the settlement, including filing documents on the public record, whichever is later.

(vii) In cases where there is no definitive time at which the customer relationship has terminated, you have not communicated with the customer about the relationship for a period of 12 consecutive months, other than to provide annual privacy notices or promotional material.

(c) *Special rule for loans.* If you do not have a customer relationship with a consumer under the special rule for loans in § 313.4(c)(2), then you need not provide an annual notice to that consumer under this section.

(d) *Delivery.* When you are required to deliver an annual privacy notice by this section, you must deliver it according to § 313.9.

**§ 313.6  Information to be included in privacy notices.**

(a) *General rule.* The initial, annual, and revised privacy notices that you provide under §§ 313.4, 313.5, and 313.8 must include each of the following items of information that applies to you or to the consumers to whom you send your privacy notice, in addition to any other information you wish to provide:

(1) The categories of nonpublic personal information that you collect;

(2) The categories of nonpublic personal information that you disclose;

(3) The categories of affiliates and nonaffiliated third parties to whom

401

you disclose nonpublic personal information, other than those parties to whom you disclose information under §§ 313.14 and 313.15;

(4) The categories of nonpublic personal information about your former customers that you disclose and the categories of affiliates and nonaffiliated third parties to whom you disclose nonpublic personal information about your former customers, other than those parties to whom you disclose information under §§ 313.14 and 313.15;

(5) If you disclose nonpublic personal information to a nonaffiliated third party under § 313.13 (and no exception under §§ 313.14 or 313.15 applies to that disclosure), a separate statement of the categories of information you disclose and the categories of third parties with whom you have contracted;

(6) An explanation of the consumer's right under § 313.10(a) to opt out of the disclosure of nonpublic personal information to nonaffiliated third parties, including the method(s) by which the consumer may exercise that right at that time;

(7) Any disclosures that you make under section 603(d)(2)(A)(iii) of the Fair Credit Reporting Act (15 U.S.C. 1681a(d)(2)(A)(iii)) (that is, notices regarding the ability to opt out of disclosures of information among affiliates);

(8) Your policies and practices with respect to protecting the confidentiality and security of nonpublic personal information; and

(9) Any disclosure that you make under paragraph (b) of this section.

(b) *Description of nonaffiliated third parties subject to exceptions.* If you disclose nonpublic personal information to third parties as authorized under §§ 313.14 and 313.15, you are not required to list those exceptions in the initial or annual privacy notices required by §§ 313.4 and 313.5. When describing the categories with respect to those parties, you are required to state only that you make disclosures to other nonaffiliated third parties as permitted by law.

(c) *Examples*—(1) *Categories of nonpublic personal information that you collect.* You satisfy the requirement to categorize the nonpublic personal information that you collect if you list the following categories, as applicable:

(i) Information from the consumer;

(ii) Information about the consumer's transactions with you or your affiliates;

(iii) Information about the consumer's transactions with nonaffiliated third parties; and

(iv) Information from a consumer reporting agency.

(2) *Categories of nonpublic personal information you disclose*—(i) You satisfy the requirement to categorize the nonpublic personal information that you disclose if you list the categories described in paragraph (e)(1) of this section, as applicable, and a few examples to illustrate the types of information in each category.

(ii) If you reserve the right to disclose all of the nonpublic personal information about consumers that you collect, you may simply state that fact without describing the categories or examples of the nonpublic personal information you disclose.

(3) *Categories of affiliates and nonaffiliated third parties to whom you disclose.* You satisfy the requirement to categorize the affiliates and nonaffiliated third parties to whom you disclose nonpublic personal information if you list them using the following categories, as applicable, and a few applicable examples to illustrate the significant types of third parties covered in each category.

(i) Financial service providers, followed by illustrative examples such as mortgage bankers, securities broker-dealers, and insurance agents.

(ii) Non-financial companies, followed by illustrative examples such as retailers, magazine publishers, airlines, and direct marketers; and

(iii) Others, followed by examples such as nonprofit organizations.

(4) *Disclosures under exception for service providers and joint marketers.* If you disclose nonpublic personal information under the exception in § 313.13 to a nonaffiliated third party to market products or services that you offer alone or jointly with another financial institution, you satisfy the disclosure requirement of paragraph (a)(5) of this section if you:

**Federal Trade Commission**

§313.7

(i) List the categories of nonpublic personal information you disclose, using the same categories and examples you used to meet the requirements of paragraph (a)(2) of this section, as applicable; and

(ii) State whether the third party is:

(A) A service provider that performs marketing services on your behalf or on behalf of you and another financial institution; or

(B) A financial institution with whom you have a joint marketing agreement.

(5) *Simplified notices.* If you do not disclose, and do not wish to reserve the right to disclose, nonpublic personal information about customers or former customers to affiliates or nonaffiliated third parties except as authorized under §§313.14 and 313.15, you may simply state that fact, in addition to the information you must provide under paragraphs (a)(1), (a)(8), (a)(9), and (b) of this section.

(6) *Confidentiality and security.* You describe your policies and practices with respect to protecting the confidentiality and security of nonpublic personal information if you do both of the following:

(i) Describe in general terms who is authorized to have access to the information; and

(ii) State whether you have security practices and procedures in place to ensure the confidentiality of the information in accordance with your policy. You are not required to describe technical information about the safeguards you use.

(d) *Short-form initial notice with opt out notice for non-customers*—(1) You may satisfy the initial notice requirements in §§313.4(a)(2), 313.7(b), and 313.7(c) for a consumer who is not a customer by providing a short-form initial notice at the same time as you deliver an opt out notice as required in §313.7.

(2) A short-form initial notice must:

(i) Be clear and conspicuous;

(ii) State that your privacy notice is available upon request; and

(iii) Explain a reasonable means by which the consumer may obtain that notice.

(3) You must deliver your short-form initial notice according to §313.9. You

are not required to deliver your privacy notice with your short-form initial notice. You instead may simply provide the consumer a reasonable means to obtain your privacy notice. If a consumer who receives your short-form notice requests your privacy notice, you must deliver your privacy notice according to §313.9.

(4) *Examples of obtaining privacy notice.* You provide a reasonable means by which a consumer may obtain a copy of your privacy notice if you:

(i) Provide a toll-free telephone number that the consumer may call to request the notice; or

(ii) For a consumer who conducts business in person at your office, maintain copies of the notice on hand that you provide to the consumer immediately upon request.

(e) *Future disclosures.* Your notice may include:

(1) Categories of nonpublic personal information that you reserve the right to disclose in the future, but do not currently disclose; and

(2) Categories of affiliates or nonaffiliated third parties to whom you reserve the right in the future to disclose, but to whom you do not currently disclose, nonpublic personal information.

(f) *Sample clauses.* Sample clauses illustrating some of the notice content required by this section are included in Appendix A of this part.

**§313.7 Form of opt out notice to consumers; opt out methods.**

(a)(1) *Form of opt out notice.* If you are required to provide an opt out notice under §313.10(a), you must provide a clear and conspicuous notice to each of your consumers that accurately explains the right to opt out under that section. The notice must state:

(i) That you disclose or reserve the right to disclose nonpublic personal information about your consumer to a nonaffiliated third party;

(ii) That the consumer has the right to opt out of that disclosure; and

(iii) A reasonable means by which the consumer may exercise the opt out right.

(2) *Examples*—(i) *Adequate opt out notice.* You provide adequate notice that

the consumer can opt out of the disclosure of nonpublic personal information to a nonaffiliated third party if you:

(A) Identify all of the categories of nonpublic personal information that you disclose or reserve the right to disclose, and all of the categories of nonaffiliated third parties to which you disclose the information, as described in §313.6(a) (2) and (3) and state that the consumer can opt out of the disclosure of that information; and

(B) Identify the financial products or services that the consumer obtains from you, either singly or jointly, to which the opt out direction would apply.

(ii) *Reasonable opt out means.* You provide a reasonable means to exercise an opt out right if you:

(A) Designate check-off boxes in a prominent position on the relevant forms with the opt out notice;

(B) Include a reply form that includes the address to which the form should be mailed; or

(C) Provide an electronic means to opt out, such as a form that can be sent via electronic mail or a process at your web site, if the consumer agrees to the electronic delivery of information; or

(D) Provide a toll-free telephone number that consumers may call to opt out.

(iii) *Unreasonable opt out means.* You *do not* provide a reasonable means of opting out if:

(A) The only means of opting out is for the consumer to write his or her own letter to exercise that opt out right; or

(B) The only means of opting out as described in any notice subsequent to the initial notice is to use a check-off box that you provided with the initial notice but did not include with the subsequent notice.

(iv) *Specific opt out means.* You may require each consumer to opt out through a specific means, as long as that means is reasonable for that consumer.

(b) *Same form as initial notice permitted.* You may provide the opt out notice together with or on the same written or electronic form as the initial notice you provide in accordance with §313.4.

(c) *Initial notice required when opt out notice delivered subsequent to initial notice.* If you provide the opt out notice later than required for the initial notice in accordance with §313.4, you must also include a copy of the initial notice with the opt out notice in writing or, if the consumer agrees, electronically.

(d) *Joint relationships*—(1) If two or more consumers jointly obtain a financial product or service from you, you may provide a single opt out notice, unless one or more of those consumers requests a separate opt out notice. Your opt out notice must explain how you will treat an opt out direction by a joint consumer (as explained in paragraph (d)(5)(ii)of this section).

(2) Any of the joint consumers may exercise the right to opt out. You may either:

(i) Treat an opt out direction by a joint consumer as applying to all of the associated joint consumers; or

(ii) Permit each joint consumer to opt out separately.

(3) If you permit each joint consumer to opt out separately, you must permit one of the joint consumers to opt out on behalf of all of the joint consumers.

(4) You may not require *all* joint consumers to opt out before you implement *any* opt out direction.

(5) *Example.* If John and Mary have a joint credit card account with you and arrange for you to send statements to John's address, you may do any of the following, but you must explain in your opt out notice which opt out policy you will follow:

(i) Send a single opt out notice to John's address, but you must accept an opt out direction from either John or Mary.

(ii) Treat an opt out direction by either John or Mary as applying to the entire account. If you do so, and John opts out, you may not require Mary to opt out as well before implementing John's opt out direction.

(iii) Permit John and Mary to make different opt out directions. If you do so,

(A) You must permit John and Mary to opt out for each other;

(B) If both opt out, you must permit both to notify you in a single response

**Federal Trade Commission** §313.9

(such as on a form or through a telephone call); and

(C) If John opts out and Mary does not, you may only disclose nonpublic personal information about Mary, but not about John and not about John and Mary jointly.

(e) *Time to comply with opt out.* You must comply with a consumer's opt out direction as soon as reasonably practicable after you receive it.

(f) *Continuing right to opt out.* A consumer may exercise the right to opt out at any time.

(g) *Duration of consumer's opt out direction*—(1) A consumer's direction to opt out under this section is effective until the consumer revokes it in writing or, if the consumer agrees, electronically.

(2) When a customer relationship terminates, the customer's opt out direction continues to apply to the nonpublic personal information that you collected during or related to that relationship. If the individual subsequently establishes a new customer relationship with you, the opt out direction that applied to the former relationship does not apply to the new relationship.

(h) *Delivery.* When you are required to deliver an opt out notice by this section, you must deliver it according to §313.9.

**§313.8  Revised privacy notices.**

(a) *General rule.* Except as otherwise authorized in this part, you must not, directly or through any affiliate, disclose any nonpublic personal information about a consumer to a nonaffiliated third party other than as described in the initial notice that you provided to that consumer under §313.4, unless:

(1) You have provided to the consumer a clear and conspicuous revised notice that accurately describes your policies and practices;

(2) You have provided to the consumer a new opt out notice;

(3) You have given the consumer a reasonable opportunity, before you disclose the information to the nonaffiliated third party, to opt out of the disclosure; and

(4) the consumer does not opt out.

(b) *Examples*—(1) Except as otherwise permitted by §§313.13, 313.14, and 313.15,

you must provide a revised notice before you:

(i) Disclose a new category of nonpublic personal information to any nonaffiliated third party;

(ii) Disclose nonpublic personal information to a new category of nonaffiliated third party; or

(iii) Disclose nonpublic personal information about a former customer to a nonaffiliated third party if that former customer has not had the opportunity to exercise an opt out right regarding that disclosure.

(2) A revised notice is not required if you disclose nonpublic personal information to a new nonaffiliated third party that you adequately described in your prior notice.

(c) *Delivery.* When you are required to deliver a revised privacy notice by this section, you must deliver it according to §313.9.

**§313.9  Delivering privacy and opt out notices.**

(a) *How to provide notices.* You must provide any privacy notices and opt out notices, including short-form initial notices, that this part requires so that each consumer can reasonably be expected to receive actual notice in writing or, if the consumer agrees, electronically.

(b)(1) *Examples of reasonable expectation of actual notice.* You may reasonably expect that a consumer will receive actual notice if you:

(i) Hand-deliver a printed copy of the notice to the consumer;

(ii) Mail a printed copy of the notice to the last known address of the consumer;

(iii) For the consumer who conducts transactions electronically, clearly and conspicuously post the notice on the electronic site and require the consumer to acknowledge receipt of the notice as a necessary step to obtaining a particular financial product or service;

(iv) For an isolated transaction with the consumer, such as an ATM transaction, post the notice on the ATM screen and require the consumer to acknowledge receipt of the notice as a necessary step to obtaining the particular financial product or service.

405

§313.10                                              16 CFR Ch. I (1–1–04 Edition)

(2) *Examples of unreasonable expectation of actual notice.* You may *not*, however, reasonably expect that a consumer will receive actual notice of your privacy policies and practices if you:

(i) Only post a sign in your branch or office or generally publish advertisements of your privacy policies and practices;

(ii) Send the notice via electronic mail to a consumer who does not obtain a financial product or service from you electronically.

(c) *Annual notices only.* You may reasonably expect that a customer will receive actual notice of your annual privacy notice if:

(1) The customer uses your web site to access financial products and services electronically and agrees to receive notices at the web site and you post your current privacy notice continuously in a clear and conspicuous manner on the web site; or

(2) The customer has requested that you refrain from sending any information regarding the customer relationship, and your current privacy notice remains available to the customer upon request.

(d) *Oral description of notice insufficient.* You may not provide any notice required by this part solely by orally explaining the notice, either in person or over the telephone.

(e) *Retention or accessibility of notices for customers*—(1) For customers only, you must provide the initial notice required by §313.4(a)(1), the annual notice required by §313.5(a), and the revised notice required by §313.8 so that the customer can retain them or obtain them later in writing or, if the customer agrees, electronically.

(2) *Examples of retention or accessibility.* You provide a privacy notice to the customer so that the customer can retain it or obtain it later if you:

(i) Hand-deliver a printed copy of the notice to the customer;

(ii) Mail a printed copy of the notice to the last known address of the customer; or

(iii) Make your current privacy notice available on a web site (or a link to another web site) for the customer who obtains a financial product or

service electronically and agrees to receive the notice at the web site.

(f) *Joint notice with other financial institutions.* You may provide a joint notice from you and one or more of your affiliates or other financial institutions, as identified in the notice, as long as the notice is accurate with respect to you and the other institutions.

(g) *Joint relationships.* If two or more consumers jointly obtain a financial product or service from you, you may satisfy the initial, annual, and revised notice requirements· of §§313.4(a), 313.5(a), and 313.8(a) by providing one notice to those consumers jointly, unless one or more of those consumers requests separate notices.

## Subpart B—Limits on Disclosures

**§313.10  Limits on disclosure of nonpublic personal information to nonaffiliated third parties.**

(a)(1) *Conditions for disclosure.* Except as otherwise authorized in this part, you may not, directly or through any affiliate, disclose any nonpublic personal information about a consumer to a nonaffiliated third party unless:

(i) You have provided to the consumer an initial notice as required under §313.4;

(ii) You have provided to the consumer an opt out notice as required in §313.7;

(iii) You have given the consumer a reasonable opportunity, before you disclose the information to the nonaffiliated third party, to opt out of the disclosure; and

(iv) The consumer does not opt out.

(2) *Opt out definition.* Opt out means a direction by the consumer that you not disclose nonpublic personal information about that consumer to a nonaffiliated third party, other than as permitted by §§313.13, 313.14, and 313.15.

(3) *Examples of reasonable opportunity to opt out.* You provide a consumer with a reasonable opportunity to opt out if:

(i) *By mail.* You mail the notices required in paragraph (a)(1) of this section to the consumer and allow the consumer to opt out by mailing a form, calling a toll-free telephone number, or any other reasonable means within 30 days from the date you mailed the notices.

406

**Federal Trade Commission**                                    **§313.11**

(ii) *By electronic means.* A customer opens an on-line account with you and agrees to receive the notices required in paragraph (a)(1) of this section electronically, and you allow the customer to opt out by any reasonable means within 30 days after the date that the customer acknowledges receipt of the notices in conjunction with opening the account.

(iii) *Isolated transaction with consumer.* For an isolated transaction, such as the purchase of a money order by a consumer, you provide the consumer with a reasonable opportunity to opt out if you provide the notices required in paragraph (a)(1) of this section at the time of the transaction and request that the consumer decide, as a necessary part of the transaction, whether to opt out before completing the transaction.

(b) *Application of opt out to all consumers and all nonpublic personal information—*(1) You must comply with this section, regardless of whether you and the consumer have established a customer relationship

(2) Unless you comply with this section, you may not, directly or through any affiliate, disclose any nonpublic personal information about a consumer that you have collected, regardless of whether you collected it before or after receiving the direction to opt out from the consumer.

(c) *Partial opt out.* You may allow a consumer to select certain nonpublic personal information or certain nonaffiliated third parties with respect to which the consumer wishes to opt out.

**§313.11 Limits on redisclosure and reuse of information.**

(a)(1) *Information you receive under an exception.* If you receive nonpublic personal information from a nonaffiliated financial institution under an exception in §313.14 or 313.15 of this part, your disclosure and use of that information is limited as follows:

(i) You may disclose the information to the affiliates of the financial institution from which you received the information;

(ii) You may disclose the information to your affiliates, but your affiliates may, in turn, disclose and use the information only to the extent that you

may disclose and use the information; and

(iii) You may disclose and use the information pursuant to an exception in §313.14 or 313.15 in the ordinary course of business to carry out the activity covered by the exception under which you received the information.

(2) *Example.* If you receive a customer list from a nonaffiliated financial institution in order to provide account processing services under the exception in §313.14(a), you may disclose that information under any exception in §313.14 or 313.15 in the ordinary course of business in order to provide those services. You could also disclose that information in response to a properly authorized subpoena. You could not disclose that information to a third party for marketing purposes or use that information for your own marketing purposes.

(b)(1) *Information you receive outside of an exception.* If you receive nonpublic personal information from a nonaffiliated financial institution other than under an exception in §313.14 or 313.15 of this part, you may disclose the information only:

(i) To the affiliates of the financial institution from which you received the information;

(ii) To your affiliates, but your affiliates may, in turn, disclose the information only to the extent that you can disclose the information; and

(iii) To any other person, if the disclosure would be lawful if made directly to that person by the financial institution from which you received the information.

(2) *Example.* If you obtain a customer list from a nonaffiliated financial institution outside of the exceptions in §313.14 and 313.15:

(i) You may use that list for your own purposes; and

(ii) You may disclose that list to another nonaffiliated third party only if the financial institution from which you purchased the list could have lawfully disclosed the list to that third party. That is, you may disclose the list in accordance with the privacy policy of the financial institution from which you received the list, as limited

407

**§ 313.12**                                                    **16 CFR Ch. I (1-1-04 Edition)**

by the opt out direction of each consumer whose nonpublic personal information you intend to disclose, and you may disclose the list in accordance with an exception in § 313.14 or 313.15, such as to your attorneys or accountants.

(c) *Information you disclose under an exception.* If you disclose nonpublic personal information to a nonaffiliated third party under an exception in § 313.14 or 313.15 of this part, the third party may disclose and use that information only as follows:

(1) The third party may disclose the information to your affiliates;

(2) The third party may disclose the information to its affiliates, but its affiliates may, in turn, disclose and use the information only to the extent that the third party may disclose and use the information; and

(3) The third party may disclose and use the information pursuant to an exception in § 313.14 or 313.15 in the ordinary course of business to carry out the activity covered by the exception under which it received the information.

(d) *Information you disclose outside of an exception.* If you disclose nonpublic personal information to a nonaffiliated third party other than under an exception in § 313.14 or 313.15 of this part, the third party may disclose the information only:

(1) To your affiliates;

(2) To its affiliates, but its affiliates, in turn, may disclose the information only to the extent the third party can disclose the information; and

(3) To any other person, if the disclosure would be lawful if you made it directly to that person.

**§ 313.12  Limits on sharing account number information for marketing purposes.**

(a) *General prohibition on disclosure of account numbers.* You must not, directly or through an affiliate, disclose, other than to a consumer reporting agency, an account number or similar form of access number or access code for a consumer's credit card account, deposit account, or transaction account to any nonaffiliated third party for use in telemarketing, direct mail marketing, or other marketing

through electronic mail to the consumer.

(b) *Exceptions.* Paragraph (a) of this section does not apply if you disclose an account number or similar form of access number or access code:

(1) To your agent or service provider solely in order to perform marketing for your own products or services, as long as the agent or service provider is not authorized to directly initiate charges to the account; or

(2) To a participant in a private label credit card program or an affinity or similar program where the participants in the program are identified to the customer when the customer enters into the program.

(c) *Examples*—(1) *Account number.* An account number, or similar form of access number or access code, does not include a number or code in an encrypted form, as long as you do not provide the recipient with a means to decode the number or code.

(2) *Transaction account.* A transaction account is an account other than a deposit account or a credit card account. A transaction account does not include an account to which third parties cannot initiate charges.

## Subpart C—Exceptions

**§ 313.13  Exception to opt out requirements for service providers and joint marketing.**

(a) *General rule.* (1) The opt out requirements in §§ 313.7 and 313.10 do not apply when you provide nonpublic personal information to a nonaffiliated third party to perform services for you or functions on your behalf, if you:

(i) Provide the initial notice in accordance with § 313.4; and

(ii) Enter into a contractual agreement with the third party that prohibits the third party from disclosing or using the information other than to carry out the purposes for which you disclosed the information, including use under an exception in § 313.14 or 313.15 in the ordinary course of business to carry out those purposes.

(2) *Example.* If you disclose nonpublic personal information under this section to a financial institution with which you perform joint marketing, your contractual agreement with that

408

**Federal Trade Commission**                                    **§313.15**

institution meets the requirements of paragraph (a)(1)(ii) of this section if it prohibits the institution from disclosing or using the nonpublic personal information except as necessary to carry out the joint marketing or under an exception in §313.14 or 313.15 in the ordinary course of business to carry out that joint marketing.

(b) *Service may include joint marketing.* The services a nonaffiliated third party performs for you under paragraph (a) of this section may include marketing of your own products or services or marketing of financial products or services offered pursuant to joint agreements between you and one or more financial institutions.

(c) *Definition of joint agreement.* For purposes of this section, joint agreement means a written contract pursuant to which you and one or more financial institutions jointly offer, endorse, or sponsor a financial product or service.

**§313.14  Exceptions to notice and opt out requirements for processing and servicing transactions.**

(a) *Exceptions for processing transactions at consumer's request.* The requirements for initial notice in §313.4(a)(2), for the opt out in §§313.7 and 313.10, and for service providers and joint marketing in §313.13 do not apply if you disclose nonpublic personal information as necessary to effect, administer, or enforce a transaction that a consumer requests or authorizes, or in connection with:

(1) Servicing or processing a financial product or service that a consumer requests or authorizes;

(2) Maintaining or servicing the consumer's account with you, or with another entity as part of a private label credit card program or other extension of credit on behalf of such entity; or

(3) A proposed or actual securitization, secondary market sale (including sales of servicing rights), or similar transaction related to a transaction of the consumer.

(b) *Necessary to effect, administer, or enforce a transaction* means that the disclosure is:

(1) Required, or is one of the lawful or appropriate methods, to enforce your rights or the rights of other per-

sons engaged in carrying out the financial transaction or providing the product or service; or

(2) Required, or is a usual, appropriate or acceptable method:

(i) To carry out the transaction or the product or service business of which the transaction is a part, and record, service, or maintain the consumer's account in the ordinary course of providing the financial service or financial product;

(ii) To administer or service benefits or claims relating to the transaction or the product or service business of which it is a part;

(iii) To provide a confirmation, statement, or other record of the transaction, or information on the status or value of the financial service or financial product to the consumer or the consumer's agent or broker;

(iv) To accrue or recognize incentives or bonuses associated with the transaction that are provided by you or any other party;

(v) To underwrite insurance at the consumer's request or for reinsurance purposes, or for any of the following purposes as they relate to a consumer's insurance: account administration, reporting, investigating, or preventing fraud or material misrepresentation, processing premium payments, processing insurance claims, administering insurance benefits (including utilization review activities), participating in research projects, or as otherwise required or specifically permitted by Federal or State law;

(vi) In connection with:

(A) The authorization, settlement, billing, processing, clearing, transferring, reconciling or collection of amounts charged, debited, or otherwise paid using a debit, credit, or other payment card, check, or account number, or by other payment means;

(B) The transfer of receivables, accounts, or interests therein; or

(C) The audit of debit, credit, or other payment information.

**§313.15  Other exceptions to notice and opt out requirements.**

(a) *Exceptions to opt out requirements.* The requirements for initial notice in §313.4(a)(2), for the opt out in §§313.7 and 313.10, and for service providers and

joint marketing in § 313.13 do not apply when you disclose nonpublic personal information:

(i) With the consent or at the direction of the consumer, provided that the consumer has not revoked the consent or direction;

(2)(i) To protect the confidentiality or security of your records pertaining to the consumer, service, product, or transaction;

(ii) To protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability;

(iii) For required institutional risk control or for resolving consumer disputes or inquiries;

(iv) To persons holding a legal or beneficial interest relating to the consumer; or

(v) To persons acting in a fiduciary or representative capacity on behalf of the consumer;

(3) To provide information to insurance rate advisory organizations, guaranty funds or agencies, agencies that are rating you, persons that are assessing your compliance with industry standards, and your attorneys, accountants, and auditors;

(4) To the extent specifically permitted or required under other provisions of law and in accordance with the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401 *et seq.*), to law enforcement agencies (including a federal functional regulator, the Secretary of the Treasury, with respect to 31 U.S.C. Chapter 53, Subchapter II (Records and Reports on Monetary Instruments and Transactions) and 12 U.S.C. Chapter 21 (Financial Recordkeeping), a State insurance authority, with respect to any person domiciled in that insurance authority's State that is engaged in providing insurance, and the Federal Trade Commission), self-regulatory organizations, or for an investigation on a matter related to public safety;

(5)(i) To a consumer reporting agency in accordance with the Fair Credit Reporting Act (15 U.S.C. 1681 *et seq.*), or

(ii) From a consumer report reported by a consumer reporting agency;

(6) In connection with a proposed or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit if the disclosure of nonpublic personal information con-

cerns solely consumers of such business or unit; or

(7)(i) To comply with Federal, State, or local laws, rules and other applicable legal requirements;

(ii) To comply with a properly authorized civil, criminal, or regulatory investigation, or subpoena or summons by Federal, State, or local authorities; or

(iii) To respond to judicial process or government regulatory authorities having jurisdiction over you for examination, compliance, or other purposes as authorized by law.

(b) *Examples of consent and revocation of consent.* (1) A consumer may specifically consent to your disclosure to a nonaffiliated insurance company of the fact that the consumer has applied to you for a mortgage so that the insurance company can offer homeowner's insurance to the consumer.

(2) A consumer may revoke consent by subsequently exercising the right to opt out of future disclosures of nonpublic personal information as permitted under § 313.7(f).

## Subpart D—Relation to Other Laws; Effective Date

### § 313.16 Protection of Fair Credit Reporting Act.

Nothing in this part shall be construed to modify, limit, or supersede the operation of the Fair Credit Reporting Act (15 U.S.C. 1681 *et seq.*), and no inference shall be drawn on the basis of the provisions of this part regarding whether information is transaction or experience information under section 603 of that Act.

### § 313.17 Relation to State laws.

(a) *In general.* This part shall not be construed as superseding, altering, or affecting any statute, regulation, order, or interpretation in effect in any State, except to the extent that such State statute, regulation, order, or interpretation is inconsistent with the provisions of this part, and then only to the extent of the inconsistency.

(b) *Greater protection under State law.* For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this part if the protection

**Federal Trade Commission**

such statute, regulation, order, or interpretation affords any consumer is greater than the protection provided under this part, as determined by the Commission on its own motion or upon the petition of any interested party, after consultation with the applicable federal functional regulator or other authority.

**§ 313.18  Effective date; transition rule.**

(a) *Effective date—*(1) *General rule.* This part is effective November 13, 2000. In order to provide sufficient time for you to establish policies and systems to comply with the requirements of this part, the Commission has extended the time for compliance with this part until July 1, 2001.

(2) *Exception.* This part is not effective as to any institution that is significantly engaged in activities that the Federal Reserve Board determines, after November 12, 1999, (pursuant to its authority in Section 4(k)(1–3) of the Bank Holding Company Act), are activities that a financial holding company may engage in, until the Commission so determines.

(b)(1) *Notice requirement for consumers who are your customers on the compliance date.* By July 1, 2001, you must have provided an initial notice, as required by § 313.4, to consumers who are your customers on July 1, 2001.

(2) *Example.* You provide an initial notice to consumers who are your customers on July 1, 2001, if, by that date, you have established a system for providing an initial notice to all new customers and have mailed the initial notice to all your existing customers.

(c) *Two-year grandfathering of service agreements.* Until July 1, 2002, a contract that you have entered into with a nonaffiliated third party to perform services for you or functions on your behalf satisfies the provisions of § 313.13(a)(1) of this part, even if the contract does not include a requirement that the third party maintain the confidentiality of nonpublic personal information, as long as you entered into the contract on or before July 1, 2000.

**Pt. 313, App. A**

APPENDIX A TO PART 313—SAMPLE CLAUSES

Financial institutions, including a group of financial holding company affiliates that use a common privacy notice, may use the following sample clauses, if the clause is accurate for each institution that uses the notice. (Note that disclosure of certain information, such as assets and income, and information from a consumer reporting agency, may give rise to obligations under the Fair Credit Reporting Act, such as a requirement to permit a consumer to opt out of disclosures to affiliates or designation as a consumer reporting agency if disclosures are made to nonaffiliated third parties.)

*A–1—Categories of Information You Collect (All Institutions)*

You may use this clause, as applicable, to meet the requirement of § 313.6(a)(1) to describe the categories of nonpublic personal information you collect.

Sample Clause A–1

We collect nonpublic personal information about you from the following sources:
• Information we receive from you on applications or other forms;
• Information about your transactions with us, our affiliates, or others; and
• Information we receive from a consumer reporting agency.

*A–2—Categories of Information You Disclose (Institutions That Disclose Outside of the Exceptions)*

You may use one of these clauses, as applicable, to meet the requirement of § 313.6(a)(2) to describe the categories of nonpublic personal information you disclose. You may use these clauses if you disclose nonpublic personal information other than as permitted by the exceptions in §§ 313.13, 313.14, and 313.15.

Sample Clause A–2, Alternative I

We may disclose the following kinds of nonpublic personal information about you:
• Information we receive from you on applications or other forms, such as [*provide illustrative examples, such as "your name, address, social security number, assets, and income"*];
• Information about your transactions with us, our affiliates, or others, such as [*provide illustrative examples, such as "your account balance, payment history, parties to transactions, and credit card usage"*]; and
• Information we receive from a consumer reporting agency, such as [*provide illustrative examples, such as "your creditworthiness and credit history"*].

411

### Sample Clause A-2, Alternative 2

We may disclose all of the information that we collect, as described [*describe location in the notice, such as "above" or "below"*].

### A-3—Categories of Information You Disclose and Parties to Whom You Disclose (Institutions That Do Not Disclose Outside of the Exceptions)

You may use this clause, as applicable, to meet the requirements of §§313.6(a)(2), (3), and (4) to describe the categories of nonpublic personal information about customers and former customers that you disclose and the categories of affiliates and nonaffiliated third parties to whom you disclose. You may use this clause if you do not disclose nonpublic personal information to any party, other than as permitted by the exceptions in §§313.14, and 313.15.

### Sample Clause A-3

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

### A-4—Categories of Parties to Whom You Disclose (Institutions That Disclose Outside of the Exceptions)

You may use this clause, as applicable, to meet the requirement of §313.6(a)(3) to describe the categories of affiliates and nonaffiliated third parties to whom you disclose nonpublic personal information. You may use this clause if you disclose nonpublic personal information other than as permitted by the exceptions in §§313.13, 313.14, and 313.15, as well as when permitted by the exceptions in §§313.14, and 313.15.

### Sample Clause A-4

We may disclose nonpublic personal information about you to the following types of third parties:

• Financial service providers, such as [*provide illustrative examples, such as "mortgage bankers, securities broker-dealers, and insurance agents"*];

• Non-financial companies, such as [*provide illustrative examples, such as "retailers, direct marketers, airlines, and publishers"*]; and

• Others, such as [*provide illustrative examples, such as "non-profit organizations"*].

We may also disclose nonpublic personal information about you to nonaffiliated third parties as permitted by law.

### A-5—Service Provider/Joint Marketing Exception

You may use one of these clauses, as applicable, to meet the requirements of §313.6(a)(5) related to the exception for service providers and joint marketers in §313.13.

If you disclose nonpublic personal information under this exception, you must describe the categories of nonpublic personal information you disclose and the categories of third parties with whom you have contracted.

### Sample Clause A-5, Alternative 1

We may disclose the following information to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements:

• Information we receive from you on applications or other forms, such as [*provide illustrative examples, such as "your name, address, social security number, assets, and income"*];

• Information about your transactions with us, our affiliates, or others, such as [*provide illustrative examples, such as "your account balance, payment history, parties to transactions, and credit card usage"*]; and

• Information we receive from a consumer reporting agency, such as [*provide illustrative examples, such as "your creditworthiness and credit history"*].

### Sample Clause A-5, Alternative 2

We may disclose all of the information we collect, as described [*describe location in the notice, such as "above" or "below"*] to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

### A-6—Explanation of Opt Out Right (Institutions that Disclose Outside of the Exceptions)

You may use this clause, as applicable, to meet the requirement of §313.6(a)(6) to provide an explanation of the consumer's right to opt out of the disclosure of nonpublic personal information to nonaffiliated third parties, including the method(s) by which the consumer may exercise that right. You may use this clause if you disclose nonpublic personal information other than as permitted by the exceptions in §§313.13, 313.14, and 313.15.

### Sample Clause A-6

If you prefer that we not disclose nonpublic personal information about you to nonaffiliated third parties, you may opt out of those disclosures, that is, you may direct us not to make those disclosures (other than disclosures permitted by law). If you wish to opt out of disclosures to nonaffiliated third parties, you may [*describe a reasonable means of opting out, such as "call the following toll-free number: (insert number)"*].

**Federal Trade Commission** §314.3

*A-7—Confidentiality and Security (All Institutions)*

You may use this clause, as applicable, to meet the requirement of §313.6(a)(8) to describe your policies and practices with respect to protecting the confidentiality and security of nonpublic personal information.

**Sample Clause A-7**

We restrict access to nonpublic personal information about you to [*provide an appropriate description, such as "those employees who need to know that information to provide products or services to you"*]. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

## PART 314—STANDARDS FOR SAFEGUARDING CUSTOMER INFORMATION

Sec.
314.1  Purpose and scope.
314.2  Definitions.
314.3  Standards for safeguarding customer information.
314.4  Elements.
314.5  Effective date.

AUTHORITY: 15 U.S.C. 6801(b), 6805(b)(2).

SOURCE: 67 FR 36493, May 23, 2002, unless otherwise noted.

**§314.1  Purpose and scope.**

(a) *Purpose.* This part, which implements sections 501 and 505(b)(2) of the Gramm-Leach-Bliley Act, sets forth standards for developing, implementing, and maintaining reasonable administrative, technical, and physical safeguards to protect the security, confidentiality, and integrity of customer information.

(b) *Scope.* This part applies to the handling of customer information by all financial institutions over which the Federal Trade Commission ("FTC" or "Commission") has jurisdiction. This part refers to such entities as "you." This part applies to all customer information in your possession, regardless of whether such information pertains to individuals with whom you have a customer relationship, or pertains to the customers of other financial institutions that have provided such information to you.

**§314.2  Definitions.**

(a) *In general.* Except as modified by this part or unless the context otherwise requires, the terms used in this part have the same meaning as set forth in the Commission's rule governing the Privacy of Consumer Financial Information, 16 CFR part 313.

(b) *Customer information* means any record containing nonpublic personal information as defined in 16 CFR 313.3(n), about a customer of a financial institution, whether in paper, electronic, or other form, that is handled or maintained by or on behalf of you or your affiliates.

(c) *Information security program* means the administrative, technical, or physical safeguards you use to access, collect, distribute, process, protect, store, use, transmit, dispose of, or otherwise handle customer information.

(d) *Service provider* means any person or entity that receives, maintains, processes, or otherwise is permitted access to customer information through its provision of services directly to a financial institution that is subject to this part.

**§314.3  Standards for safeguarding customer information.**

(a) *Information security program.* You shall develop, implement, and maintain a comprehensive information security program that is written in one or more readily accessible parts and contains administrative, technical, and physical safeguards that are appropriate to your size and complexity, the nature and scope of your activities, and the sensitivity of any customer information at issue. Such safeguards shall include the elements set forth in §314.4 and shall be reasonably designed to achieve the objectives of this part, as set forth in paragraph (b) of this section.

(b) *Objectives.* The objectives of section 501(b) of the Act, and of this part, are to:

(1) Insure the security and confidentiality of customer information;

(2) Protect against any anticipated threats or hazards to the security or integrity of such information; and

(3) Protect against unauthorized access to or use of such information that

could result in substantial harm or inconvenience to any customer.

### § 314.4 Elements.

In order to develop, implement, and maintain your information security program, you shall:

(a) Designate an employee or employees to coordinate your information security program.

(b) Identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that could result in the unauthorized disclosure, misuse, alteration, destruction or other compromise of such information, and assess the sufficiency of any safeguards in place to control these risks. At a minimum, such a risk assessment should include consideration of risks in each relevant area of your operations, including:

(1) Employee training and management;

(2) Information systems, including network and software design, as well as information processing, storage, transmission and disposal; and

(3) Detecting, preventing and responding to attacks, intrusions, or other systems failures.

(c) Design and implement information safeguards to control the risks you identify through risk assessment, and regularly test or otherwise monitor the effectiveness of the safeguards' key controls, systems, and procedures.

(d) Oversee service providers, by:

(1) Taking reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue; and

(2) Requiring your service providers by contract to implement and maintain such safeguards.

(e) Evaluate and adjust your information security program in light of the results of the testing and monitoring required by paragraph (c) of this section; any material changes to your operations or business arrangements; or any other circumstances that you know or have reason to know may have a material impact on your information security program.

### § 314.5 Effective date.

(a) Each financial institution subject to the Commission's jurisdiction must implement an information security program pursuant to this part no later than May 23, 2003.

(b) Two-year grandfathering of service contracts. Until May 24, 2004, a contract you have entered into with a non-affiliated third party to perform services for you or functions on your behalf satisfies the provisions of § 314.4(d), even if the contract does not include a requirement that the service provider maintain appropriate safeguards, as long as you entered into the contract not later than June 24, 2002.

The Law Offices of

# Holmes & White, PLLC

**Paul H. "Bud" Holmes**
**Glenn L. White**
**Sheila H. Smallwood**

**601 Highway 42 East**
**P O Box 662**
**Petal, Mississippi 39465**
Telephone: 601-544-8855
Facsimile: 601-544-8889

July 1, 2004

Honorable Paul J. Delcambre, Jr.
Balch & Bingham, LLP
Post Office Box 130
Gulfport, MS 39502-0130

RE:     James E. Crouch vs. AmSouth Bank
        Civil Action No. 02-0672-GN-W

Dear Paul:

        I am disappointed that after our agreement with the Court, that you have not furnished the Order the above matter. Unfortunately, it appears that the bank realizes that this is a forgery and it looks like we will have to litigate with the bank as a party defendant on a forgery and conspiracy count and the other allegations in order to rectify this matter on behalf of my client. If you can provide any other solution within the next week, please send me some written documentation and we will go from there.

Very truly yours,

Glenn L. White

GLW/rc

**EXHIBIT**

B

# B&B

## BALCH & BINGHAM LLP

Alabama • Georgia • Mississippi • Washington, DC

Paul J. Delcambre, Jr.
(228) 214-0409

Attorneys and Counselors
1310 Twenty Fifth Avenue
P.O. Box 130 (39502)
Gulfport, Mississippi 39501
(228) 864-9900
(228) 864-8221 Fax
www.balch.com

(888) 506-8672 (direct fax)
pdelcambre@balch.com

July 2, 2004

Glenn L. White Esq
Holmes & White, PLLC
P.O. Box 662
Petal, MS 39465

Re:    *James E. Crouch v. AmSouth Bank*
       Civil Action NO. 02-0672-GN-W
       Our File No. 7001.403

Dear Glenn:

I am in receipt of your July 1, 2004 letter regarding the captioned matter. I want to assure you that I am not trying to avoid resolution of this matter by way of an agreement. My only concern is the protection of my client from claims of breach of confidentiality by its customer. If you carefully review the material that I sent, you will see that we are wandering into a mine field and there are few signs to mark the way safely through it. There have been few judicial interpretations of the Gramm-Leach-Bliley Act and the regulations to give us any guidance.

As to the claim of forgery, my client does not have any knowledge of any such irregularity. I assure you I am endeavoring to have everyone who may have an interest in any accounts related to this matter to give me a voluntary consent to release the information so that my client will be protected and so that you can advise your client.

Sincerely,

BALCH & BINGHAM LLP

Paul J. Delcambre, Jr.

PJD:lh
cc:    Laura Betty

EXHIBIT

C