IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES E. CROUCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | 2:06-cv-00111-MEF |
| AMSOUTH BANK, INA SUE CROUCH ) | |
| and JOHN and JANE DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

**AMSOUTH BANK'S
MEMORANDUM OF FACTS AND LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant AmSouth Bank ("AmSouth") submits this memorandum in support of its motion for summary judgment.

**I.    INTRODUCTION**

On February 6, 2006, this case was transferred from the United States District Court for the Southern District of Mississippi to the United States District Court for the Middle District of Alabama. This action arises from a dispute between a son, Plaintiff James E. Crouch ("Plaintiff Crouch") and his mother, Ina Sue Crouch ("Defendant Crouch"), regarding benefits payable under a $250,000 annuity contract issued by Lincoln National Life Insurance Company ("Lincoln National"). Plaintiff Crouch alleges in his Amended Complaint that he is the rightful beneficiary under the annuity contract to the exclusion of his mother. Plaintiff Crouch contends that a change of beneficiary form executed by his father, as primary annuitant and co-owner, and by his mother, as co-owner, is null and void. Plaintiff Crouch mounts his attack upon his parents' actions by

alleging the following theories of recovery seeking essentially the same relief: (1) enforcement of settlement agreement; (2) specific performance; (3) breach of fiduciary duty; (4) negligence; (5) breach of contract; and (6) tortious interference with contract. As discussed herein, the Plaintiff's claims to the annuity benefits, however stated, are due to be dismissed under *Fed.R.Civ.P. 56* as a matter of law.

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of a claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. Although all reasonable inferences arising from the undisputed facts should be made in favor of the nonmoving party, an inference based on speculation and conjecture is not reasonable. *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985).

**III.    STATEMENT OF FACTS**

For several years, Defendant Crouch and her late husband James Earl Crouch (collectively "the Crouches") maintained bank accounts and utilized the banking services

of AmSouth Bank in Wetumpka, Alabama. (Exhibit 1, Affidavit of Ina Sue Crouch at ¶ 2.) As AmSouth customers, the Crouches came to know and deal with AmSouth banker Ronda T. Robinson ("Robinson"). (Crouch Affidavit at ¶ 2) (Exhibit 2, Affidavit of Ronda T. Robinson at ¶ 3.) In 1998, the Crouches discussed their financial security and determined that they would look into the possibility of purchasing an annuity to help ensure their future financial security. (Crouch Affidavit at ¶ 2) Consequently, they contacted Robinson who informed them that she was a licensed representative of AmSouth Investment Services, Inc. and that an annuity could be purchased through her. (Crouch Affidavit at ¶ 2)

On May 7, 1998, the Crouches met with Robinson who assisted them with filling out the application forms for the purchase of an annuity from Lincoln National. (Crouch Affidavit at ¶ 2) (Robinson Affidavit at ¶ 4.) (Annuity Application Forms attached hereto as Exhibit A) In order to secure their financial future, the Crouches intended to purchase a jointly owned annuity with the survivor of them getting the benefit of the annuity. (Crouch Affidavit at ¶ 2) With regard to any benefits received by the Plaintiff, the Crouches intended that their son get any remaining annuity benefits when both of them passed away. (Crouch Affidavit at ¶ 2) Shortly after completing the application and purchasing the annuity with jointly held funds, the Crouches received Lincoln National "Investors Choice" annuity contract #774944. (Crouch Affidavit at ¶ 3) Under the annuity contract as issued, Defendant Crouch's late husband was the annuitant and Defendant Crouch and her late husband were joint owners. Plaintiff Crouch, however, was listed as primary beneficiary. (Crouch Affidavit at ¶ 3.)

At the time that the Crouches received the annuity contract, Robinson informed them that she had made a mistake on the application form and that some additional paperwork had to be completed to accomplish their stated objectives. (Crouch Affidavit at ¶ 3); (Robinson Affidavit at ¶ 5.) Robinson explained to the Crouches that at the time the annuity contract #774944 was issued, their son, Plaintiff Crouch was incorrectly named as the primary beneficiary of the annuity and he, not Defendant Crouch, would receive the benefits of the annuity in the event that Defendant Crouch's husband passed away before her. (Crouch Affidavit at ¶ 3); (Robinson Affidavit at ¶ 5.) The Crouches confirmed with Robinson that the annuity was not issued the way they intended and that they would return to the bank to complete the necessary forms to correct this mistake. (Crouch Affidavit at ¶ 3.)

Although they were tardy in tending to this business, on April 4, 2000, the Crouches went to AmSouth in Wetumpka, Alabama to meet with Robinson and fill out the forms necessary to make the changes they desired under their jointly owned annuity contract #774944. (Crouch Affidavit at ¶ 4); (Robinson Affidavit at ¶ 6.) Robinson explained that they would need to fill out an annuity service request form so that the primary beneficiary on the annuity contract #774944 could be changed from their son, Plaintiff Crouch to Defendant Crouch, and have their son listed as the contingent beneficiary. (Crouch Affidavit at ¶ 4) Robinson filled out and explained the Annuity Service Request form and requested that both of the Crouches sign the form as they were joint owners. (Crouch Affidavit at ¶ 4); (Robinson Affidavit at ¶ 6.) (Annuity Service Request Form attached hereto as **Exhibit B**) Because her late husband had forgotten his reading glasses, he requested that Defendant Crouch sign his name as well as her own on

the form. (Crouch Affidavit at ¶ 4); (Robinson Affidavit at ¶6.) In the presence of her late husband and Robinson, and at her late husband's request, Defendant Crouch signed her late husband's name and her name on the form. (Crouch Affidavit at ¶ 4); (Robinson Affidavit at ¶ 6.) Robinson witnessed these signatures by signing her name and then submitted the form to Lincoln National. Recognizing the validity of the joint owners' request, the changes to the annuity contract were made by the company. Based upon this change, Defendant Crouch was both joint owner and primary beneficiary under the annuity contract. (Crouch Affidavit at ¶ 4); (Robinson Affidavit at ¶ 6.)

At the time the Crouches jointly purchased the annuity contract #774944 and at the time that they changed the contract, they were both mentally competent and of sound mind and disposing memory. (Crouch Affidavit at ¶ 5); (Robinson Affidavit at ¶ 7.) The Crouches fully understood the actions taken with respect to the purchase and change of beneficiary for Lincoln National annuity contract #774944. (Crouch Affidavit at ¶ 5); (Robinson Affidavit at ¶ 7.) Both the purchase and change of beneficiary were done of the Crouches' own free will. (Crouch Affidavit at ¶ 5); (Robinson Affidavit at ¶ 7.)

After Defendant Crouch's husband passed away on February 14, 2001, Defendant Crouch elected to surrender and cancel the annuity contract and obtain the proceeds in a lump sum. She had the absolute right to take this action as sole primary beneficiary and sole owner of the annuity contract. Robinson assisted Defendant Crouch, as sole primary beneficiary and sole owner, in filing out an Annuity Claimant's Statement and Annuity Service Request form with Lincoln National for the purpose of having annuity contract #774944 cancelled and surrendered and the proceeds deposited in her bank account. (Crouch Affidavit at ¶ 6); (Robinson Affidavit at ¶ 8.) (Annuity Claimant's Statement

166051.2                                    5

and Annuity Service Request attached hereto, **Exhibit C**). As requested, the proceeds of the annuity were properly paid to Defendant Crouch as sole owner and primary beneficiary under annuity contract #774944. (Robinson Affidavit at ¶ 8.)

All of Robinson's actions taken with respect to the sale and servicing of annuity contract #774944 were taken as a registered representative and agent of AmSouth Investment Services, Inc. and she was paid a commission in connection with the sale of the annuity (Robinson Affidavit at ¶ 9.)

**IV. ARGUMENT**

    **A.**   <u>**All of the Plaintiff's claims against AmSouth Bank must fail as a matter of law.**</u>

All of the Plaintiff's claims are based on the contention that the primary beneficiary of the annuity was changed from himself to Defendant Crouch without his father's knowledge or consent, therefore, making the change of beneficiary improper. However, the aforementioned facts clearly show that, not only was James Earl Crouch aware of the beneficiary change from the Plaintiff to Defendant Crouch, he was present and requested that the changes be made and authorized Defendant Crouch to sign the change of beneficiary form on his behalf because he did not have his reading glasses.

As a matter of law, the changes to the annuity contract in April 2000 at the request of the joint owners were valid, binding and controlling upon the parties. "It has long been the law of this state that one person's name may be signed for him by another in his presence and by his direction... ." *Hamilton v. Adams*, 108 So. 1 (Ala. 1926); *see Goldsmith v. Gates*, 88 So. 861, 862 (Ala. 1921) ("It has long been the law, under the statutes of this state, that the testator's name may be signed for him by another person in his presence and by his direction, and this may be done for him by one of the subscribing

166051.2          6

witnesses to the will.") In *Hollimon v. McGregor*, 143 So. 902, 904 (Ala. 1932), the Alabama Supreme Court reaffirmed its prior rulings and determined that "… we deem it proper to say that a personal property mortgage executed by a maker (whether the maker can or cannot write his name) by having another, in his presence, and by his direction, to sign the maker's name thereto, would be a validly executed instrument. This has long been the law of this state." *Hamilton*, 108 So. at 1; *see Goldsmith*, 88 So. at 862; *Middlebrooks v. Barefoot*, 25 So. 102, 103 (Ala. 1899) ("…[T]he rule is that he may affix his signature by the hand of another, the subscription being made in his presence and at his direction, however capable he may be mentally and physically at the time of writing his own name."); *see Consolidated Motor co. of Ala. v. Malik*, 92 So. 262, 263 (Ala. 1922); *Wright v. Forgy*, 28 So. 198 (Ala. 1900) ("It was perfectly competent and legal for the surety to act as an agent for the principal in signing his name to the bond on his presence and at his request, and when this was done it was as perfect and complete an execution as if the defendant himself had subscribed his own signature, or, being unable to write, had made his mark, and the same being attested by a witness who could write his name."); *Lewis v. Monroe*, 13 So. 570, 571 (Ala. 1893) ("This on the principle that where the grantor is present, and authorizes another, either expressly or impliedly, to sign his name to the deed, it then becomes his deed, and is as binding upon him, to all intents and purposes, as if he had personally affixed his signature."). In *Lewis v. Monroe*, the Alabama Supreme Court stated the reason for allowing an individual to sign on behalf of another person in their presence and at their direction as follows:

> "The name being written by another hand, in the presence of the grantor, and at her request, is her act. The disposing capacity, the act of mind, which are the essential and efficient ingredients of the deed, are hers; and she merely

166051.2                    7

> uses the hand of another, through incapacity or weakness, instead of her own, to do the physical act of making a written sign. To hold otherwise would be to decide that a person having a full mind, and clear capacity, but, through physical inability, incapable of making a mark, could never make a conveyance or execute a deed."

*Lewis*, 13 So. at 571, (quotation omitted.) Therefore, Defendant Crouch's signing of the change of beneficiary form for her husband, in his presence and at his direction, is clearly permissible and binding under Alabama law.

The parties rights with respect to the annuity contract were fixed as a matter of law in April 2004 when Lincoln National changed the contract terms at the request of the joint owners. Simply put, the Plaintiff has no legal standing to challenge the valid actions of his parents. Under the amended annuity contract, the Plaintiff was only a contingent beneficiary and the contingency that could give rise to any contractual rights on his part never occurred before the contract was validly cancelled by the sole owner and beneficiary, his mother. *see Carter v. First Nat. Bank*, 185 So. 361, 362-63 (Ala. 1938) ("Our cases hold that a beneficiary in a policy with a right to make a change in that respect when the policy has not been assigned to him, and he has no other contractual interest or sufficient consideration, has no vested enforceable interest in it until the insured shall die without making a change or an assignment to another. At the moment of his death such interest becomes enforceable.") In the present case, the facts are clear that the contingency, the death of both the Plaintiff's parents, never occurred so as to give the Plaintiff a vested interest in the funds under the annuity contract. It is without reasonable dispute that under the facts and Alabama law, the Plaintiff has no valid legal or factual position to support his claim for the annuity funds.

In summary, the Plaintiff's actions to challenge the wishes and clear intentions of his parents and efforts to intercept funds to which he is not entitled are not supported in law or in fact. Summary judgment should be granted in favor of AmSouth as to all of the Plaintiff's claims.

### B.  The Annuity was issued through AmSouth Investment Services, Inc., not AmSouth Bank.

AmSouth Bank is not a proper defendant in this litigation. Annuity contract #774944 was issued and changed at the request of the joint owners with the assistance of Ronda T. Robinson as a registered representative and agent of AmSouth Investment Services, Inc. Because AmSouth Bank was not responsible for issuing or servicing the annuity contract as referenced in the Plaintiff's complaint, AmSouth Bank cannot be found liable for any of the allegations arising out of the Plaintiff's complaint.

### V.  CONCLUSION

For the foregoing reasons, AmSouth Bank's motion for summary judgment is due to be granted.

Respectfully submitted this 9th day of March, 2006.

/s/ Charles B. Paterson
One of the Attorneys for Defendant,
AmSouth Bank

**OF COUNSEL:**

Charles B. Paterson (ASB-1542-R73C)
Joseph Seawell Moore (ASB-9146-O77M)
BALCH & BINGHAM LLP
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104-2549
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
cpaterson@balch.com
jsmoore@balch.com


Paul J. Delcambre, Jr.
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228)864-9900
Facsimile: (228) 864-8221
pdelcambre@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following either electronically to all participants of CM/ECF or by U.S. Postal Service for all Non-CM/ECF participants.

| | |
|---|---|
| Glenn L. White, Esquire<br>Holmes & White, PLLC<br>601 Highway 42 E<br>P.O. Box 672<br>Petal, Mississippi 39465<br><br>*Attorney for James E Crouch* | Carol Ann Estes Bustin<br>Bustin Law Firm<br>109 Fairfield Drive, Suite 109<br>Hattiesburg, Mississippi 39402<br><br>*Attorney for Ina Sue Crouch* |
| Samuel S. McHard, Esq.<br>Bryan Nelson Randolph PA<br>P.O. Box 18109<br>Hattiesburg, Mississippi 39404<br><br>*Attorney for James E. Crouch* | Glenda W. Hughes, Esq.<br>103-B Commerce Street<br>Wetumpka, Alabama 36092<br><br>*Attorney for Ina Sue Crouch* |

Done this the 9th day of March, 2006.

/s/ Charles B. Paterson
Of Counsel

166051.2                                11