IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

JAMES E. CROUCH     PLAINTIFF

VERSUS     CIVIL ACTION NO. 2:06-CV-00111-MEF

AMSOUTH BANK, INA SUE CROUCH
AND JOHN DOES 1 – 10     DEFENDANT

## AFFIDAVIT OF JAMES EDWARD CROUCH

STATE OF MISSISSIPPI
COUNTY OF LAMAR

COMES NOW, James Edward Crouch, after first being duly sworn, and deposes and states as follows:

1. My name is James Edward Crouch (hereinafter "James"). I am of adult age. My date of birth is March 8, 1957. I am competent to testify and I am making this affidavit based upon my personal knowledge. I have been married to Teresa Crouch since October 21, 1978.

2. My father was James Earl Crouch (hereinafter "James Earl") who was born April 12, 1928, and died February 14, 2001.

3. In May or June, 1998, Ina Sue Crouch and James Earl called me and explained that James Earl had purchased a $250,000.00 annuity at AmSouth Bank and that I would receive the money from that annuity when James Earl died.

4. The May 7, 1998, Application for Annuity signed by James Earl and Ina Sue is clear and unambiguous in stating the intention of James Earl that James was to be the sole beneficiary of the annuity. (Attached as Exhibit 1). That application shows that on May 12, 1998, at

Page 1 of 5



EXHIBIT A

    8:24 a.m. AmSouth Investments stamped the application and authorization form that indicated that the principal had approved the Crouch application for the Lincoln National Life Insurance Company Annuity and received a check in the amount of $250,000.00 for its purchase. Further, the confirmation letter from Lincoln National to my father dated May 18, 1998, (Attached as Exhibit 2) confirmed the facts surrounding the issuance of the annuity and that there were no amendments, changes or corrections intended.

5.   Prior to and after my marriage to my wife, Teresa Crouch, my father, James Earl, reminded me and my wife that he had prepared his Will which left One Dollar ($1.00) to each of his other children with the remainder of his property to be divided with half to go to my mother, Ina Sue, and half to me.

6.   In early January, 2001, my wife, Teresa Crouch, and I visited my parents' at my father's home located at 360 Old 231 North, Wetumpka, Alabama. During our visit, James Earl stated that his health was failing and reminded me and my wife, Teresa, that when he died he didn't care what Ina Sue did but I would get all the money from the annuity at AmSouth.

7.   In late January or early February, 2001, James Earl's health continued to deteriorate. Ina Sue made repeated efforts to have an attorney prepare a Power of Attorney and a new Will for James Earl and to have the doctor for James Earl declare him incompetent.

8.   On February 14, 2001, James Earl died.

9.   The day before the funeral for James Earl, I and my half siblings agreed to read James Earl's Will at the Wetumpka homestead the following morning before the funeral. When my wife and I arrived, David Shaddix, Ina Sue's son from a prior marriage, went out into the yard and began burning documents in the burn barrel behind the home. He and Ida Sue advised me

and my wife that they could not find the Will of James Earl.

10. In connection with James Earl's estate, Barbara Middleton, one of my siblings, filed under oath a Petition for Letters of Administration (Attached hereto as Exhibit 3) stating that Ina Sue refused to tender the Will of James Earl for probate. Furthermore, Barbara Middleton filed in the Probate Court of Elmore County, Alabama an Objection to Motion to Intervene in her father's estate (Case #01-272) (Attached hereto as Exhibit 4) in which she alleged:

> Paragraph 4 - Sue Crouch was the last known possessor of the Will of James Earl Crouch.
>
> Paragraph 5 - The Will has disappeared under mysterious and suspicious circumstances.
>
> Paragraph 6 - There has been a great deal of activity concerning the assets of James Earl Crouch subsequent to his death, which may be contributed to the widow, Sue Crouch.
>
> Paragraph 7 - The widow, Sue Crouch, in her Motion to Intervene, does not come before the Court with "clean hands".

11. Although James Earl had prescription "reading glasses" for several years prior to 1998, he rarely wore them and did not need them to sign his name. In fact, he rarely took them with him when he left the home.

12. That in connection with the said probate proceedings, the deposition of Ina Sue Crouch was taken pursuant to notice (Attached as Exhibit 5). In that deposition, Ina Sue Crouch admitted the following:

    A.    Page 74/Line 23 - Page 75/Line 9

       Q.      Have you ever signed Mr. Crouch's name to anything?

       A.      Unh-unh.

       Q.      Never?

       A.      Unh-unh. Unh-unh. Never. Mr. Crouch was always able to sign his own name whenever we done business. No, I've never signed his name to nothing.

B.     Page 44/Line 11 - Page 45/Line 5

       A.      There was never no money changes or nothing unless he was there and aware of it. We had no money changes. No bank changes was made since May the 8th, 1998. And I think very he was very, very aware then.

       Q.      And when you say bank changes, you mean –

       A.      Changed something.

       Q.      – y'all didn't transact any business?

       A.      No. Transact no business whatsoever after May the 8th, 1998.

       Q.      Okay. And it's your testimony from May the 8th, 1998, until he died, your husband transacted no business?

       A.      Well, we just had CDs; and when they come due, we just let them review theirselves.

       Q.      So it's an automatic renewal.

       A.      We didn't take them out. Just automatic renewal.

C.     Page 93/Line 11 - Line 23

       Q.      Tell me about the annuity that your husband had.

       A.      I told you that a while ago.

       Q.      Okay. Tell me again. I'm slow.

       A.      Well, we just had an annuity with Lincoln Life Insurance Company.

       Q.    And how many times has the beneficiary been changed on that?

       A.    Never.

       Q.    Never. So from the time it was first purchased until the time of your husband's death, the beneficiary was you?

       A.    Yes. Right.

(Attached as Exhibit 6)

13. Ronda Robinson represented that she assisted James Earl and Ina Sue in completing the change of beneficiary form (Attached as Exhibit 7) and that the change of beneficiary form was signed by each of them. Also, Ronda Robinson represented to Paul DelCambre that both James Earl and Ina Sue signed the change of beneficiary form in her presence and that James Earl's signature was not a forgery signed by Ina Sue.

14. I am familiar with the signature of my father and witnessed that signature many times throughout the course of my life. The purported signature of my father on the "Change of Beneficiary" form (Attached as Exhibit 7) is not the signature of my father.

Further affiant sayeth naught.

                                                                               _____
                                                                               JAMES EDWARD CROUCH

SWORN TO AND SUBSCRIBED BEFORE ME, this _22nd_ day of March, 2006.

                                                                               _____
                                                                               NOTARY PUBLIC

My commission expires:

_____

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES JAN. 23, 2009
BONDED THRU STEGALL NOTARY SERVICE

                             Page 5 of 5



**LINCOLN NATIONAL LIFE INSURANCE CO.**
A part of LINCOLN NATIONAL CORPORATION

Flexible Premium D[eferr]ed Fixed Annuity Application

Product Name: __Investor's Choice__

MARKET: ☒ Non-Qualified  ☐ New IRA (Year ____)  ☐ IRA Transfer  ☐ IRA Rollover  ☐ Other: ____

**ANNUITANT INFORMATION** (Please Print)
Full Name: __James E. Crouch__
Sex: ☒ M  ☐ F   Birthdate: __4/12/28__
Soc. Sec. #: __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__  Maturity: __AGE 100__
Primary Beneficiary: __James Edward Crouch__
Relationship: __Son__
Contingent Beneficiary: ____
Relationship: ____

**OWNER INFORMATION**
Contract Owner: ____
Birthdate: __/__/__  Tax ID #: ____
Relationship to Annuitant: ____

**JOINT OWNER INFORMATION**
Joint Owner (if any): __Sue Crouch__
Birthdate: __10/13/23__  Tax ID #: __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__
Relationship to Owner: __Wife__

Note: Joint Owners have equal rights under the contract. Upon a non-annuitant Owner's death, Surrender Value proceeds will be paid to any surviving Owner as beneficiary. Only spousal beneficiaries may continue the contract.

**MAILING ADDRESS** (All policy correspondence will be sent to this address).
Name: __James E. or Sue Crouch__
Address: __360 Old 231 N.__
__Wetumpka, AL 36092__
Phone #: __(334) 567-0183__

**OWNER BENEFICIARY INFORMATION**
Owner's Beneficiary: ____
Relationship: ____
Note: Owner Beneficiary designations are applicable only when there is no Joint Owner.

Replacement: Will the proposed contract replace any existing annuity or insurance contract?
☐ Yes  ☒ No   If "Yes", give details in "Remarks" section.

Initial Premium Deposit  $__250,000.00__

Optional Contribution Modes:
☐ Monthly/PAC  ☐ Annual   $____
☐ Quarterly  ☐ Semi-Annual

Remarks:
**Principal Approved**
Signature ____
Date __MAY 12 1998__

Signed at __Wetumpka__ / __AL__ / __5/7/98__
           City          State       Date

X __James E. Crouch__                X __Sue Crouch__
Signature of Owner                   Signature of Joint Owner (If applicable)

**AGENT'S REPORT**
Do you have any knowledge or reason to believe that the Proposed Contract will replace any existing annuity or insurance Contracts (including Lincoln National Life Insurance Company Contracts) which have been [reduced in] premium amount, placed on paid-up, or surrendered?
☐ Yes  ☒ No   If "yes", list company, plan, year issued.

**CHECK RECEIVED**
5/12/98  A2
250,000⁰⁰

X __Ronda Robinson__
Agent's Signature
__Ronda Robinson #1069__
Print Agent Name & Number

[EXHIBIT 1]
Home Office Endorsement

Form LN-1799 (12/90)   Administrative Office: 1801 South Meyers Road • Oakbrook Terrace, Illinois 60181-5214 • (708) 916-0095   IIB3.0

**LINCOLN NATIONAL LIFE INSURANCE**
A part of LINCOLN NATIONAL CORPORATION

MAY 18, 1998

JAMES E. CROUCH
SUE CROUCH
360 OLD 231 N
WETUMPKA AL  36092

Re: Contract 774944        Annuitant: JAMES E. CROUCH

Dear JAMES E. CROUCH:

Congratulations on your recent annuity purchase. You have joined thousands of others in selecting this quality tax-deferred product. Lincoln National Life and AmSouth Investment Services appreciate your business and look forward to providing you the best of service in years to come.

This letter confirms the issuance of your tax-deferred annuity. Please take a moment to review and verify the information shown on the attached Contract Data page. If any corrections or changes were made on the application, there may be an Amendment form attached which requires your signature.

The original contract and these confirmation pages should be kept with your other important investment documents. You will receive a statement at least annually showing all activity on your annuity contract including interest earned.

Your initial deposit has been credited with an initial, guaranteed annual interest rate as noted on the attached Contract Data page. Any additional deposits will have a similar guarantee based on the current interest rate for the month of deposit.

If you have any questions or need additional information, please contact your representative at AmSouth Investment Services or our Client Service Department directly at 1-800-248-6301. We look forward to not only providing you with a secure and profitable investment, but also delivering quality service for years to come.

Again, thank you for your business.

Sincerely,


ANDREA L. LEWIS
New Business Representative

cc:  C/O AMSOUTH INVESTMENT SERVICE                    LN437PAB7010

EXHIBIT 2

Administrative Office: 1801 South Meyers Road  Oakbrook Terrace, Illinois 60181  (630) 916-0095

```
                    Lincoln National Life
                 Flexible Premium Deferred Annuity

     Contract#    Issued      Maturity   Form   Rate    Taxq
     774944      05/08/98     04/12/28   INV    6.00%    N

     Initial Deposit:        250,000.00  Issue State: AL
     Billing Amount:              0.00   Billing Mode: N

     Annuitant:                       Owner(s):
     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                      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
     JAMES E. CROUCH                  JAMES E. CROUCH
     Birthdate 04/12/28               SUE CROUCH
                                      360 OLD 231 N
                                      WETUMPKA AL  36092




     Institution:  AMSOUTH INVEST.         LN437001L
     Sales Rep:    ROBINSON                LN437PAB7010
```

## Contract Data

| | |
|---|---|
| Contract Number | Sent With Confirmation |
| Annuitant | *James E. Crouch* |
| Age at Issue | *70* |
| Contract Date | *5-7-98* |
| Initial Purchase Payment | *250,000.00* |
| Planned Periodic Purchase Payments | $ 0.00 |
| Purchase Payment Frequency | Unscheduled |
| Maturity | Not later than Annuitant's 100th Birthday |

Owner:

*James E. Crouch*

Joint Owner:

*Sue Crouch*

Annuitant's Beneficiary:

As noted in application

Owner's Beneficiary:

As noted in application (if applicable)

Your initial Purchase Payment is guaranteed to be credited at an Initial Annual Effective Rate of . . . . . . . . . . . . . . . . . . . . . . *6.00* %

This rate is guaranteed for 1 year from the Contract Date.

Note: This Contract is valid with proof of initial deposit. Lincoln National reserves the right to amend or correct material errors made at the time of issue.

FILED
10/05/2001 09:23AM
JIMMY STUBBS
PROBATE JUDGE
Elmore County, AL

# PETITION FOR LETTERS OF ADMINISTRATION

PROBAT P2001 3177
Recorded In Above Book and Page
10/24/2001 08:42:51 AM
JIMMY STUBBS
PROBATE JUDGE
Elmore County, AL

STATE OF ALABAMA          IN THE PROBATE COURT
ELMORE COUNTY             CASE NO. 2001-272

Recording Fee   69.00
TOTAL           69.00

**IN RE: THE ESTATE OF JAMES EARL CROUCH, DECEASED.**

**To the Honorable Jimmy Stubbs, Judge of Probate Court, Elmore County:**

The petition of the undersigned Barbara Middleton respectfully represents unto your Honor that James Earl Crouch, deceased, departed this life on or about the 14th day of February, 2001, leaving no Last Will and Testament; so far as your petitioner knows or believes; and that the said decedent was at the time of his death an inhabitant of Elmore County, and died seized and possessed of real and personal estate in this State consisted chiefly of:

REAL ESTATE (description and location): None

Estimated value $0          Amount of yearly rental income $ None

PERSONAL ESTATE (itemize with approximate value): Unknown

Estimated value of personal estate $250,000.00

The name, address and condition of widower is: Ina Sue Crouch, 360 Old 231 North, Wetumpka, AL 36092. The condition of the widow is adversarial with the children of the deceased because she refused to tender the Will for probate.

Name, age, address and condition of each heir and distributee of the estate of the said decedent, so far as your petitioner knows or believes, are as follows, to-wit:

| NAME | RELATIONSHIP | ADDRESS |
| --- | --- | --- |
| Brenda Cobb | daughter | 2005 Yancey Avenue, Montgomery, AL 36107 |
| Carlton Wayne Crouch | son | 3113 Durham Drive, Montgomery, AL 36109 |
| Barbara Dale Middleton | daughter | 30310 Foxbranch Road, Loxley, AL 36551 |
| James Edward Crouch | son | 46 Bob Graham Road, Sumrall, MS 39482 |

That your petitioner, being the daughter of said decedent, is an inhabitant of this State, above the age of nineteen years, and in no respect disqualified under the law from serving as an administratrix, and believing that the said estate should be immediately administered, to the end that the said property may be collected and preserved for those who shall appear to have a legal right or interest therein, does, therefore, by virtue of their right under the statute pray that your Honor will grant Letters of Administration on said estate to them upon them entering into bond in such sum is required by law, and with security as shall be approved by your Honor.



EXHIBIT 3

PROBAT P2001 3178

Address: 30310 Fox Branch Rd.   *Barbara Middleton*
Loxley, AL 36551              Barbara Middleton
334/964-7472                  (SS# 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)

The State of Alabama

Montgomery County

  **BARBARA MIDDLETON** being duly sworn deposes and says that the facts averred in the above **petition** are true, according to the best of my knowledge, information and belief.

  Subscribed and sworn before me, this the __5__ day of __October__, 2001.

(SEAL)

*Millie Davis*
Notary Public
My Commission Expires: 9/13/04

Attorney for Petitioner: Jobe T. Ott and Evans H. Marshall

Address: 631 South Perry Street
Montgomery, AL 36104
Phone: 334/834-8100 and 269-0852

THE FRONT OF THIS DOCUMENT IS PINK - THE BACK OF THIS DOCUMENT IS BLUE AND HAS AN ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW

# ALABAMA
## Center for Health Statistics

FILED
10/11/2001 03:59PM
JIMMY STUBBS
PROBATE JUDGE
Elmore County, AL

PROBAT P2001 3179

## ALABAMA
### CERTIFICATE OF DEATH

0001-005264

**1. DECEASED—NAME:** James Earl CROUCH
**2. DATE OF DEATH:** February 14, 2001
**3. COUNTY OF DEATH:** Montgomery
**4. CITY, TOWN, OR LOCATION OF DEATH AND ZIP CODE:** Montgomery, Alabama 36106
**5. INSIDE CITY LIMITS:** Yes
**6. PLACE OF DEATH:** Jackson Hospital
**7. IF HOSPITAL:** Inpatient
**8. OF HISPANIC ORIGIN:** No
**9. RACE:** White
**10. SEX:** Male
**11. AGE:** 72 yrs
**13. DATE OF BIRTH:** April 12, 1928
**14. DECEASED'S SOCIAL SECURITY NUMBER:** 3423-26-2050
**15. EDUCATION:** 12
**16. MARITAL STATUS:** Married
**17. SURVIVING SPOUSE:** Sue Parrott
**18. WAS DECEDENT EVER IN ARMED FORCES:** No
**19. STATE OF BIRTH:** Alabama
**20. RESIDENCE—STATE:** Alabama
**21. COUNTY:** Elmore
**22. CITY, TOWN, OR LOCATION AND ZIP CODE:** Wetumpka, Alabama 36092
**23. INSIDE CITY LIMITS:** No
**24. STREET AND NUMBER:** 360 Old 231 Highway
**25. INFORMANT:** Mrs. Sue P. Crouch, 360 Old 231 Highway, Wetumpka, Alabama 36092
**26. USUAL OCCUPATION:** Prison Assistant
**27. KIND OF BUSINESS OR INDUSTRY:** State of Alabama Correctional System
**28. FATHER—NAME:** James Henry Crouch
**29. MAIDEN NAME OF MOTHER:** Louvina Nelson
**30. DISPOSITION OF BODY:** Burial
**31. DATE OF DISPOSITION:** Feb. 17, 2001
**32. CEMETERY OR CREMATORY:** Pine View Memorial Gardens
**33. LOCATION:** Wetumpka, Alabama 36092
**34. FUNERAL HOME:** Ellison Funeral Home, P.O. Box 436, Wetumpka, Alabama 36092
**35. FUNERAL DIRECTOR—Signature:** Ken Hammack
**36. DATE SIGNED BY FUNERAL DIRECTOR:** Feb. 19, 2001
**37. Certifying Physician** — Signature
**38. DATE SIGNED:** 2/14/2001
**39. TIME AND DATE OF DEATH:** 12:31 pm 2/14/2001
**41. NAME AND TITLE OF PERSON WHO COMPLETED CAUSE OF DEATH:** Eagle XIONGYING CHEN
**42. ADDRESS OF PERSON WHO COMPLETED CAUSE OF DEATH:** 1725 Pine Street, Montgomery AL 36106
**43. CERTIFIER LICENSE NUMBER:** AL22993
**44. REGISTRAR—Signature:** Brenda Davis
**45. DATE FILED:** Feb. 22, 2001

### MEDICAL CERTIFICATION

**46. PART I.**
Immediate cause: respiratory failure
Due to: Lung mass
Due to: NPH

**48. MANNER OF DEATH:** 

Crouch, James Earl
SSN: 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

ANY ALTERATIONS VOID THIS DOCUMENT

3. 051011
4. 100
12. 01
20. 226888
26.
27.
34. 216420

This is a legal record and must be filed within five (5) days after death.

FEB 27

I, Dorothy S. Harshbarger, State Registrar of Health Statistics, certify this is a true and exact copy of the original certificate filed in the Center for Health Statistics, State of Alabama, Department of Public Health, Montgomery, Alabama, and have caused the official seal of the Center for Health Statistics to be affixed. 2001-375-842-7

September 28, 2001

Dorothy S. Harshbarger, State Registrar

FILED
10/24/2001 08:11AM
JIMMY STUBBS
PROBATE JUDGE
Elmore County, AL

## IN THE PROBATE COURT OF ELMORE COUNTY, ALABAMA

IN RE THE ESTATE OF:
JAMES EARL CROUCH,
Deceased.

PROBAT P2001 3191
Recorded In Above Book and Page
10/24/2001 09:14:41 AM
JIMMY STUBBS
PROBATE JUDGE
Elmore County, AL

Recording Fee   3.00
TOTAL           3.00

CASE NO. 01-272

### OBJECTION TO MOTION TO INTERVENE

COMES NOW Barbara Middleton, by and through her attorneys of record to object to the Motion to Intervene filed on behalf of Sue Crouch October 5th 2001. As grounds your Petitioner shows as follows:

1. The Petitioner is the natural child and an heir of James Earl Crouch, deceased.

2. Petitioner has requested to be appointed as Administrator of the Estate of James Earl Crouch.

3. The widow of James Earl Crouch, Sue Crouch, is an inappropriate alternative to your petitioner.

4. Sue Crouch was the last known possessor of the Will of James Earl Crouch.

5. The Will has disappeared under mysterious and suspicious circumstances.

6. There has been a great deal of activity concerning the assets of James Earl Crouch subsequent to his death, which may be contributed to the widow Sue Crouch.

7. The widow Sue Crouch in her Motion to Intervene does not come before the Court with "clean hands".

WHEREFORE THE PREMISES CONSIDERED, an alternate family member will be more appropriate at this time to handle the affairs of the estate, which include investigation in the "disappearance" of the Will.

Respectfully submitted 23 day of October, 2001.

JOBE T. OTT
Attorney for Petitioner

EVANS H. MARSHALL
Attorney for Petitioner

EXHIBIT 4

## CERTIFICATE OF SERVICE

PROBAT P2001 3192

I do hereby certify that I have served a copy of the foregoing document upon Honorable Glenda W. Hughes by depositing a copy of same in the United States Mail Receptacle, First Class, postage prepaid on this the 23 day of October 2001.

_____
OF COUNSEL

```
                                                        FILED
                                                  12/17/2001 10:37AM
                                                     JIMMY STUBBS
                                                    PROBATE JUDGE
                                                   Elmore County, AL
```

        IN THE PROBATE COURT OF
        ELMORE COUNTY, ALABAMA

```
                    PROBAT  P2002   1004
              Recorded In Above Book and Page
                    03/26/2002 09:58:12 AM
                         JIMMY STUBBS
                        PROBATE JUDGE
                       Elmore County, AL
```

IN RE THE ESTATE OF        \*

                                 \*

JAMES EARL CROUCH, deceased    \*    CV-01-272

                                 \*

## NOTICE OF DEPOSITION

TO:   Honorable Glenda W. Hughes
        103B E Commerce Street #B
        Wetumpka, Alabama 36092-2702

Please take notice that Jobe T. Ott and Evans H. Marshall, as counsel for the Petitioner of the Estate of James Earl Crouch, Deceased, will take the deposition of Mrs. Sue Crouch, at 10:00 a.m. on the 22nd of January, 2002, at the law office of Jobe T. Ott, 631 South Perry Street, Montgomery, Alabama 36104, whose telephone number is (334) 834-8100. You are cordially invited to attend said deposition and duly question the deponent. Said deposition shall continue from time to time thereafter until completed.

                                                        Jobe T. Ott (OTT004)
                                                      Attorney for Petitioner

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing instrument has been served upon the following:

Honorable Glenda W. Hughes
103B E Commerce Street #B
Wetumpka, Alabama 36092-2702

By placing a copy of the same in the U.S. mail, postage prepaid, this the 14th day of December, 2001.

                                                        OF COUNSEL

**Please check website www.jayott.com for directions to office.**

EXHIBIT 5

DEPOSITION OF INA SUE CROUCH
IN RE: THE ESTATE OF JAMES EARL CROUCH

January 22, 2002

**Page 1**

```
 1           IN THE PROBATE COURT
 2                   OF
 3           ELMORE COUNTY, ALABAMA
 4
 5   IN RE: THE ESTATE OF
 6   JAMES EARL CROUCH,        CASE NO. 01-272
 7       Deceased.
 8
 9
10
11
12           * * * * * * * * * *
13
14       DEPOSITION OF INA SUE CROUCH, taken
15   pursuant to stipulation and agreement before
16   Andrea E. Martin, Registered Merit Reporter and
17   Commissioner for the State of Alabama at Large,
18   in the Law Offices of Jobe T. Ott, 631 South
19   Perry Street, Montgomery, Alabama, on Tuesday,
20   January 22, 2002, commencing at approximately
21   10:00 a.m.
22
23           * * * * * * * * * *
```

**Page 2**

```
 1               APPEARANCES
 2   FOR THE PETITIONERS:
 3   Mr. Jobe T. Ott
     Attorney at Law
 4   631 South Perry Street
     Montgomery, Alabama 36104
 5
     Ms. Evans H. Marshall
 6   Attorney at Law
     458 South Lawrence Street
 7   Montgomery, Alabama 36104
 8   FOR THE RESPONDENT:
 9   Ms. Glenda W. Hughes
     Attorney at Law
10   103-B Commerce Street
     Wetumpka, Alabama 36092
11
     ALSO PRESENT:
12
     Ms. Barbara Middleton
13   Ms. Brenda Cobb
14           * * * * * * * * * *
15           EXAMINATION INDEX
16   INA SUE CROUCH
       BY MS. MARSHALL          5
17     BY MS. HUGHES           96
18           * * * * * * * * * *
19           STIPULATIONS
20       It is hereby stipulated and agreed by
21   and between counsel representing the parties that
22   the deposition of INA SUE CROUCH is taken
23   pursuant to stipulation and agreement; that all
```

**Page 3**

```
 1   formalities with respect to procedural
 2   requirements are waived; that said deposition may
 3   be taken before Andrea E. Martin, Registered
 4   Merit Reporter and Commissioner for the State of
 5   Alabama at Large, without the formality of a
 6   commission; that objections to questions other
 7   than objections as to the form of the questions
 8   need not be made at this time but may be reserved
 9   for a ruling at such time as the deposition may
10   be offered in evidence or used for any other
11   purpose as provided for by the Alabama Rules of
12   Civil Procedure.
13       It is further stipulated and agreed by
14   and between counsel representing the parties that
15   the filing of the deposition is hereby waived and
16   that the deposition may be introduced at the
17   trial of this case or used in any manner by
18   either party hereto provided for by the Statute.
19       It is further stipulated and agreed by
20   and between the parties hereto and the witness
21   that the signature of the witness to this
22   deposition is hereby waived.
23           * * * * * * * * * *
```

**Page 4**

```
 1       MS. MARSHALL: Usual stipulations, and
 2           we'll go on record.
 3           Ms. Crouch, my name is Evans
 4           Marshall. I'm an attorney, and
 5           I'm going to be asking you some
 6           questions today. You'll be under
 7           oath. Okay?
 8       MS. CROUCH: Yes, ma'am.
 9       MS. MARSHALL: I'm expecting that if
10           you don't understand a question,
11           you'll ask me to repeat it or
12           rephrase it or say it in some
13           other way or don't talk lawyer or
14           whatever you want to say.
15       MS. CROUCH: Okay.
16       MS. MARSHALL: If you answer, I'm going
17           to assume that you understood the
18           question and that you realize you
19           are under oath. Is that okay?
20       MS. CROUCH: I know that.
21           INA SUE CROUCH
22       The witness, having first been duly
23   sworn to speak the truth, the whole truth and
```

1 (Pages 1 to 4)

DUNN, KING & ASSOCIATES
toll-free (800) 359-8001

431 South Court Street

Montgomery, AL 36104



EXHIBIT 6

DEPOSITION OF INA SUE CROUCH
IN RE: THE ESTATE OF JAMES EARL CROUCH

January 22, 2002

Page 73

1 · with any of your family members about the
2 estate of your late husband?
3 A. What you talking about? When?
4 Q. The conversation that you had Monday morning
5 at 7 a.m.
6 A. That's right. That's right. That's the
7 first time I knowed that — I never dreamed
8 that something like that was going to blow up
9 because I knew everything that we had was
10 made to me as the survivor, which would have
11 been the same thing to him if I had've died.
12 Everything would have went to him. And I'm
13 sorry. My children wouldn't have been acting
14 crazy like that about it, either, if I'd have
15 died first.
16 Q. Okay.
17 A. If it hadn't have been for them, I don't know
18 what I would have done since my husband has
19 been gone. They have been a lifesaver to me
20 coming and working for me and helping me.
21 And they don't come down there for money, and
22 they don't take off nothing. I think some
23 people might think it, but they don't.

Page 74

1 Q. Did you ever talk to Ms. Cobb again about the
2 estate or about wills?
3 A. She called me again the next morning. And my
4 son from Nashville, John David, he told her
5 don't be calling me and bothering me anymore,
6 I had enough problems. And I think I did.
7 Q. Did you talk to her or did he talk to her?
8 A. He talked to her, too.
9 Q. Both of y'all talked to her?
10 A. Yes, sir. After he got tired of it and he
11 got the phone out of my hand and told her
12 don't call me and bother me anymore, that I
13 was going through enough without being
14 bothered.
15 Q. Do you consider that harassment?
16 A. Yes, I do.
17 Q. Did you call the police?
18 A. No, I didn't.
19 Q. Did you call the phone company?
20 A. No, I didn't.
21 Q. Did you talk to your lawyer about it?
22 A. Yes.
23 Q. Have you ever signed Mr. Crouch's name to

Page 75

1 anything?
2 A. Unh-unh.
3 Q. Never?
4 A. Unh-unh. Unh-unh. Never. Mr. Crouch was
5 always able to sign his own name whenever we
6 done business. No, I've never signed his
7 name to nothing.
8 Q. Did you ever practice writing his name?
9 A. No. Nope. Unh-unh.
10 Q. What discussions have you had with the
11 probate court about your husband's will?
12 A. I ain't had no discussion with them.
13 Q. Have you been down there?
14 A. My lawyer and Mr. Ott has been down there at
15 the probate judge office, had a status
16 hearing. I was there, me and my
17 daughter-in-law; but Mr. Ott — you know, we
18 had to excuse out. I wasn't in there. I
19 don't — no, I don't have no discussions with
20 the probate judge.
21 Q. Have you had any discussions with your
22 children?
23 A. They just knew — they just know what's going

Page 76

1 on. They don't know — they don't know all
2 my — don't know my business, but they do
3 know — they knew I was coming down here
4 today. I don't hide anything from my
5 children. They don't hide nothing from me,
6 and I don't hide anything from them. I had
7 two to call me this morning before I come.
8 Q. Have you had any discussions with anybody
9 else outside your family since your husband's
10 death, about your husband's estate?
11 A. No. Brenda, Ms. Cobb, called my brother, so
12 he said, and wanted to know who my lawyer was
13 and all. That's all I know. And he told her
14 he didn't know. Now, that's just what he
15 told me, now. I didn't hear the
16 conversation.
17 Q. Since your husband's death, have you
18 conducted any business?
19 A. Any business?
20 Q. Any estate business.
21 A. Nope. I just got my same routine of stuff.
22 Of course, you know, since he died, his name
23 is not on stuff anymore because he's dead.

19 (Pages 73 to 76)

DUNN, KING & ASSOCIATES
toll-free (800) 359-8001

431 South Court Street
website: www.dunnking.com

Montgomery, AL 36104
ph. (334)263-0061 fax 263-1243

DEPOSITION OF INA SUE CROUCH
IN RE: THE ESTATE OF JAMES EARL CROUCH

January 22, 2002

Page 41

1  Q. What were the anticipated changes?
2  A. Well, I don't really — I don't know, really,
3     what we would have put on there because we
4     never got into it. We was just going to do
5     it, but I don't know. I couldn't tell you
6     exactly what we was going to do. I mean, I
7     couldn't tell you what we was going to do for
8     each child because we never did write it
9     down.
10 Q. Well, let me see. You weren't going to
11    change the names of the children, were you?
12 A. No, no, no. We wasn't going to change the
13    names.
14 Q. And you weren't going to change the number of
15    beneficiaries?
16 A. No.
17 Q. So was there anything left to change except
18    the amount?
19 A. We was just going — we might have been —
20    change the amount. We might have been doing
21    that. We might have had a little something
22    else we wanted to put on it because we had
23    changed things around a little. And we

Page 42

1     really didn't know what we was going to do.
2     We was going to sit down and discuss it with
3     an attorney whenever he felt like going. He
4     didn't feel like fooling with it, he said.
5  Q. Y'all plan to go back to Mr. Henig?
6  A. No.
7  Q. No? Who were you going to?
8  A. I was going to get Mr. Thornton to write it.
9     I even went down one day to his office to get
10    him to come up to my house and get the
11    information from Earl like that. And he was
12    on a case that day, so I —
13 Q. He?
14 A. Mr. Thornton.
15 Q. Okay. Did your husband go with you?
16 A. No. He was — he didn't feel like going.
17    And I was going to have him come up to the
18    house and see, you know, about taking the
19    information from the house, but he was in
20    court. So that was the end of the dream. I
21    didn't see him. And that's the only time —
22    that was the last discussion that we had
23    about it.

Page 43

1  Q. And that was when?
2  A. That was in 2001.
3  Q. Do you remember which month?
4  A. I'm going to say it was about August.
5  Q. And in August, it's your testimony that your
6     husband didn't feel well enough for y'all to
7     follow your usual practice of going
8     everywhere together making these decisions
9     together, so you went to Mr. Thornton's
10    office to induce Mr. Thornton to come up to
11    your house and make a new will for both of
12    y'all?
13 A. Well, yeah. We was going to discuss it.
14 Q. And it's your testimony that Mr. Thornton was
15    in court, so you didn't see him?
16 A. I did not see him.
17 Q. Did you leave a message for him?
18 A. I just saw his secretary.
19 Q. Did you leave a message for him to call you
20    or anything?
21 A. No, I did not.
22 Q. Did you tell your husband where you had been?
23 A. Yes.

Page 44

1  Q. How alert and aware was he at this time?
2  A. Oh, he was alert. He didn't get where he
3     didn't know things till way in January. He
4     might forget a few things, but — you know,
5     maybe mix it; but, no, no, it was way in
6     January before he got where he didn't know a
7     lot about things. And there was never
8     nothing discussed no more after he got where
9     he didn't — wasn't aware. And I never done
10    nothing after he wasn't aware.
11       There was never no money changes or
12    nothing unless he was there and aware of it.
13    We had no money changes. No bank changes was
14    made since May the 8th, 1998. And I think
15    very he was very, very aware then.
16 Q. And when you say bank changes, you mean —
17 A. Changed something.
18 Q. — y'all didn't transact any business?
19 A. No. Transact no business whatsoever after
20    May the 8th, 1998.
21 Q. Okay. And it's your testimony from May the
22    8th, 1998, until he died, your husband
23    transacted no business?

11 (Pages 41 to 44)

DEPOSITION OF INA SUE CROUCH
IN RE: THE ESTATE OF JAMES EARL CROUCH

January 22, 20

Page 93

1  Q. But you haven't conducted any business on the
2      estate; is that correct?
3  A. What do you mean by that?
4  Q. Same thing I meant last time I asked it.
5      Have you transferred any assets? Have you
6      changed any assets, names?
7  A. No, no, no.
8  Q. Did any of Mr. Crouch's children help look
9      for the wills?
10 A. No.
11 Q. Tell me about the annuity that your husband
12     had.
13 A. I told you that a while ago.
14 Q. Okay. Tell me again. I'm slow.
15 A. Well, we just had an annuity with Lincoln
16     Life Insurance Company.
17 Q. And how many times has the beneficiary been
18     changed on that?
19 A. Never.
20 Q. Never. So from the time that it was first
21     purchased until the time of your husband's
22     death, the beneficiary was you?
23 A. Yes. Right.

Page 94

1  Q. Now, you did testify that a burial policy had
2      changed beneficiaries. Would any of your
3      other assets have changed beneficiaries as
4      well?
5  A. No.
6  Q. So it was only the burial policy?
7  A. Well, I have -- you do that if you have
8      insurance, if you're married to somebody. I
9      changed my beneficiary off of my burial
10     policy to my husband, and it's still to him.
11 Q. So these were assets that y'all had before
12     you married, you and your husband?
13 A. No, we didn't have any assets. We -- talking
14     about the burial thing, yeah, I had my
15     policy, yeah, and he had a policy; but we
16     didn't have any money. Mr. Crouch didn't
17     have any money, and I didn't either, when we
18     married. We just lived, like most everybody
19     else, from payday to payday. We accumulated
20     everything we had after we married. I done
21     it mostly. I bought the CDs and done it. We
22     bought property and rented it and sold it.
23 Q. So if his first wife's name was on a burial

Page 95

1      policy and you had not accumulated this
2      burial policy at the time that you and your
3      husband married, then he had his ex-wife's
4      name on a burial policy?
5  A. Well, I think it had been took out back way
6      years ago. Whenever you have children, you
7      know, they take burial policies and things.
8      And it wasn't -- they was just paying a
9      little weekly thing on it like everybody used
10     to do. And you got a little --
11 Q. So this was purchased before y'all married?
12 A. Oh, yes, yes, yes. And he brought it to me
13     and I paid it off, the vault and the burial.
14 Q. Do you happen to remember how much you paid?
15 A. I don't know. I got the paid-up thing at the
16     house. I don't know exactly what it is, but
17     I've still got it.
18 Q. Do you remember what year it was that you
19     paid it off?
20 A. 60 -- in the '60s. I don't know exactly.
21 Q. And at that time, was the beneficiary
22     changed?
23 A. Yes, ma'am.

Page 96

1  Q. Did you ever have a conversation with anyone
2      about the beneficiary to that annuity?
3  A. To the annuity?
4  Q. Yes, ma'am.
5  A. I told Jim. Well, he knew he was beneficiary
6      on it in case me and his daddy both got
7      killed or something.
8  Q. Did the other children know that?
9  A. I don't know whether they did or not.
10 Q. And it's your testimony that only one of
11     Mr. Crouch's children -- whoever ever brought
12     up that burial policy was Ms. Cobb?
13 A. That's right.
14 Q. And that was a change that was made in 1966.
15     And the first time she brought it up was when
16     her father died?
17 A. Yes.
18     MS. MARSHALL: That's all I've got. Do
19     you have redirect?
20     MS. HUGHES: Yes.
21     EXAMINATION
22 BY MS. HUGHES:
23 Q. Did you state that the house was kept locked

24 (Pages 93 to 96)

DUNN, KING & ASSOCIATES          431 South Court Street          Montgomery, AL 36104
toll-free (800) 359-8001

# LINCOLN NATIONAL LIFE INSURANCE CO.
A part of LINCOLN NATIONAL CORPORATION

## ANNUITY SERVICE REQUEST
### Contract Changes

Annuitant's Name: __James E. Crouch__   Contract #: __774944__

Institution/Agency: __AmSouth Bank__   Tax I.D.#: _____

### SECTION A - BENEFICIARY CHANGES

In accordance with the provisions of this contract, I hereby revoke all former designations and replace them as follows for:  ☒ Annuitant's Beneficiary   ☐ Owner's Beneficiary

| Primary | Contingent | Name and Address | % | Relationship |
|---|---|---|---|---|
| ☒ | ☐ | Sue Crouch | 100 | Wife |
| ☐ | ☒ | James Edward Crouch | 100 | Son |
| ☐ | ☐ | | | |
| ☐ | ☐ | | | |

### SECTION B - NAME CHANGES

Name change for:
☐ Annuitant
☐ Primary Owner
☐ Joint/Contingent Owner

Reason for change:
☐ Marriage
☐ Divorce
☐ Legally Changed (include copy)
☐ Other:

Print new name: _____
Old signature: _____
New signature: _____

### SECTION C - ADD/CHANGE OWNER

To be added/changed:
☐ Primary Owner
☐ Joint/Contingent Owner

Reason for change:
☐ Marriage
☐ Divorce
☐ Court Ordered (include copy)
☐ Change to a Trust

Name: _____

The LNL contract does not allow changes to ownership for any reason other than those listed above. Assignments are also not allowed on this annuity contract.

### SECTION D - ADDRESS CHANGE

New mailing address:
Street: _____
City: _____
State, Zip: _____
Effective date of change: _____

An acknowledgment of this change will be sent to both the old and the new address. Future correspondence will be sent to the new address as shown above.

### SECTION E - DUPLICATE CONTRACT

This is to certify that the original copy of the annuity contract has been lost. Please forward a duplicate contract for my records to the following address:

Name: _____
Address: _____
City, State, Zip: _____

If the original contract is found, it should be returned to Lincoln National immediately.

### SECTION F - OTHER REQUESTS



### SECTION G - SIGNATURES

The effective date of this Contract Change Request will be the date the form is received and recorded in the Administrative Office of Lincoln National Life Insurance Company.

Dated at __Wetumpka, AL__ on the __4__ day of __April__, 19 __2000__

Owner: __James E. Crouch__   Agent/Witness: __Ronda Robinson__

Joint Owner: __Sue Crouch__   Agent/Witness: __Robinson__

1801 South Meyers Road • Oakbrook Terrace, Illinois 60181-5214 • (630) 916-0095   LN-3110 (8/95)



EXHIBIT 7