IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES E. CROUCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. |
| v. | ) |
| | ) 2:06-cv-00111-MEF |
| LINCOLN NATIONAL LIFE | ) |
| INSURANCE COMPANY *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Lincoln National Life Insurance Company ("Lincoln National") submits this Memorandum in support of its Motion for Summary Judgment. Lincoln National shows that it is entitled to judgment as a matter of law based upon two separate and independent grounds. First, the undisputed facts show that the decedent-annuitant's signature on the change-of-beneficiary form was an authorized signature as a matter of law. Second, Lincoln National paid the annuity insurance benefits to the contractually designated beneficiary prior to receiving any written (or other) notice that there was any claim or dispute concerning the annuity insurance benefits, and under the authority of *Ala. Code* § 27-14-12 and *Fortis Benefits Ins. Co. v. Pinkley*, 926 So. 2d 981 (Ala. 2005), Lincoln National is discharged from liability as a matter of law.

I.  **INTRODUCTION**

This action arises from a dispute between a son, Plaintiff James Edward Crouch ("Plaintiff Crouch") and his mother, Ina Sue Crouch a/k/a Sue Crouch ("Defendant Crouch"), regarding benefits payable under a $250,000 annuity contract issued by Lincoln National and as to which plaintiff's father, James Earl Crouch, deceased, and plaintiff's mother, Sue Crouch, were joint owners. Plaintiff Crouch alleges in his Second Amended Complaint that he is the rightful beneficiary under the annuity contract to the exclusion of his mother. Plaintiff Crouch was initially designated as the primary beneficiary under the annuity, but the annuity was changed to designate him as a contingent beneficiary and his mother as a primary beneficiary. Accordingly, the annuity proceeds were paid to the mother upon the father's death. Plaintiff Crouch contends that the change of beneficiary form executed on behalf of his father, as primary annuitant and co-owner, and his mother, as co-owner, is null and void, and that the annuity proceeds should have been paid to him.

The gravamen of Plaintiff Crouch's complaint is the allegation that his father's signature on the change of beneficiary form was a forgery and was an unauthorized and invalid signature. The form was signed by plaintiff's mother, on her own behalf as joint owner of the annuity, and also by plaintiff's mother on

2

behalf of, and in the presence of, her husband, plaintiff's father. The signatures were witnessed by AmSouth employee Ronda Robinson, who has been deposed, and who testified that, in her presence, the elder Mr. Crouch stated that he had forgotten his reading glasses and therefore asked his wife, Defendant Sue Crouch, to sign his name for him and that she did so. Under Alabama law, such a signature is legally valid and is the legal equivalent of the elder Mr. Crouch having personally signed the form.

Plaintiff Crouch failed to provide any written (or other) notice to Lincoln National that he claimed an interest in the insurance benefits payable from the annuity until several months after the proceeds had been paid to his mother, Sue Crouch, in March 2001. Accordingly, because Sue Crouch was the designated beneficiary and no competing claims had been received, Lincoln National paid the proceeds to Sue Crouch and Lincoln National is protected from the claims herein under *Ala. Code* § 27-14-24.

Plaintiff Crouch mounts his attack upon his parents' actions in changing the beneficiary and seeks to deprive his widowed mother of the annuity proceeds by alleging the following theories of recovery seeking essentially the same relief: (1) breach of contract, (2) specific performance; (3) negligence (4) fraud; (5) tortious interference with contract; and (6) imposition of a constructive trust. As discussed

herein, the Plaintiff's claims to the annuity benefits, however stated, are due to be dismissed under *Fed. R. Civ. P. 56* as a matter of law.

Defendant AmSouth Bank initially filed for summary judgment on March 23, 2006. The Court denied that motion on March 28, 2006 as "premature." Since that time, plaintiff has filed a Second Amended Complaint adding Lincoln National as a defendant, and, more significantly, the depositions of Plaintiff Crouch, of Defendant Crouch, and of Ronda Robinson all have been taken. These depositions have provided full discovery on the facts and circumstances surrounding the execution of the change of beneficiary form. Accordingly, summary judgment is no longer "premature" but is "ripe" for submission to the Court.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c); Celotex v. Catrett,* 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of a claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986); *see also Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.

4

*Allen,* 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen,* 121 F.3d at 646. Although all reasonable inferences arising from the undisputed facts should be made in favor of the nonmoving party, an inference based on speculation and conjecture is not reasonable. *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985).

## III.  STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant Sue Crouch and her late husband James Earl Crouch (collectively "the Crouches") maintained bank accounts and utilized the banking services of AmSouth Bank in Wetumpka, Alabama, and as AmSouth customers, the Crouches came to know and deal with AmSouth banker Ronda T. Robinson. (Affidavit of Ronda T. Robinson at ¶ 3).[1] In 1998, the Crouches applied at AmSouth for the purchase of an Investors Choice Annuity to be issued by Lincoln National. (Sue Crouch Dep., p. 26, ll. 20-23 and p. 27, ll. 1-9; PX-12; Robinson Aff., ¶ 4). The annuity was issued in May 1998. (Bowman Aff., ¶ 3). Plaintiff James Edward

---

[1] In evidentiary support of summary judgment, Lincoln National is submitting the following: (1) Affidavit of Ronda T. Robinson; (2) Deposition of Ronda T. Robinson; (3) Deposition of Ina Sue Crouch; (4) Deposition of Plaintiff James Edward Crouch; and (5) Affidavit of Sharon Bowman.

Crouch never paid a single penny toward the purchase of the annuity. (James Edward Crouch Dep., p. 111, ll. 3-13).

In order to secure their financial future, Mr. and Mrs. Crouch intended to purchase a jointly owned annuity with the survivor of them getting the benefit of the annuity. (Robinson Dep., pp. 45-46) ("The Crouches request was that this be a joint ownership, which is the way they always set up their CDs at the bank. They wanted [the annuity] set up the same way.")). The Crouches informed Ronda Robinson that they wanted their son, plaintiff James Edward Crouch, to be a contingent beneficiary. (Robinson Dep., p. 55, ll. 15-21).

However, in completing the annuity application, Ronda Robinson made a mistake, listing James Edward Crouch as the primary beneficiary instead of the contingent beneficiary. (Robinson Dep., p. 70, ll. 10-14). Thus, when the annuity was issued, it designated Plaintiff James Edward Crouch as the primary beneficiary. (Bowman Aff., ¶ 3). Because this designation was not consistent with what the Crouches had advised her they wanted, Ronda Robinson contacted the Crouches and informed them that she had made a mistake on the application form and that some additional paperwork had to be completed to accomplish their stated objectives of having Sue Crouch designated as the primary beneficiary and James Edward Crouch designated as the contingent beneficiary. (Robinson Dep., p. 46, ll. 22-23 and p. 47, ll. 1-3 ("So at that point, I contacted the Crouches to let them

6

know that I had made an error on the paperwork and that in order to fix it the way they wanted it to be, it would require a separate document.")).

On April 4, 2000, the Crouches went to AmSouth in Wetumpka, Alabama to meet with Ronda Robinson and complete the annuity service request form necessary to make the beneficiary changes they desired under their jointly owned annuity contract. (Robinson Aff., ¶ 6). At deposition, Robinson testified as follows:

> To explain the annuity service request form and me witnessing the signatures, Mr. and Mrs. Crouch came into the bank in my office on April the 4th of 2000. They wanted to go ahead and make the change on the beneficiary form, so I completed – all it takes to do that is this one particular form.
>
> And I completed the top section A, which changes the – which is the beneficiary change. We changed the primary beneficiary to Sue Crouch, the contingent beneficiary to James Edward Crouch.

(Robinson Dep., p. 117, ll. 16-23 and p. 118, ll. 1-10). Ronda Robinson filled out and explained the Annuity Service Request form and requested that both of the Crouches sign the form as they were joint owners. (Robinson Aff., ¶ 6).

Because Mr. James Earl Crouch had had forgotten his reading glasses, he requested that his wife, Defendant Sue Crouch, sign his name as well as her own on the form. (Robinson Aff., ¶6). At deposition, Ronda Robinson testified as follows:

> As far as the signatures at the bottom [of the annuity service request form], Mr. Crouch and Mrs. Crouch were in my [Ronda Robinson's]

7

> office. I asked them to sign. Mr. Crouch said, I forgot my glasses. Sign this for me. It was not unusual for him to let Mrs. Crouch [his wife] take care of his business. And he sat there and he asked her to sign his name, and I witnessed that.

(Robinson Dep., p. 118, ll. 11-18; *see also* Robinson Aff., ¶ 6). Sue Crouch also testified, independently, that she signed her husband's name at his specific request:

> That's where she [Ronda Robinson] told him [James Earl Crouch] to sign [the annuity service request form] and told me to sign under it. And he [Mrs. Crouch's husband] couldn't see it, and he gave me the paper like this [gesturing]. Sign my name, honey. I said, I can't. I don't – he said – I said, I'll have to go back to the house and get your glasses. And she [Ronda Robinson] said, no, you won't, Ms. Crouch, I heard him give you permission to sign his name and I'm a notary and I will witness it, and that's the way it was.

(Sue Crouch Dep., p. 152, ll. 21-23 and p. 153, ll. 1-7). Plaintiff James Edward Crouch was not present and is thus unable to offer competent testimony about the facts or circumstances of the execution of the change-of-beneficiary form. (James Edward Crouch Dep., pp. 95-96).

The annuity service request form, which changed Sue Crouch to primary beneficiary and Plaintiff James Edward Crouch to contingent beneficiary, was submitted to and processed by Lincoln National. (Bowman Aff., ¶¶ 4-5). Based upon the executed change in beneficiary form, Lincoln National issued the requested changes to the annuity contract to make Sue Crouch the primary beneficiary and Plaintiff James Edward Crouch the contingent beneficiary. (Bowman Aff., ¶¶ 4-5). Lincoln National confirmed the change by letter properly

addressed and mailed to Mr. James Earl Crouch, father of the plaintiff herein. (Bowman Aff., ¶ 5). Mr. James Earl Crouch never objected to or responded to the letter confirming that the primary beneficiary had been changed from his son, Plaintiff Crouch, to his wife, Sue Crouch. (Bowman Aff., ¶ 5). Based upon the change of beneficiary, Defendant Sue Crouch became the primary beneficiary under the annuity contract. (Robinson Aff. ¶ 6; Bowman Aff., ¶¶ 4-5).

At the time the Crouches jointly purchased the annuity contract #774944 and at the time that they changed the contract, they were both mentally competent and of sound mind and disposing memory. (Robinson Aff., ¶ 7). The Crouches fully understood the actions taken with respect to the purchase and change of beneficiary for Lincoln National annuity contract #774944. (Robinson Aff., ¶ 7). Both the purchase and change of beneficiary were done of the Crouches' own free will. (Robinson Aff., ¶ 7).

After Defendant Crouch's husband passed away on February 14, 2001, Lincoln National received a notice of a death claim on February 20, 2001. (Bowman Aff., ¶ 6). The claim was formally submitted with all proper paperwork, including a death certificate, and on March 22, 2001, Lincoln National mailed a check in the amount of $290,487.96 payable to Sue Crouch, in care of the agent Ronda Robinson. (Bowman Aff., ¶ 6). At the time of this payment of the death benefits, Sue Crouch was the designated beneficiary and no notice had been

provided to Lincoln National of any competing claims to the annuity insurance proceeds. (Bowman Aff., ¶¶ 6-7).

The first record of any contact with Plaintiff James Edward Crouch concerning the annuity occurred months later, in July 2001, in a telephone conversation in which Lincoln National advised plaintiff that the death benefit already had been paid. (Bowman Aff., ¶ 8). The first written notice to Lincoln National that Plaintiff James Edward Crouch claimed an interest in the annuity proceeds is an undated letter that Lincoln National received on September 4, 2001, and to which Lincoln National responded on September 8, 2001. (Bowman Aff., ¶ 9). Plaintiff James Edward Crouch has admitted that these two letters from September 2001 were the only written correspondence that he ever had with Lincoln National:

> Q: All right. Other than the two letters, the one you wrote to Lincoln National [received 9/4/01] which was marked as an exhibit and the one that they sent you back [dated 9/8/01] which was also marked as an exhibit, and other than these phone calls, have you had any other communications at any time with anybody representing Lincoln National?
>
> "A: Nothing that I can remember, sir.

(James Edward Crouch Dep., p. 100, ll. 12-20).[2] Therefore, it is undisputed that Plaintiff Crouch did not provide Lincoln National with written notice of his claim

---

[2] The telephone calls were described by Plaintiff Crouch at deposition and consisted of his inquiring about the annuity and his learning that he had been the original beneficiary but that

to the proceeds until September 2001, months after Lincoln National had paid the proceeds to Sue Crouch in March 2001.

## IV. ARGUMENT

### A. All Of The Plaintiff's Claims Must Fail As A Matter Of Law Because the Change of Beneficiary Was Valid And Binding.

All of the Plaintiffs claims are based on the contention that the primary beneficiary of the annuity was changed from himself to Defendant Sue Crouch without his father's knowledge or consent, therefore making the change of beneficiary improper. However, the undisputed facts clearly show that not only was James Earl Crouch fully aware of the beneficiary change from the Plaintiff to Defendant Crouch, he was present and requested that the changes be made, and authorized his wife to sign the change of beneficiary form on his behalf because he did not have his reading glasses.

Further, Lincoln National sent Mr. Crouch a letter on May 16, 2000, confirming the change in the beneficiary. After receiving that letter in May 2000, Mr. Crouch never objected to or protested the fact that the beneficiary had been

---

the primary beneficiary had subsequently been changed, and that he should write a letter if he had further questions. (James Edward Crouch Dep., p. 99, ll. 1-20). These calls apparently prompted the letter that was received by Lincoln National on September 4, 2001.

changed, which is a confirming indicia that Mr. Crouch knew and understood full well that the beneficiary had been changed, consistent with his intentions.[3]

As a matter of law, the changes to the annuity contract in April 2000 at the request of the joint owners were valid, binding and controlling upon the parties. "It has long been the law of this state that one person's name may be signed for him by another in his presence and by his direction. . . ." *Hamilton v. Adams,* 108 So. 1 (Ala. 1926); *see also Goldsmith v. Gates,* 88 So. 861, 862 (Ala. 1921) ("It has long been the law, under the statutes of this state, that the testator's name may be signed for him by another person in his presence and by his direction, and this may be done for him by one of the subscribing witnesses to the will."). In *Hollimon v. McGregor,* 143 So. 902, 904 (Ala. 1932), the Alabama Supreme Court reaffirmed its prior rulings and determined that ". . . we deem it proper to say that a personal property mortgage executed by a maker (whether the maker can or cannot write his name) by having another, in his presence, and by his direction, to sign the maker's name thereto, would be a validly executed instrument. This has long been the law of this state." *Hamilton,* 108 So. at 1; *see also Goldsmith,* 88 So. at 862; *Middlebrooks v. Barefoot,* 25 So. 102, 103 (Ala. 1899) (". . . [T]he rule is that he may affix his signature by the hand of another, the subscription being made in his

---

[3] Indeed, had James Earl Crouch not intended that the beneficiary be changed, one would logically have expected some response or action to his receiving the written confirmation that such a change had been implemented.

12

presence and at his direction, however capable he may be mentally and physically at the time of writing his own name."); *Consolidated Motor Co. of Ala. v. Malik*, 92 So. 262, 263 (Ala. 1922); *Wright v. Forgy*, 28 So. 198 (Ala. 1900) ("It was perfectly competent and legal for the surety to act as an agent for the principal in signing his name to the bond on his presence and at his request, and when this was done it was as perfect and complete an execution as if the defendant himself had subscribed his own signature, or, being unable to write, had made his mark, and the same being attested by a witness who could write his name."); *Lewis v. Monroe*, 13 So. 570, 571 (Ala. 1893) ("This on the principle that where the grantor is present, and authorizes another, either expressly or impliedly, to sign his name to the deed, it then becomes his deed, and is as binding upon him, to all intents and purposes, as if he had personally affixed his signature."). In *Lewis v. Monroe*, the Alabama Supreme Court stated the reason for allowing an individual to sign on behalf of another person in their presence and at their direction as follows:

> The name being written by another hand, in the presence of the grantor, and at her request, is her act. The disposing capacity, the act of mind, which are the essential and efficient ingredients of the deed, are hers; and she merely uses the hand of another, through incapacity or weakness, instead of her own, to do the physical act of making a written sign. To hold otherwise would be to decide that a person having a full mind, and clear capacity, but, through physical inability, incapable of making a mark, could never make a conveyance or execute a deed.

*Lewis,* 13 So. at 571 (quotation omitted). Therefore, Defendant Crouch's signing of the change of beneficiary form for her husband, in his presence and at his direction, is clearly permissible and binding under Alabama law.

In summary, the Plaintiff's actions to challenge the wishes and clear intentions of his parents, and his efforts to intercept funds to which he is not entitled and to deprive his widowed mother of the annuity proceeds are not supported in law or in fact. Summary judgment should be granted in favor of all defendants as to all of the Plaintiff's claims.

**B. Lincoln National, As A Matter of Law, Was Discharged When It Paid The Annuity Benefits Prior To Any Notice From Plaintiff Crouch That He Claimed An Interest In The Annuity.**

As a matter of law, *Ala. Code* § 27-14-24 discharges an insurance company, such as Lincoln National, where it has paid out the proceeds under an annuity contract or an insurance policy according to the terms of the policy, "unless, before payment is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such person claims to be entitled to such payment. . . ." There is no evidence that any notice, let alone written notice, was provided to Lincoln National at any time before the annuity proceeds were paid to Sue Crouch, the designated primary beneficiary. Indeed, the first written notice in the record is Plaintiff Crouch's undated letter that was received by Lincoln National on September 4, 2001. That was several months after the annuity

insurance proceeds had been paid to Mrs. Crouch. Accordingly, under *Ala. Code* § 27-14-24, Lincoln National is entitled to summary judgment.

This result is mandated notwithstanding plaintiff's allegation (however baseless it may be) that James Earl Crouch's signature supposedly was a forgery or otherwise unauthorized. In *Fortis Benefits Ins. Co. v. Pinkley*, 926 So. 2d 981 (Ala. 2005), the primary beneficiary of an insurance policy was changed pursuant to a change of beneficiary form. The insured died and the insurance company paid the benefits to the newly designated beneficiary. After the date of payment, plaintiff challenged the signature on the change of beneficiary form as a forgery, and suit was brought against the insurer, who moved for summary judgment based upon *Ala. Code* § 27-14-24. The trial court denied summary judgment but an interlocutory appeal was taken. On appeal, the Supreme Court reversed:

> Stated more narrowly, the question is whether a life insurer that receives a change-of-beneficiary request form, regular on its face and executed by a person purporting to be the owner of the policy, has a duty to investigate the authenticity of the signature before paying death benefits under the policy to the person designated on the form as the primary beneficiary. We answer that question in the negative.

926 So. 2d at 984. In this case, the change-of-beneficiary form was regular on its face, having been signed and witnessed. Accordingly, summary judgment was entered in favor of the insurer, notwithstanding plaintiff's allegations of forgery.

*Fortis* stands for the proposition that Lincoln National is entitled to summary judgment in this case, irrespective of whether there is any underlying question on the actual validity of the signature on the change of beneficiary form, because the form indisputably was regular on its face. To the same effect is *Alfa Life Ins. Corp. v. Culverhouse*, 729 So. 2d 325 (Ala. 1999) (insurer not liable for paying proceeds to named beneficiary, even where heir gave oral notice to insurer's agent of claim to proceeds before the proceeds were paid out, becuase the statute requires written notice of the adverse claim). Here, plaintiff failed to provide any notice, let alone written notice, of any adverse claim prior to Lincoln National's payment of the annuity benefits to Mrs. Crouch. Therefore, on this additional and alternative basis, Lincoln National is entitled to the protections of *Ala. Code* § 27-14-24 and to summary judgment.

## V. CONCLUSION

WHEREFORE, Lincoln National requests the entry of summary judgment.

*/s/ E. Glenn Waldrop*

One of the Attorneys for Defendant
Lincoln National Life Insurance Company

OF COUNSEL:
E. Glenn Waldrop, Jr. (WALDG7740)
Mitchell D. Greggs (GREGM5304)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this _18_ day of September, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Glenn L. White, Esq.
glennw@megagate.com

Charles Burton Paterson, Esq.
cpaterson@balch.com

Samuel S. McHard, Esq.
smchard@bnlawfirm.com

Paul J. Delcambre, Jr., Esq.
pdelcambre@balch.com

Glenda Wingard Hughes, Esq.
ghughes.atty@ATT.net

Joseph Seawall Moore, Esq.
jsmoore@balch.com

And I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants (if applicable):

Carol Ann Estes Bustin, Esq.
Bustin Law Firm
109 Fairvield Drive, Suite 109
Hattiesburg, Mississippi 39402

Respectfully submitted,

_____
Of Counsel