IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES E. CROUCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | 2:06-cv-00111-MEF |
| AMSOUTH BANK, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**AMSOUTH BANK'S
MEMORANDUM OF FACTS AND LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant AmSouth Bank ("AmSouth") and AmSouth Investment Services, Inc. ("AIS") (collectively "Defendants") submit this memorandum in support of their motion for summary judgment.

**I.   INTRODUCTION**

On February 6, 2006, this case was transferred from the United States District Court for the Southern District of Mississippi to the United States District Court for the Middle District of Alabama. This action arises from a dispute between a son, Plaintiff James E. Crouch ("Plaintiff Crouch") and his mother, Ina Sue Crouch a/k/a Sue Crouch ("Defendant Crouch"), regarding benefits payable under a $250,000 annuity contract issued by Lincoln National Life Insurance Company ("Lincoln National"). Plaintiff Crouch alleges in his Second Amended Complaint that he is the rightful beneficiary under the annuity contract to the exclusion of his mother. Plaintiff Crouch was the original beneficiary and his mother was changed to primary beneficiary, and the annuity

proceeds were paid to the mother upon the father's death. Plaintiff Crouch contends that a change of beneficiary form executed on behalf of his father, as primary annuitant and co-owner, and by his mother, as co-owner, is null and void, and that the annuity proceeds should have been paid to him. Plaintiff Crouch mounts his attack upon his parents' actions by alleging the following theories of recovery seeking essentially the same relief: (1) breach of contract; (2) specific performance; (3) negligence; (4) fraud; (5) tortious interference with contract; and (6) constructive trust. As discussed herein, the Plaintiff's claims to the annuity benefits, however stated, are due to be dismissed under *Fed. R. Civ. P. 56* as a matter of law.

Defendant AmSouth Bank initially filed for summary judgment on March 23, 2006. The Court denied the motion on March 28, 2006 as "premature." Since that time, the parties have engaged in the discovery process and completed the depositions of Plaintiff Crouch and key eyewitnesses, Defendant Crouch and former AmSouth employee, Ronda Robinson. The parties have completed full discovery of the facts and circumstances surrounding the issuance of the annuity and the execution of the change of beneficiary form and this matter is now "ripe" for submission to the Court on Motion for Summary Judgment.

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of a claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir.

1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. Although all reasonable inferences arising from the undisputed facts should be made in favor of the nonmoving party, an inference based on speculation and conjecture is not reasonable. *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985).

### III. STATEMENT OF FACTS

For several years, Defendant Crouch and her late husband James Earl Crouch (collectively "the Crouches") maintained bank accounts and utilized the banking services of AmSouth Bank in Wetumpka, Alabama. As AmSouth customers, the Crouches came to know and deal with AmSouth banker Ronda T. Robinson ("Robinson"). (**Exhibit 1**, Affidavit of Ronda T. Robinson at ¶ 3).[1] In 1998, the Crouches applied to Robinson as a licensed representative of AIS for the purchase of an Investors Choice Annuity to be issued by Lincoln National. (**Exhibit 3**, Sue Crouch Deposition, p. 26, ll.20-23 and p. 27, ll. 1-9, PX-12; Robinson Affidavit at ¶ 4).

---

[1] At deposition, Ronda Robinson verified the truthfulness of her affidavit testimony and the following exchange occurred:

> Question: "As far as you know sitting here today, the statements in this affidavit, Exhibit 19 [Robinson's Affidavit], are true and correct?"
>
> Robinson: "Yes."

(Robinson Dep., p. 161, ll. 8-13).

On May 7, 1998, the Crouches met with Robinson who assisted them with filling out the application forms for the purchase of an annuity from Lincoln National. (Robinson Affidavit at ¶ 4) (Annuity Application Forms adopted and incorporated by reference as **Exhibit A**).[2] In order to secure their financial future, the Crouches intended to use their jointly owned funds to purchase a jointly owned annuity with the survivor of them getting the benefit of the annuity. (Robinson Dep., pp. 45-46) ("The Crouches request was that this be a joint ownership, which is the way they always set up their CDs at the bank. They wanted [the annuity] set up the same way.") (Crouch Dep., p.32, ll. 11-12). The Crouches informed Robinson that they wanted their son, Plaintiff Crouch, to be a contingent beneficiary. (**Exhibit 2**, Robinson Deposition, p. 55, ll. 15-21). Under the annuity contract as issued, Defendant Crouch's late husband was the annuitant and Defendant Crouch and her late husband were joint owners. Plaintiff Crouch, however, was listed as primary beneficiary. (Robinson Affidavit at ¶ 5).

At the time that the Crouches received the annuity contract, Robinson realized that she had made a mistake on the application form, listing Plaintiff Crouch as the primary beneficiary instead of the contingent beneficiary. (Robinson Dep., p. 55, ll. 15-21 and p. 70, ll. 10-14) (Robinson Affidavit at ¶ 5). Because this designation was not consistent with what the Crouches had advised her they wanted, Ronda Robinson contacted the Crouches and informed them that she had made a mistake on the application form and that some additional paperwork had to be completed to accomplish their stated objectives of having Sue Crouch as the primary beneficiary and James Edward Crouch as the contingent beneficiary. (Robinson Dep., p. 46, ll. 22-23) ("So at

---

[2] Exhibits A, B and C are attached hereto as exhibits to the Affidavit of Ronda T. Robinson (Exhibit 1) adopted and incorporated by reference herein.

that point, I contacted the Crouches to let them know that I had made an error on the paperwork and that in order to fix it the way they wanted it to be, it would require a separate document.") (Robinson Dep., p. 47, ll. 1-3, and p. 83, ll. 1-6).

On April 4, 2000, the Crouches went to AmSouth in Wetumpka, Alabama to meet with Robinson and fill out the annuity service request form necessary to make the changes they desired under their jointly owned annuity contract #774944. (Robinson Dep., p. 106-107) (Robinson Affidavit at ¶ 6). At deposition, Robinson testified as follows:

> "To explain the annuity service request form and me witnessing the signatures, Mr. and Mrs. Crouch came into the bank in my office on April the 4th of 2000. They wanted to go ahead and make the change on the beneficiary form, so I completed – all it takes to do that is this one particular form.
>
> "And I completed the top section A, which changes the – which is the beneficiary change. We changed the primary beneficiary to Sue Crouch, the contingent beneficiary to James Edward Crouch."

(Robinson Dep., p. 117, ll. 16-23 and p. 118, ll. 1-10). Robinson filled out and explained the Annuity Service Request form and requested that both of the Crouches sign the form as they were joint owners. (Robinson Affidavit at ¶ 6) (Annuity Service Request Form adopted and incorporated by reference as **Exhibit B**).

Because her late husband had forgotten his reading glasses, he requested that Defendant Crouch sign his name as well as her own on the form. (Robinson Affidavit at ¶ 6). At deposition, Ronda Robinson testified as follows:

> "As far as the signatures at the bottom [of the annuity service request form], Mr. Crouch and Mrs. Crouch were in my [Ronda Robinson's] office. I asked them to sign. Mr. Crouch said, I forgot my glasses. Sign this for me. It was not unusual for him to let Mrs. Crouch [his wife] take care of his business. And he sat there and he asked her to sign his name, and I witnessed that."

(Robinson Depo., p. 118, ll. 11-18; *see also* Robinson Affidavit at ¶ 6). In the presence of her late husband and Robinson, and at her late husband's request, Defendant Crouch signed her late husband's name and her name on the form. (Robinson Affidavit at ¶ 6). Defendant Crouch also testified that she signed her husband's name at his specific request:

> "That's where she [Ronda Robinson] told him [James Earl Crouch] to sign [the annuity service request form] and told me to sign under it. And he [Mrs. Crouch's husband] couldn't see it, and he gave me the paper like this [gesturing]. Sign my name, honey. I said, I can't. I don't – he said – I said, I'll have to go back to the house and get your glasses. And she [Ronda Robinson] said, no, you won't, Ms. Crouch, I heard him give you permission to sign his name and I'm a notary and I will witness it, and that's the way it was."

(Sue Crouch Dep., p.152, ll. 21-23 and p. 153, ll. 1-7).

Robinson witnessed these signatures by signing her name and then submitted the form to Lincoln National. Recognizing the validity of the joint owners' request, the changes to the annuity contract were made by the company. Based upon this change, Defendant Crouch was both joint owner and primary beneficiary under the annuity contract. (Robinson Affidavit at ¶ 6.).

At the time the Crouches jointly purchased the annuity contract #774944 and at the time that they changed the contract, they were both mentally competent and of sound mind and disposing memory. (Robinson Affidavit at ¶ 7). The Crouches fully understood the actions taken with respect to the purchase and change of beneficiary for Lincoln National annuity contract #774944. (Robinson Affidavit at ¶ 7). Both the purchase and change of beneficiary were done of the Crouches' own free will. (Robinson Affidavit at ¶ 7).

After Defendant Crouch's husband passed away on February 14, 2001, Defendant Crouch elected to surrender and cancel the annuity contract and obtain the proceeds in a lump sum. She had the absolute right to take this action as sole primary beneficiary and sole owner of the annuity contract. Robinson assisted Defendant Crouch, as sole primary beneficiary and sole owner, in filing out an Annuity Claimant's Statement and Annuity Service Request form with Lincoln National for the purpose of having annuity contract #774944 cancelled and surrendered and the proceeds deposited in her bank account. (Robinson Affidavit at ¶ 8) (Annuity Claimant's Statement and Annuity Service Request adopted and incorporated by reference as **Exhibit C**). As requested, the proceeds of the annuity were properly paid to Defendant Crouch as sole owner and primary beneficiary under annuity contract #774944. (Robinson Affidavit at ¶ 8).

IV. **ARGUMENT**

A. **All of the Plaintiff's claims against AmSouth Bank must fail as a matter of law.**

All of the Plaintiff's claims are based on the contention that the primary beneficiary of the annuity was changed from himself to Defendant Crouch without his father's knowledge or consent, therefore, making the change of beneficiary improper. However, the undisputed facts clearly show that not only was James Earl Crouch fully aware of the beneficiary change from the Plaintiff to Defendant Crouch, he was present and requested that the changes be made and authorized Defendant Crouch to sign the change of beneficiary form on his behalf because he did not have his reading glasses.

As a matter of law, the changes to the annuity contract in April 2000 at the request of the joint owners were valid, binding and controlling upon the parties. "It has long been the law of this state that one person's name may be signed for him by another

in his presence and by his direction... ." *Hamilton v. Adams*, 108 So. 1 (Ala. 1926); *see Goldsmith v. Gates*, 88 So. 861, 862 (Ala. 1921) ("It has long been the law, under the statutes of this state, that the testator's name may be signed for him by another person in his presence and by his direction, and this may be done for him by one of the subscribing witnesses to the will.")  In *Hollimon v. McGregor*, 143 So. 902, 904 (Ala. 1932), the Alabama Supreme Court reaffirmed its prior rulings and determined that "... we deem it proper to say that a personal property mortgage executed by a maker (whether the maker can or cannot write his name) by having another, in his presence, and by his direction, to sign the maker's name thereto, would be a validly executed instrument.  This has long been the law of this state."  *Hamilton*, 108 So. at 1; *see Goldsmith*, 88 So. at 862; *Middlebrooks v. Barefoot*, 25 So. 102, 103 (Ala. 1899) ("...[T]he rule is that he may affix his signature by the hand of another, the subscription being made in his presence and at his direction, however capable he may be mentally and physically at the time of writing his own name."); *see Consolidated Motor Co. of Ala. v. Malik*, 92 So. 262, 263 (Ala. 1922); *Wright v. Forgy*, 28 So. 198 (Ala. 1900) ("It was perfectly competent and legal for the surety to act as an agent for the principal in signing his name to the bond on his presence and at his request, and when this was done it was as perfect and complete an execution as if the defendant himself had subscribed his own signature, or, being unable to write, had made his mark, and the same being attested by a witness who could write his name."); *Lewis v. Watson*, 13 So. 570, 571 (Ala. 1893) ("This on the principle that where the grantor is present, and authorizes another, either expressly or impliedly, to sign his name to the deed, it then becomes his deed, and is as binding upon him, to all intents and purposes, as if he had personally affixed his signature.").  In *Lewis v. Watson*, the

Alabama Supreme Court stated the reason for allowing an individual to sign on behalf of another person in their presence and at their direction as follows:

> "The name being written by another hand, in the presence of the grantor, and at her request, is her act. The disposing capacity, the act of mind, which are the essential and efficient ingredients of the deed, are hers; and she merely uses the hand of another, through incapacity or weakness, instead of her own, to do the physical act of making a written sign. To hold otherwise would be to decide that a person having a full mind, and clear capacity, but, through physical inability, incapable of making a mark, could never make a conveyance or execute a deed."

*Lewis*, 13 So. at 571, (quotation omitted.) Therefore, Defendant Crouch's signing of the change of beneficiary form for her husband, in his presence and at his direction, is clearly permissible and binding under Alabama law.

The parties' rights with respect to the annuity contract were fixed as a matter of law in April 2004 when Lincoln National changed the contract terms at the request of the joint owners. Simply put, the Plaintiff has no legal standing to challenge the valid actions of his parents. Under the amended annuity contract, the Plaintiff was only a contingent beneficiary and the contingency that could give rise to any contractual rights on his part never occurred before the contract was validly cancelled by the sole owner and beneficiary, his mother. *See Carter v. First Nat. Bank of Opp*, 185 So. 361, 362-63 (Ala. 1938) ("Our cases hold that a beneficiary in a policy with a right to make a change in that respect when the policy has not been assigned to him, and he has no other contractual interest or sufficient consideration, has no vested enforceable interest in it until the insured shall die without making a change or an assignment to another. At the moment of his death such interest becomes enforceable.") In the present case, the facts are clear that the contingency, the death of both the Plaintiff's parents, never occurred so as to give the

Plaintiff a vested interest in the funds under the annuity contract. It is without reasonable dispute that under the facts and Alabama law, the Plaintiff has no valid legal or factual position to support his claim for the annuity funds.

In summary, the Plaintiff's actions to challenge the wishes and clear intentions of his parents and efforts to intercept funds to which he is not entitled are not supported in law or in fact. Summary judgment should be granted in favor of AmSouth and AIS as to all of the Plaintiff's claims.

## V. CONCLUSION

For the foregoing reasons, AmSouth and AIS's motion for summary judgment is due to be granted.

Respectfully submitted this 19th day of September, 2006.

/s/ Joseph Seawell Moore
One of the Attorneys for Defendant,
AmSouth Bank

**OF COUNSEL:**

Charles B. Paterson (ASB-1542-R73C)
Joseph Seawell Moore (ASB-9146-O77M)
BALCH & BINGHAM LLP
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104-2549
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
cpaterson@balch.com
jsmoore@balch.com


Paul J. Delcambre, Jr.
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228)864-9900
Facsimile: (228) 864-8221
pdelcambre@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following either electronically to all participants of CM/ECF or by U.S. Postal Service for all Non-CM/ECF participants.

Glenn L. White, Esquire
Holmes & White, PLLC
601 Highway 42 E
P.O. Box 672
Petal, Mississippi 39465

*Attorney for James E Crouch*

Samuel S. McHard, Esq.
Bryan Nelson Randolph PA
P.O. Box 18109
Hattiesburg, Mississippi 39404

*Attorney for James E. Crouch*

E. Glenn Waldrop
Mitchell D. Greggs
Lightfoot, Franklin & White, LLC
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200

*Attorneys for Lincoln National Life Insurance Company*

Carol Ann Estes Bustin
Bustin Law Firm
109 Fairfield Drive, Suite 109
Hattiesburg, Mississippi 39402

*Attorney for Ina Sue Crouch*

Glenda W. Hughes, Esq.
103-B Commerce Street
Wetumpka, Alabama 36092

*Attorney for Ina Sue Crouch*

Done this the 19th day of September, 2006.

/s/ Joseph Seawell Moore
Of Counsel