# BRYAN NELSON P.A.

**ATTORNEYS AT LAW**
POST OFFICE DRAWER 18109
6524 U.S. HIGHWAY 98
HATTIESBURG, MISSISSIPPI 39404-8109

JACK W. LAND·
EVE GABLE
HERMAN M. HOLLENSED, JR.
MARK A. NELSON¹
V. K. VICK SMITH
DAVID M. OTT
SAMUEL S. McHARD²
RICHARD D. NORTON
JOSEPH A. O'CONNELL
JOE D. STEVENS
WILLIAM A. WHITEHEAD, JR.
KATHERINE L. HOWIE
STEPHEN B. JACKSON
ERICA R. McHARD²
STACY L. NEAMES
DARIUS O. TAYLOR
TIMOTHY J. EVANS
KRISTOPHER A. POWELL
TRACY K. BOWLES
MARK E. NORTON

JOHN F. BRYAN III (1914-1994)
E. S. NED NELSON (1928-1985)

TELEPHONE
(601) 261-4100

FACSIMILE
(601) 261-4106

¹ Also Admitted in Louisiana
² Also Admitted in Illinois
  And Iowa

August 21, 2006
*Via Facsimile*

Glenda W. Hughes
103-B Commerce Street
Wetumpka, AL 36092

    Re:    *James E. Crouch vs. Amsouth Bank, Ina Sue Crouch and John and Jane Does 1 – 10*
          *Civil Action No.* 2:06cv111-CSC
          *Our File No.: 999-784*

Dear Glenda:

    I am in receipt of Defendant Ina Sue Crouch's Answer to Plaintiff James E. Crouch's First Set of Interrogatories. Upon review of the responses, I have objections as set forth below. First, please let me remind you of the broad scope of discovery as set forth in Rule 26(b) of the Federal Rules of Civil Procedure:

> Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
> (1) Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter...[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Also, pursuant to Federal Rule of Civil Procedure 34(a), your client is responsible to produce all documents within the scope of Rule 26(b) "which are in the possession, custody or control" of your client. Many of the documents requested, such as medical and bank records, even if not in the possession and custody of your client, are within her control and must be produced.



EXHIBIT
**S**

Glenda W. Hughes
August 21, 2006
Page 2

## A.    INTERROGATORIES

1.    As to Interrogatory No. 1, "the subparts and <u>substance</u> of the information known by each" witness has not been disclosed.  Please comply.

2.    As to Interrogatory No. 7, with regard to each denial of respective Requests to Admit, your client has entirely failed to "identify each request for admission separately and give a complete description of all the facts relied upon in making each respective denial."

3.    As to Interrogatory No. 10, we believe that your client has failed to fully answer the Interrogatory by failing to identify the physicians' addresses, phone numbers, etc. as required by the definition of "identify" set forth in the Instructions incorporated into the Interrogatories, the relevant portion of which is attached hereto as Exhibit 1.

4.    As to Interrogatory No. 11, we believe that your client has failed to fully answer the Interrogatory by failing to identify the attorney's addresses, phone numbers, etc. as required by the definition of "identify" set forth in the Instructions.

5.    As to Interrogatory No. 12, we respectfully object to your client's objection of "irrelevant" and believe that the information requested is relevant.

## B.    DOCUMENTS REQUESTED

1.    As to Request No. 5, please "identify" the present location and the present custodian of the cancelled checks.  Furthermore, please refer to the first paragraph of this letter regarding the obligation of your client to produce documents in its "control."  Furthermore, if your client previously had possession or custody of such documents, please note that Paragraph E of the Definitions and Instructions on the tendered discovery provides: "Regarding any responsive document that was once, but no longer is in your possession, custody or control, identify what disposition was made of the document, its present location, and its present custodian.  This includes information which was in computer storage" and Paragraph F thereof provides: "Regarding any responsive document that has been destroyed, identify that document by date, author(s), addressee(s) and subject matter, the date of such destruction, the manner of such destruction, the reason for such destruction, the person authorizing such destruction, and the custodian of the document at the time of its destruction."

2.    As to Request No. 7, please see Paragraph B(1) above.

3.    As to Request No. 8, we object to your client's response and request that the originals of these documents be made available for inspection.

Glenda W. Hughes
August 21, 2006
Page 3

4.    As to Request No. 9, please see Paragraph B(1) above.

5.    As to Request No. 11, we respectfully object to your client' s objection of "irrelevant" and believe that the documents requested are relevant.

6.    As to Request No. 12, we respectfully object to your client' s objection of "irrelevant" and believe that the documents requested are relevant.

7.    As to Request No. 14, please see Paragraph B(1).

8.    As to Request No. 16, please see Paragraph B(1) above.

9.    As to Request No. 17, please see Paragraph B(1) above.

Please call me upon receipt of this letter on Monday, August 21, 2006, so that we may review my objections and attempt to resolve our differences civilly without necessity of Court intervention, and prior to the scheduled depositions on Wednesday.    Thank you in advance for your anticipated cooperation and prompt attention to this matter.

Very truly yours,
BRYAN NELSON P.A.

Samuel McHard
For the Firm

SMH/erm

Page 82

1      question.
2      MS. HUGHES: Does that have
3         anything to do with whether he
4         has the 250,000 or not? I
5         can't see that that's relevant
6         for him to decide whether she
7         has the 250,000 or not.
8         That's not relevant.
9      MR. MCHARD: Well ...
10     MS. HUGHES: If she has two
11        million, then he thinks he
12        should get the 250, and if she
13        only gets 600 a month
14        anyway -- I can't see that it
15        makes any difference.
16     MR. MCHARD: Excuse me, ma'am, but
17        if you would be kind enough to
18        simply provide the documents
19        that were properly --
20     MS. HUGHES: If you want them, you
21        find them.
22     MR. MCHARD: -- that were properly
23        requested in discovery and

Page 83

1         that were again requested to
2         be provided prior to this
3         deposition in the letter that
4         we wrote you outlining the
5         problems and the improper
6         objections which you raised in
7         connection with the discovery
8         that have been served on you,
9         he will at that point answer
10        your question. Until then,
11        you know, that's not an
12        appropriate question.
13     MS. HUGHES: He doesn't care
14        whether she has money or not.
15        It doesn't matter.
16  Q.  Are you trying to punish your mother for
17     something?
18  A.  No, ma'am.
19  Q.  Well, in your lawsuit, you're wanting
20     punitive damages. Do you know what
21     punitive means?
22  A.  Yes, ma'am, I do.
23  Q.  What does that mean?

Page 84

1   A.  That means that whoever did it will not do
2       it again.
3   Q.  So you're afraid that your mother just
4       might do something to you again?
5   A.  I think that the punitive damages were
6       asked for by my attorneys. Under their
7       best advice, they said this is what -- we
8       need to sue, and I followed their advice.
9   Q.  You do not love your mother at all, do you?
10  A.  You're asking a question that is so
11      subjective ...
12  Q.  Yes or no?
13  A.  Yes, I do.
14     MS. HUGHES: Thank you. That's
15        all I have.
16     (Brief interruption.)
17     EXAMINATION
18  BY MR. WALDROP:
19  Q.  Mr. Crouch, my name is Glenn Waldrop. I
20      represent Lincoln National in this case.
21         You and I have never met before today,
22      have we?
23  A.  No, sir.

Page 85

1   Q.  I'll try not to replow old ground and I'll
2       try to be fairly brief, but I do need to
3       ask you some questions since you have added
4       my client, Lincoln National Life Insurance
5       Company, as a defendant to this lawsuit.
6       Do you understand that?
7   A.  Yes, sir.
8   Q.  All right. Let me just ask you generally,
9       do you agree that an owner of an annuity or
10      life insurance policy should be entitled to
11      change the beneficiary when that owner
12      decides they want to do that?
13     MR. MCHARD: I'm going to object
14        as to the form of that
15        question and would refer you
16        to the contract itself which
17        you say -- which you contend
18        speaks for itself.
19  Q.  You can answer the question.
20  A.  Could you repeat the question.
21     MR. WALDROP: Will you read it
22        back, please, and just note
23        that there was an objection.

EXHIBIT
6
Group

Page 38

1   Q.  -- the son; is that correct, ma'am?
2   A.  Yes, sir.  That's the first --
3   Q.  And there is no -- There's nothing filled
4       out for contingent beneficiary, is there,
5       ma'am?  Is there?
6   A.  We changed it to a contingent beneficiary
7       later.
8   Q.  No.  In the documents --
9           MR. PATERSON:  Sam, please.
10          MS. HUGHES:  Object.
11          MR. PATERSON:  Hold on.
12          MS. HUGHES:  Badgering the
13          witness.
14          MR. PATERSON:  Ma'am, we can't --
15          the rest of us that are
16          participants in this lawsuit
17          can't get a clear record if
18          y'all talk over each other.
19          .   So I'd please ask Sam if
20          he would ask the question and
21          then you listen to it and then
22          you give him an answer, and
23          y'all go back and forth like

Page 39

1           that.  Don't talk at the same
2           time because we can't follow
3           you.
4               Thank you.
5   Q.  You agree there's no contingent beneficiary
6       listed in the contract; is that correct?
7   A.  No, sir, there wasn't.
8   Q.  So you agree with me, don't you?
9   A.  That there wasn't a contingency at that
10      time.
11  Q.  And you would agree that upon a
12      non-annuitant owner's death --
13          That is, if there was an owner who
14      wasn't -- that is, was not the annuitant.
15          -- then and only then would the
16      surrender value proceeds be paid to the
17      surviving owner as beneficiary?
18          MR. PATERSON:  Object to the form.
19          MR. WALDROP:  Object to the form.
20  Q.  Correct?
21  A.  I don't understand the question.
22  Q.  Well, ma'am, under the joint owner
23      information, there is an explanation, isn't

Page 40

1       there?  Right here.  Right here.  Do you
2       see that, ma'am?
3   A.  You're talking about here where I'm the
4       owner beneficiary?
5   Q.  Yes, ma'am.
6   A.  I was the owner and beneficiary.
7   Q.  Well, you were joint owner, weren't you?
8   A.  And a beneficiary.
9   Q.  Well, there's nothing in here that you were
10      a beneficiary, is there?
11          MR. WALDROP:  Object to the form.
12  Q.  That's nothing in this document that says
13      you were a beneficiary; is that correct?
14  A.  Well, I have --
15  Q.  Is that correct?
16          MR. PATERSON:  Object to the form.
17          MR. GREGGS:  Object to the form.
18  A.  I don't see where it says -- I don't -- but
19      it says up here -- I just see where it --
20          I was the co-owner of it and the
21      beneficiary of it, so that's all.
22  Q.  Well, show me on the document where it says
23      that you were a beneficiary at all under

Page 41

1       this contract.
2           MR. GREGGS:  Object to the form.
3   A.  Well, I was the beneficiary and joint
4       owner.
5   Q.  Well, you just point to anyplace on this
6       contract where that is stated.
7           MR. PATERSON:  Object to the form.
8           MR. GREGGS:  Same objection.
9           MS. HUGHES:  Object.
10          MR. PATERSON:  Badgering the
11          witness and asking for legal
12          conclusions when you know she
13          doesn't have legal expertise.
14          MR. WALDROP:  Lincoln would just
15          object.  That document was
16          attached to and made part of
17          the contract, but I don't
18          think that document that
19          you're showing her constitutes
20          the entire contract.
21              We can get a specimen
22          copy.  Not today, but I can
23          get you one.

**EXHIBIT**

7

Videotaped Deposition of Ina Sue Crouch

August 23, 2006

Page 166

1    of that.
2         MS. HUGHES:  Object to the form.
3    Q.  You understand that, right?
4         MR. PATERSON:  Object to the form
5         of that.  This witness has no
6         idea what AmSouth represented
7         to anyone.
8    A.  No, I don't know nothing about that.
9    Q.  Well, your attorneys haven't shown you the
10       copies of the pleadings that were filed by
11       Balch & Bingham and Paul DelCambre, in
12       particular, specifically stating that
13       that's what happened?
14   A.  I knew -- I knew -- I knew whenever I got
15       involved, when they put me in it, then I
16       started knowing.  Yeah, I knew he was on
17       AmSouth Bank.  I knew that.
18   Q.  Well, did you talk to Mr. DelCambre?
19   A.  No, I've never talked to him.
20   Q.  Did you talk to some attorneys at Balch &
21       Bingham other than the attorneys in this
22       office?
23   A.  No.  Talked to my attorney.

Page 167

1    Q.  Didn't provide any declarations to them or
2        any statements?
3    A.  I talked with my attorney.
4    Q.  And the only attorney that you've talked to
5        in this case other than in connection with
6        the discussion you had about three weeks
7        ago in this office --
8    A.  That's right.  That's right.  I know what
9        you're going into.
10   Q.  -- was Glenda; is that correct?
11   A.  That's right.
12   Q.  So you never talked with any attorneys in
13       Mississippi at all?
14   A.  Oh, yes.  I had an attorney in Mississippi.
15   Q.  Oh, did you talk with her?
16   A.  I have talked to her a long time ago.
17   Q.  Well, with regard to Mr. DelCambre, are you
18       specifically aware that he represented to
19       the court, and I quote, in the motion to
20       transfer --
21         MR. PATERSON:  Objection.  This is
22         highly improper.
23   Q.  -- transfer pursuant to 28 USC Section

Page 168

1    1404(a), paragraph three, I'm quoting:
2         When the discovery action was filed,
3    copies of the documents being sought by the
4    original complaint, while not generated by
5    AmSouth, were in the possession of
6    AmSouth.  These documents related to an
7    annuity contract.
8         MR. PATERSON:  Let me say for the
9         record --
10        MR. MCHARD:  I'm not finished,
11        sir.
12   Q.  Ina Sue Crouch was not named as a party in
13       the original complaint filed in the
14       discovery action.  Under the
15       Gramm-Leach-Bliley Financial Services
16       Modernization Act of 1999, the documents
17       being sought by James Edward Crouch were
18       considered confidential and were not
19       subject to disclosure when AmSouth's
20       customer was not a party to the proceeding
21       in which they were sought.
22        As a result, AmSouth refused to release
23       the documents without authorization from or

Page 169

1    notice to Mrs. Crouch in compliance with
2    the Gramm-Leach-Bliley Act.
3         Were you aware of that?
4         MR. PATERSON:  Excuse me one
5         second.  Let me put something
6         on the record before she
7         answers.
8         MR. MCHARD:  Well, no.  We can put
9         it on after she answers.
10        MR. PATERSON:  No, I can put it on
11        anytime I want to put
12        something on the record, and
13        I --
14        MR. MCHARD:  Well, if it's an
15        objection, not a speaking
16        objection.  You can object as
17        to the form.
18        MR. PATERSON:  I would like to put
19        on the record that these
20        documents that have been
21        produced by AmSouth are the
22        same documents that are
23        related to the purchase of

Videotaped Deposition of Ina Sue Crouch

---

Page 202

1    his -- to be like that.
2    Q.  What doctors told you that?
3    A.  Dr. Rigsby, the brain surgeon, and the head
4        doctor that does the things to check them,
5        whatever you call it.
6    Q.  And did he tell you that after the brain
7        surgery?
8    A.  No, he told me before.  That's why they
9        done it.  They said he was going to die if
10       I didn't let him have the surgery.
11   Q.  And your children had requested that there
12       be an autopsy performed, hadn't they?
13   A.  I never heard of it.
14            MR. PATERSON:  Object to this line
15       of questioning.
16   A.  That's not true.
17            MR. PATERSON:  Excuse me a
18       second.
19            For the record, that has
20       nothing to do with the case
21       involving --
22   A.  I wish somebody would quit telling things.
23            MR. PATERSON:  Object to the

---

Page 203

1            line -- this line of
2            questioning.
3    Q.  Are you aware of --
4    A.  I'm not aware if somebody done that.
5        That's unbeknowings to me.
6    Q.  Well, did you know what MPH was?
7    A.  That's what he had they claimed, that
8        encephalos stuff.  That's what -- That's
9        what they claimed he had, MPH or something
10       another.  I don't know doctor terms.  I'm
11       not a doctor either.
12   Q.  Did you ever talk to any of your children
13       about performing an autopsy with regard
14       to --
15   A.  No.  No, no, no, no.  It was never brought
16       up, and I wouldn't have had one if they did
17       because he had been through enough cutting
18       and pain and stuff, and I wouldn't have had
19       one if they would have brought it up.
20   Q.  And did you, in fact, tell them that, that
21       he had already had enough cutting and you
22       didn't want an autopsy?
23   A.  They didn't ask me about it.

---

Page 204

1    Q.  Well, did you tell them that?
2    A.  No, I didn't tell them.  I would have told
3        them if they'd have brought it up.  I was
4        his wife.  I had a right to do it.
5            MR. MCHARD:  I'm going to recess
6        this deposition at this time
7        until we have gotten
8        compliance with the discovery
9        that we requested to which
10       objections were filed and
11       improper and incomplete
12       answers served.  An objection
13       letter was promptly sent by me
14       and no updates provided.
15           So at this time, we're
16       going to recess the deposition
17       on behalf of the plaintiff.
18   MS. HUGHES:  We have given you
19       everything that we have.
20   THE WITNESS:  That's all -- You've
21       got everything we've got.
22   MR. PATERSON:  Let me say on
23       behalf of AmSouth, you've got

---

Page 205

1            all of our documentation
2            and --
3    THE WITNESS:  You've got all of
4        mine, too.
5    MR. PATERSON:  And our objections
6        to the discovery you
7        propounded to the AmSouth
8        defendants is a matter of
9        record, and we'll take that up
10       with the magistrate, the
11       discovery dispute for
12       resolution.
13           And as far as we're
14       concerned, this deposition is
15       over.  We don't agree to
16       continue it.  And that will
17       have to -- that will have to
18       be determined by the court as
19       well.
20   MR. MCHARD:  For the record, your
21       firm has specifically
22       represented to the United
States District Court that you

EXHIBIT

Videotaped Deposition of Ina Sue Crouch

Page 206

1 had all of the records, and
2 I've read that provision, and
3 the initial disclosure
4 specifically says that you had
5 all those records with regard
6 to the bank accounts.
7 Not one of them has been
8 provided despite my
9 objections, and I've been told
10 today that I still don't have
11 the annuity contract for which
12 this lawsuit was filed
13 initially back in September of
14 2002, some four years ago.
15 MR. WALDROP: On behalf of
16 Lincoln, we object to the
17 deposition being continued.
18 We view it, as does counsel
19 for AmSouth, as being over.
20 I think Lincoln has
21 complied in good faith with
22 producing its initial
23 disclosures. And I have

Page 207

1 obtained what I believe to be
2 a sample form annuity contract
3 which would -- and I'll give
4 you a copy right now because I
5 don't want to deny you the
6 opportunity if you want to ask
7 some questions about it in
8 this deposition, and I don't
9 want to have any excuse for
10 this thing being continued.
11 From our standpoint -- I
12 went to great lengths to get
13 this sample contract during
14 the course of this
15 deposition. I've had it
16 e-mailed down here and we'd
17 offer --
18 MR. MCHARD: Well, this has never
19 been produced in discovery or
20 in the initial disclosures.
21 MR. WALDROP: There's not any
22 pending discovery to Lincoln.
23 We are in this case for

Page 208

1 literally about two months.
2 We view -- We're saying
3 that this application form or
4 something like that was the
5 contract, quote, unquote, to
6 use your phrases. So I said,
7 well, if there actually is a
8 greater part of the
9 contract -- this is what I
10 believe is on file with the
11 Department of Insurance, but
12 this is a sample form of the
13 Investor's Choice annuity
14 contract.
15 And, of course, once an
16 annuity is surrendered, as
17 this one was, normally those
18 things are no longer
19 retained. That's the normal
20 practice when an annuity or CD
21 or something else is
22 surrendered. Most banks and
23 insurance companies don't

Page 209

1 retain those.
2 But this is a sample
3 annuity contract for
4 Investor's Choice as I
5 understand it. Just to
6 identify it for the record, it
7 has some numbers on it, LN028
8 through LN041. It also has
9 some numbers on this at the
10 bottom, A-31 through A-44.
11 MS. HUGHES: We also object to a
12 continuance.
13 I can provide you with
14 first names of doctors, if
15 this will help you, of those
16 that are still in practice.
17 Other than that, I don't know
18 of anything else we can
19 provide you.
20 THE WITNESS: I told him Kumar was
21 his medical doctor. Dr. Peden
22 is retired and gone.
23 MR. PATERSON: We have no

**AUTHORIZATION AND CONSENT**
**TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION**
**(Excluding psychotherapy notes)**

Name of Individual:  James Earl Crouch

Social Security Number:

Date of Birth:

TO:     Baptist Health, Wetumpka, AL

     The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501.*

     The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

     The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐     PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
     [NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
     Bryan Nelson  P.A.
     Attn: Samuel S. McHard
     6524 U.S. Highway 98
     Post Office Drawer 18109
     Hattiesburg, MS 39404
     T: 601/261-4100
     F: 601/261-4106

•     The undersigned individual is initiating this request for disclosure of protected health information, and any



EXHIBIT
9

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations *(45* CFR §§164.500-164.534).

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v. Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5)* years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____          _____

                                      Signature of Individual or Individual's Representative

Individual's Name and Address:         _____

                                      Printed Name of Individual's Representative (if applicable)

_____        _____

                                      Relationship of Representative to Individual (if applicable)

_____

_____        _____

_____        _____

                                      Description of Representative's authority to act for
                                      Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

**AUTHORIZATION AND CONSENT**
**TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION**
**(Excluding psychotherapy notes)**

Name of Individual:  James Earl Crouch

Social Security Number:

Date of Birth:

TO:    Baptist Towers Hospital

The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501.*

The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐      PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
[NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
Bryan Nelson  P.A.
Attn: Samuel S. McHard
6524 U.S. Highway 98
Post Office Drawer 18109
Hattiesburg, MS 39404
T: 601/261-4100
F: 601/261-4106

•    The undersigned individual is initiating this request for disclosure of protected health information, and any

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

• The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

• The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the <u>Standards for the Privacy of Individually Identifiable Health Information</u> contained in the HIPAA regulations *(45* CFR §§164.500-164.534).

• A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v. Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5)* years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____          _____
                               Signature of Individual or Individual's Representative

Individual's Name and Address:  _____
                               Printed Name of Individual's Representative (if applicable)

_____   _____
                               Relationship of Representative to Individual (if applicable)

_____   _____

_____   _____
                               Description of Representative's authority to act for
                               Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

**AUTHORIZATION AND CONSENT
TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION
(Excluding psychotherapy notes)**

Name of Individual:   James Earl Crouch

Social Security Number:

Date of Birth:

TO:    Dr. Chen

The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501*.

The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐    PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
[NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
Bryan Nelson P.A.
Attn: Samuel S. McHard
6524 U.S. Highway 98
Post Office Drawer 18109
Hattiesburg, MS 39404
T: 601/261-4100
F: 601/261-4106

•    The undersigned individual is initiating this request for disclosure of protected health information, and any

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations *(45* CFR §§164.500-164.534).

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v. Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5)* years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

_____
Signature of Individual or Individual's Representative

Individual's Name and Address:

_____
Printed Name of Individual's Representative (if applicable)

_____

_____
Relationship of Representative to Individual (if applicable)

_____

_____

_____
Description of Representative's authority to act for Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

## AUTHORIZATION AND CONSENT
## TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION
### (Excluding psychotherapy notes)

Name of Individual:  James Earl Crouch

Social Security Number:

Date of Birth:

TO:    Dr. Clark

The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501.*

The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐       PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
[NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
Bryan Nelson  P.A.
Attn: Samuel S. McHard
6524 U.S. Highway 98
Post Office Drawer 18109
Hattiesburg, MS 39404
T: 601/261-4100
F: 601/261-4106

●    The undersigned individual is initiating this request for disclosure of protected health information, and any

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109,** and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations *(45* CFR §§164.500-164.534).

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v. Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5)* years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

_____
Signature of Individual or Individual's Representative

Individual's Name and Address:

_____
Printed Name of Individual's Representative (if applicable)

_____

_____
Relationship of Representative to Individual (if applicable)

_____

_____

_____
Description of Representative's authority to act for Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

**AUTHORIZATION AND CONSENT
TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION
(Excluding psychotherapy notes)**

Name of Individual:   James Earl Crouch

Social Security Number:

Date of Birth:

TO:     Dr. Hunter

        The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501.*

        The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

        The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐     PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
        [NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
        Bryan Nelson  P.A.
        Attn: Samuel S. McHard
        6524 U.S. Highway 98
        Post Office Drawer 18109
        Hattiesburg, MS 39404
        T: 601/261-4100
        F: 601/261-4106

●     The undersigned individual is initiating this request for disclosure of protected health information, and any

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations *(45* CFR §§164.500-164.534).

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v. Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5) years* after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

_____
Signature of Individual or Individual's Representative

Individual's Name and Address:

_____
Printed Name of Individual's Representative (if applicable)

_____

_____
Relationship of Representative to Individual (if applicable)

_____

_____

_____
Description of Representative's authority to act for Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

**AUTHORIZATION AND CONSENT
TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION
(Excluding psychotherapy notes)**

Name of Individual:  James Earl Crouch

Social Security Number:

Date of Birth:

TO:    Dr. Thomas Wingate Rigsby, Sr., Montgomery, AL

The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501.*

The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐    PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
[NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
Bryan Nelson  P.A.
Attn: Samuel S. McHard
6524 U.S. Highway 98
Post Office Drawer 18109
Hattiesburg, MS 39404
T: 601/261-4100
F: 601/261-4106

•    The undersigned individual is initiating this request for disclosure of protected health information, and any

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations *(45* CFR §§164.500-164.534).

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v. Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5)* years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

_____
Signature of Individual or Individual's Representative

Individual's Name and Address:

_____
Printed Name of Individual's Representative (if applicable)

_____

_____
Relationship of Representative to Individual (if applicable)

_____

_____

_____

_____
Description of Representative's authority to act for Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

**AUTHORIZATION AND CONSENT**
**TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION**
<u>(Excluding psychotherapy notes)</u>

Name of Individual:  James Earl Crouch

Social Security Number:

Date of Birth:

TO:    Elmore Community Hospital, Wetumpka, AL

The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501.*

The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐    PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
[NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
Bryan Nelson  P.A.
Attn: Samuel S. McHard
6524 U.S. Highway 98
Post Office Drawer 18109
Hattiesburg, MS 39404
T: 601/261-4100
F: 601/261-4106

●    The undersigned individual is initiating this request for disclosure of protected health information, and any

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations *(45 CFR §§164.500-164.534)*.

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v. Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5)* years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

_____
Signature of Individual or Individual's Representative

Individual's Name and Address:

_____
Printed Name of Individual's Representative (if applicable)

_____

_____
_____
Relationship of Representative to Individual (if applicable)

_____

_____

_____
_____
Description of Representative's authority to act for Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

## AUTHORIZATION AND CONSENT
## TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION
### (Excluding psychotherapy notes)

Name of Individual:  James Earl Crouch

Social Security Number:

Date of Birth:

TO:    Jackson Hospital and Clinic, Inc., Montgomery, AL

  The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501.*

  The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

  The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐  PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
  [NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
  Bryan Nelson  P.A.
  Attn: Samuel S. McHard
  6524 U.S. Highway 98
  Post Office Drawer 18109
  Hattiesburg, MS 39404
  T: 601/261-4100
  F: 601/261-4106

●  The undersigned individual is initiating this request for disclosure of protected health information, and any

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations *(45* CFR §§164.500-164.534).

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v. Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5)* years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

_____
Signature of Individual or Individual's Representative

Individual's Name and Address:

_____
Printed Name of Individual's Representative (if applicable)

_____

_____
Relationship of Representative to Individual (if applicable)

_____

_____
Description of Representative's authority to act for Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

**AUTHORIZATION AND CONSENT**
**TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION**
**(Excluding psychotherapy notes)**

Name of Individual:  James Earl Crouch

Social Security Number:

Date of Birth:

TO:     Bipin Kumar, M.D., Wetumpka, AL

The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501.*

The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐     PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
[NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
Bryan Nelson  P.A.
Attn: Samuel S. McHard
6524 U.S. Highway 98
Post Office Drawer 18109
Hattiesburg, MS 39404
T: 601/261-4100
F: 601/261-4106

•     The undersigned individual is initiating this request for disclosure of protected health information, and any

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations *(45* CFR §§164.500-164.534).

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v. Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5)* years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

_____
Signature of Individual or Individual's Representative

Individual's Name and Address:

_____
Printed Name of Individual's Representative (if applicable)

_____

_____
Relationship of Representative to Individual (if applicable)

_____

_____

_____

_____
Description of Representative's authority to act for Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

**AUTHORIZATION AND CONSENT**
**TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION**
**(Excluding psychotherapy notes)**

Name of Individual:  James Earl Crouch

Social Security Number:

Date of Birth:

TO:    Lens Crafters

     The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501.*

     The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

     The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐     PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
[NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
Bryan Nelson  P.A.
Attn: Samuel S. McHard
6524 U.S. Highway 98
Post Office Drawer 18109
Hattiesburg, MS 39404
T: 601/261-4100
F: 601/261-4106

•    The undersigned individual is initiating this request for disclosure of protected health information, and any

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

· The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109,** and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

· The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations *(45* CFR §§164.500-164.534).

· A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v. Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5)* years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

_____
Signature of Individual or Individual's Representative

Individual's Name and Address:

_____
Printed Name of Individual's Representative (if applicable)

_____

_____
Relationship of Representative to Individual (if applicable)

_____

_____

_____
Description of Representative's authority to act for Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

## AUTHORIZATION AND CONSENT
## TO RELEASE RECORDS AND PROTECTED HEALTH INFORMATION
### (Excluding psychotherapy notes)

Name of Individual:  James Earl Crouch

Social Security Number:

Date of Birth:

TO:    John Kirkpatrick Peden, M.D., Pike Road, AL

The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to the physical and mental health of the undersigned individual, regardless of the form of such information, including, without limitation, all notes of physicians, nurses, psychologists, counselors, dentists and other persons who have provided or who are providing health care to the undersigned individual, all radiology, pathology (including HIV test results and genetic testing information) and other diagnostic test and laboratory results, records and reports, including, without limitation, all echocardiogram reports and tapes (including, without limitation, all digitized tapes and frames and still frames) and all other echocardiogram materials, heart catheterization reports and tracings, all prescription records, all surgical procedure records and reports, all dental records, all histories and summaries, all forms and other information related to admission of the undersigned to or discharge of the undersigned from a clinic, hospital or other health care facility, all surgical procedure and other consent forms, all bills, invoices, claim forms, records and other payment information, including payment by Medicaid/Medicare and other public assistance programs, insurance companies and by other persons. Notwithstanding the broad scope of the above disclosure request, the undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § *164.501.*

The undersigned also authorizes the disclosure of all records, reports, files, documents, correspondence, memoranda and all other information related to employment of the undersigned, including attendance reports, performance reports, W-2 and W-4 forms, medical reports and/or any and all other records relating to my past and present employment, and all educational records, including all courses taken, degrees obtained, and attendance records.

The above list of types of records and other information to be disclosed is intended to be illustrative and not exhaustive. This authorization does not authorize ex parte communication concerning same.

☐     PLEASE CHECK IF THE UNDERSIGNED INDIVIDUAL REQUESTS THAT A DUPLICATE COPY OF RECORDS ALSO BE PROVIDED TO HIS OR HER ATTORNEY (AT THE UNDERSIGNED INDIVIDUAL'S EXPENSE) AT THE ADDRESS SET FORTH BELOW:
[NAME AND ADDRESS OF UNDERSIGNED INDIVIDUAL'S ATTORNEY]
Bryan Nelson  P.A.
Attn: Samuel S. McHard
6524 U.S. Highway 98
Post Office Drawer 18109
Hattiesburg, MS 39404
T: 601/261-4100
F: 601/261-4106

•     The undersigned individual is initiating this request for disclosure of protected health information, and any

disclosure of the same pursuant hereto is at the request of the undersigned individual.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

• The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice either to **Bryan Nelson P.A., Attn: Samuel S. McHard, P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

• The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient in a manner that will not be protected by the <u>Standards for the Privacy of Individually Identifiable Health Information</u> contained in the HIPAA regulations *(45* CFR §§164.500-164.534).

• A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Jodi Ladner v Kevin Rodrigue, et al.*, United States District Court for the Eastern District of Louisiana, or (ii) five *(5)* years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

_____
Signature of Individual or Individual's Representative

Individual's Name and Address:

_____
Printed Name of Individual's Representative (if applicable)

_____

_____
Relationship of Representative to Individual (if applicable)

_____

_____

_____
Description of Representative's authority to act for Individual (if applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

Videotaped Deposition of Ina Sue Crouch

August 23, 2006

Page 62

1  Q.  Out to?
2  A.  Baptist Medical Center in Montgomery.
3      That's after -- It was in January.
4      Dr. Kumar and Dr. Peden wanted me to take
5      him to him and have a brain scan thing done
6      on his head, and I did.
7  Q.  Well, did he also see Dr. Rigsby, Dr. --
8  A.  This is the surgeons, now.  This is when he
9      was in the hospital.  Dr. Rigsby was the
10     one done the brain surgery, and Dr. Chen
11     was just a medical doctor there in the
12     hospital, Jackson's Hospital.
13 Q.  Jackson Hospital here in Montgomery?
14 A.  Montgomery.
15 Q.  How about Dr. Hunter?
16 A.  Dr. Hunter?  I don't know him.  Hunker.
17     Hunker.  He was a lung specialist.
18 Q.  At where?
19 A.  At Jackson Hospital.  He had -- Whenever he
20     had brain surgery there, he had several,
21     several doctors for different things with
22     him.  And I don't know.  I didn't know all
23     of them's name.  I didn't ... I don't

Page 63

1      remember their names.  I had never met them
2      before.
3  Q.  Well, ma'am, I have here medical
4      authorizations to get the medical records
5      of -- from Dr. Thomas Wingate Rigsby, from
6      Elmore Community Hospital in Wetumpka, from
7      Dr. Chen, from Baptist Hospital, from
8      Dr. Hunter, from Dr. Clark, from the
9      Baptist Hospital in Wetumpka.  And I'd ask
10     that you execute these at this time so that
11     we may obtain those records.
12     MS. HUGHES:  Say no.
13     MR. PATERSON:  We object to that.
14     MS. HUGHES:  Object.  Object to
15     form.
16 Q.  Ma'am, if you don't have anything to hide,
17     why are you refusing to do it?
18 A.  I don't have anything to hide.
19     MR. GREGGS:  Object to the form.
20     MR. PATERSON:  Objection.
21     MS. HUGHES:  Object.
22 Q.  Why are you refusing to sign these, ma'am?
23     MS. HUGHES:  Badgering the

Page 64

1      witness.  Object.
2  A.  I'm not -- I'm not signing anything like
3      that.  I don't know -- I don't know the --
4      I just know the doctors was there and I
5      know what was wrong with him, and that's
6      it.  He had brain surgery, and he never
7      knew nothing else after he had brain
8      surgery.
9      Those was the doctors attended him, and
10     I have nothing to sign for it.
11 Q.  You specifically talked to the doctors that
12     we've discussed --
13 A.  Well, what --
14 Q.  -- one or more of them about getting powers
15     of attorney for your husband, didn't you?
16 A.  No, I did not.  No.  No.  That's never been
17     discussed, no such as that.  I don't know
18     where that information came from.
19 Q.  And did you ever talk with Attorney
20     Thornton about that?
21 A.  No, I did not.
22 Q.  And did you talk with Attorney Thornton
23     about his preparing new wills --

Page 65

1  A.  No, I did not.
2  Q.  -- during that last year of his life?
3  A.  No, I did not.
4  Q.  Never contacted him?
5  A.  I went down one time at my husband's
6      request.  He was our attorney for selling
7      property and stuff.  And he -- And my
8      husband asked me to go down there.  That
9      was before he had back surgery, and he was
10     real sick with his back.  And he asked me
11     to go down there and see if he'd come up to
12     the house and do the thing.  I went by the
13     office and he was in court, and I never
14     seen him and that was it.
15 Q.  Do the thing.  Do what thing?
16 A.  Make -- Redo the will, update it.
17 Q.  Well, who did you talk with --
18 A.  I didn't talk to nobody.  She said he was
19     out in court -- the secretary, the
20     receptionist -- and that was it.
21 Q.  With regard to your husband's vision, you
22     would agree that your husband only had
23     reading glasses, didn't he?

EXHIBIT
10
Group
tabbies

17 (Pages 62 to 65)

Videotaped Deposition of Ina Sue Crouch                                      August 23, 2006

Page 66

1    A.  He could not see unless he had his glasses
2        on to sign nothing or read anything.  He
3        was a diabetic, and his eyes was very bad.
4        He couldn't hardly get glasses to where he
5        could read.
6    Q.  Well, are you saying that he had something
7        other than reading glasses?
8    A.  He had bifocals.
9    Q.  Who prescribed those?
10   A.  I don't know the name of the last -- it was
11       LensCrafters, but I don't know the name of
12       the doctor that did them.
13   Q.  LensCrafters here in Montgomery?
14   A.  Yes.
15   Q.  Well, ma'am, I'm going to tender you an
16       authorization consent for LensCrafters --
17           MS. HUGHES:  I object.
18   Q.  -- to provide us the --
19           MS. HUGHES:  I object.
20   Q.  -- records with regard to your husband's
21       vision issues.
22   A.  I know --
23   Q.  Will you agree --

Page 67

1    A.  I knew his vision issues.  He could not
2        read without them.  He did not -- He didn't
3        keep them on his face all day like I do
4        mine.  But if he went to read a paper or to
5        look at a menu or sign anything, he had to
6        have glasses.  He had to get up like that
7        to see it.
8    Q.  And as you've previously testified, you
9        were the person that always found things
10       for your husband and assisted him, correct?
11   A.  Well, that would --
12           MS. HUGHES:  Object to the form.
13   Q.  Is that correct?
14   A.  He read things, and if we went out to eat
15       or anything, if he wanted to read the menu,
16       if he wanted to read the newspaper, I
17       didn't read it for him, but he had to have
18       the glasses to read.
19   Q.  You'd carry those in your purse and give
20       them to him, wouldn't you?
21           MS. HUGHES:  Object to the form.
22   A.  No.  No, he carried them in his shirt
23       pocket.  No, I didn't carry his glasses,

Page 68

1        no.
2    Q.  Well, as to Drs. Peden and Kumar, I have
3        medical authorizations.  Are you willing to
4        sign those documents so that we can get
5        those records?
6           MS. HUGHES:  Objection.
7    A.  I wouldn't think that -- I wouldn't
8        think -- I've done told you.  Peden is
9        retired and gone.  He's not even in
10       Montgomery.  He lived in England or
11       somewhere and he went back.  He's not even
12       in Montgomery.  He retired shortly after
13       James --
14           MS. HUGHES:  Ms. Crouch, you won't
15       be signing these forms.
16           THE WITNESS:  I know I'm not
17       signing them.
18   Q.  So you refuse to sign these forms also; is
19       that correct?
20   A.  That's right.  His medical records has got
21       nothing to do with the annuity.
22   Q.  You would agree that your son, David,
23       from -- that is, David Shaddix from your

Page 69

1        prior marriage stayed at your home and that
2        of your husband for the two weeks preceding
3        and for some time following your husband's
4        death, correct?
5    A.  No, I don't.  I don't agree to that.
6        That's not true.
7    Q.  Well, was it true when you said that in
8        your prior deposition, ma'am?
9    A.  I didn't say he stayed there that long.
10          MR. PATERSON:  Let me -- For the
11       record, if you're going to try
12       to impeach her with prior
13       sworn testimony, we would ask
14       that it be done properly.
15       Show other counsel here the
16       deposition, show her the
17       deposition, and ask that it be
18       done properly or not at all.
19   A.  No, I didn't say that.  My son came down
20       there.
21   Q.  When?
22   A.  He came while -- while James was in the
23       hospital after he had brain surgery.  He

Videotaped Deposition of Ina Sue Crouch                    August 23, 2006

Page 191

1              stuff.  I don't keep it.  And I ain't

2              signing nothing for no bank to give

3              nothing.

4    Q.        Why is that, ma'am?

5    A.        Because that's not necessary.  It's

6              irrelevant to the case.  You're trying to

7              make a big issue out of nothing.  I'm

8              talking about the annuity.  What has

9              that -- my bank records got to do with it?

10             You make me understand that, please.  I'd

11             like to know.

12   Q.        So you're refusing --

13   A.        We're talking about the annuity.

14   Q.        You're refusing to authorize that; is that

15             correct, ma'am?

16   A.        Why have I got to authorize it?

17   Q.        Are you refusing?

18   A.        I don't -- I don't have those things.  I

19             don't have all those blank checks and

20             things.

21   Q.        Well, you control it.  You can simply

22             execute an authorization to have them give

23             us the records, can't you, ma'am?

**EXHIBIT**

**11**

1    A.   I might could if I wanted to.

2    Q.   Will you do that, ma'am?

3              MS. HUGHES:   Think about it.

4    Q.   Your attorney is saying think about it.

5         Are you willing to do that as I asked you

6         on the record?

7              MR. WALDROP:   Objection.

8              MS. HUGHES:   Objection.

9    Q.   Well, you can still go ahead and answer.

10   A.   I don't think there's nothing that I need

11        to do.  I don't think it's concerning

12        this.  That's why I don't want to do it

13        because I don't think it pertains to it.

14        It's something that's no good to me.

15   Q.   Well --

16   A.   You ain't down to basics with the annuity.

17        You're trying to come back to something way

18        back in time.  That's -- that's not -- It's

19        irrelevant to it, what you're trying to ask

20        me.

21   Q.   Ma'am, if you would look at Exhibit Number

22        12 which you have right over there.  See

23        that document?

## AUTHORIZATION AND CONSENT
## TO RELEASE BANK RECORDS

Name of Individual: James Earl Crouch (SSN 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, DOB 4/12/28) and Ina Sue Crouch (SSN 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, DOB 10/13/23)

TO:    AmSouth Bank
        Alliant Bank

The undersigned individual hereby authorizes each entity included in any of the above categories to disclose and furnish to **Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109**, and its authorized representatives, true and correct copies of all records, reports, files, documents, correspondence, memoranda and all other information related to all cancelled checks drawn upon AmSouth Bank or Alliant Bank from January 1, 1997 until March 1, 2001 from on any account in which James Earl Crouch had an interest, either solely or jointly, including, but not limited to, the cashiers and/or certified check for $100,000.00 payable to James Edward Crouch and all bank statements for any account owned by Ina Sue Crouch and/or James Earl Crouch from January 1, 1997, to present.

- The undersigned is hereby notified and acknowledges he or she is aware of the potential that protected bank records under the Graham-Leech-Bliley Act may be disclosed.

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the later of: (i) the date of settlement or final disposition of *Crouch v. AmSouth Bank, et al.*, In the United States District Court for the Middle District of Alabama, or (ii) five (5) years after the date of signature of the undersigned below.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Bryan Nelson P.A., P. O. Drawer 18109, Hattiesburg, MS 39404-8109, and its authorized representatives, by any entities included in the categories listed above.**

Date: _____

                                     _____
                                     Signature of Individual or Individual's Representative

Individual's Name and Address:

                                     _____
                                     Printed Name of Individual's Representative (if applicable)

_____

                                     _____
                                     Relationship of Representative to Individual (if applicable)

_____

                                     _____

_____

                                     Description of Representative's authority to act for
                                                  Individual (if applicable)

**EXHIBIT**
**12**

Videotaped Deposition of Rhonda Robinson                                August 23, 2006

Page 42

1    of all the important events in connection
2    with the Crouch annuity?
3    A.  Well, I can't say that everything was
4       listed there, no.
5    Q.  But that was your practice, wasn't it, to
6       list all of the important issues or
7       questions or problems or changes that came
8       up, right?
9    A.  Repeat that again.  I'm sorry.  I was
10      thinking.
11   Q.  Your custom and habit, practice in
12      connection with the file that you
13      maintained for each annuity would be to
14      write down on this chronological listing
15      for that file the date and whatever your
16      description of the event was that you felt
17      was important as it affected the annuity or
18      the clients to keep the file up to date,
19      correct?
20          MR. PATERSON:  Is this in general
21          or with respect to the Crouch
22          file?
23          MR. MCHARD:  Both.

Page 43

1    A.  Yeah, in most cases, yes, we would.  We
2       would document concerns or we would
3       document things that we would want to keep
4       in mind so that when a customer would come
5       back, we would be familiar with what was
6       going on with them.
7    Q.  And that was your habit that you exercised
8       in connection with this case, too, wasn't
9       it?
10   A.  In most cases, yes.
11   Q.  And exercised in this case, correct?
12   A.  I would -- I would say that there -- yeah,
13      there would be some documentation on the
14      client profile.
15   Q.  That is, on the back side or separate
16      sheet?
17   A.  It could be anywhere on that profile, but
18      it doesn't look like the back copies are
19      here.
20   Q.  That is, there are pieces of paper that are
21      missing from the client profile?  Is that
22      what you're saying?
23   A.  Well, it appears there's something that's

Page 44

1    not here.
2    Q.  What is that?  What is it to your
3       understanding is missing from Exhibit
4       Number 11?
5    A.  Well, there would be some documentation on
6       there or either it could have been on a
7       separate sheet in the file.
8    Q.  Listing these important events, issues,
9       concerns, correct?
10   A.  There should be some documentation there.
11   Q.  And you would hand write those, it was your
12      habit, onto this separate sheet when that
13      event or concern came up; is that correct?
14   A.  It would be either handwritten or there
15      would be a memo typed for the file.
16          MR. PATERSON:  And, again, y'all
17          are talking about the Crouch
18          file individually --
19          MR. MCHARD:  Right.
20          MR. PATERSON:  -- as opposed to
21          any other file?
22          MR. MCHARD:  Right.
23   Q.  Now, the ...

Page 45

1    A.  Can I make a comment about Exhibit 12?
2       This is the actual application for the
3       annuity.  This particular paperwork was
4       fairly new.  My license were obtained in
5       '97.  This was in May of '98.  Annuities
6       was not necessarily something that you sell
7       a lot of every day.  The paperwork being
8       new -- On a fixed rate annuity, they are
9       annuitant-driven which is --
10   Q.  What do you mean by that?
11   A.  Well, it means that basically you have to
12      name a beneficiary for the annuitant, even
13      though you may have a joint owner.  That's
14      not the case with a bank product, with a CD
15      product.  Those are -- Those are joint.
16      And our practice --
17   Q.  Those are ownership-driven, the bank ones?
18   A.  The bank ones would be ownership-driven.
19   Q.  As opposed to these that are annuitant-
20      driven, correct?
21   A.  Yes.
22          So in doing the paperwork, this works
23          differently.  I made an error on this

EXHIBIT
13
GROUP

Videotaped Deposition of Rhonda Robinson                                              August 23, 2006

Page 150

1    MR. WALDROP: Same.
2    A.  I'm sure that I -- at this particular time,
3        I had access to those procedures.
4    Q.  Those procedures meaning procedures issued
5        by whom?
6    A.  Procedures would have been issued by
7        Lincoln National as to how to complete the
8        form.
9    Q.  Did you look it up to find out what the
10       procedure said before you had --
11   A.  I think that's something I just -- I knew
12       from training.
13   Q.  So you didn't look it up?
14   A.  No.  I knew that if it's a joint ownership,
15       that I needed both signatures.
16           (Brief interruption.)
17           (Brief recess was taken.)
18           (Plaintiff's Exhibit 19 was marked
19           for identification.)
20   Q.  Ma'am, taking your comments during the
21       break to heart, you signed an affidavit for
22       Balch & Bingham also in connection with
23       this case, didn't you?

Page 151

1    MR. PATERSON: For me.
2    A.  For -- yeah, this one that's dated March,
3        the 6th day of March.
4    Q.  Right.  And Mr. Paterson typed it up and
5        gave it to you to sign, didn't he?
6    A.  I would have had to have given him the
7        information.  His office would have
8        prepared it.  I would have proofed it, read
9        it, made sure I agree with it and signed it
10       and send it back.
11   Q.  Well, do you have any of the correspondence
12       that indicates that's how it happened?
13           MR. WALDROP: Objection.
14   A.  Not with me, no.
15   Q.  But you do have --
16   A.  If I do, it may be -- it could be from an
17       e-mail possibly.
18   Q.  There were e-mails that went back and forth
19       between you and Mr. Paterson's office with
20       regard to this?
21   A.  On this right here.
22   Q.  Yeah.
23   A.  I think we did --

Page 152

1    Q.  With regard to Plaintiff's Exhibit Number
2        19, correct?
3    A.  I think we -- I think we did through
4        e-mail.
5    Q.  And you can provide me copies of those
6        e-mails that went back and forth because
7        they'd still be on your computer, right?
8    A.  I would hope.
9    Q.  And that would be at home or at work?
10   A.  That would be at work.
11   Q.  And you don't have any problem providing
12       those to me, do you?
13   A.  I wouldn't want to have to hunt them up.
14   Q.  Well, you could simply look at --
15   A.  I mean, what do you need?
16   Q.  Any e-mails that have gone back and forth
17       between you and Balch & Bingham regarding
18       this.
19   A.  Well, I would think that -- I would think
20       that the attorney's office would have the
21       same thing I would.
22   Q.  Well, I agree and that they probably should
23       have been produced, but they haven't been

Page 153

1    so far.  And I'm asking you on the record,
2    will you provide me all of those?
3    A.  Well, since it's on -- since it's on my
4       current employer's computer, I would think
5       I'd have to get their permission to do
6       that.
7    Q.  Well, did you get their permission in order
8       to receive e-mails, send e-mails with
9       regard to this affidavit?
10   A.  They were aware that I was involved in a
11      case from my previous employment.
12   Q.  Your current employer is Peoples Bank.
13   A.  That's right.
14   Q.  So, I mean, I could subpoena your current
15      employer to get that information, but --
16   A.  Sure.
17   Q.  -- just asking you, are you willing to
18      provide that to me?
19   A.  I think you could subpoena it and let them
20      make that decision, and they would have to,
21      I guess.
22   Q.  Is that what you want me to do?  You're not
23      willing to do that short of a subpoena; is

Videotaped Deposition of Rhonda Robinson                                      August 23, 2006

Page 154

1      that correct?
2    A.  Well, is that what you really want me to
3         do?  You tell me what you want.  Are you
4         asking -- are you asking me -- Are you
5         telling me that you need that information?
6    Q.  Yes, ma'am.  I want that information.
7    A.  You want it or you need it?
8    Q.  Well, I think it's both, one and the same.
9         I think I want it, need it, and I'm
10        entitled to it.
11   A.  Then I guess you could subpoena it, and
12        then that way the bank would officially
13        have that knowledge that you needed that
14        information.
15   Q.  Who would I send the subpoena to at your
16        bank?
17   A.  I would assume you could send it to -- my
18        employment address would get it to the
19        correct people.
20   Q.  Which is what?
21   A.  148 East Main Street, Prattville, Alabama
22        36067.
23   Q.  Attention whom?

Page 155

1    A.  You could send it to Steve Steele.  That's
2         my regional president.
3    Q.  At that address, correct?
4    A.  Uh-huh.  (Positive response.)
5    Q.  Yes?
6    A.  Yes.  Sorry.
7         MR. MCHARD:  Unless you're willing
8         to provide that -- all of that
9         information to me?
10        MR. PATERSON:  I don't really know
11        what it is sitting here
12        today.  I can't recall what it
13        is frankly.  Without seeing
14        it, I won't commit to you one
15        way or the other.
16        I think the safest thing
17        to do -- she's uncomfortable
18        producing her employer's
19        records without a subpoena, so
20        just subpoena the records.  In
21        the meantime, I'll search and
22        if there's something that
23        I think I can readily give

Page 156

1         you, I will.
2         MR. MCHARD:  They're clearly not
3         her employer's records.
4         MR. PATERSON:  Well, they come
5         from --
6         THE WITNESS:  They come from my
7         employer's computer, so I
8         would think we need to do it
9         that way.  Since I can't call
10        and ask that question, I
11        guess ...
12        MR. MCHARD:  No further questions.
13        MS. HUGHES:  I don't have any.
14        MR. PATERSON:  I've got one quick
15        question, a couple of quick
16        questions of you.
17        THE WITNESS:  I'm through with
18        you?
19        (Brief interruption.)
20             EXAMINATION
21   BY MR. PATERSON:
22   Q.  You were asked about an exhibit, Number
23        27.  Will you get that exhibit in front of

Page 157

1         you.
2         I think 27 was the notes of the
3         conversation you made with Mr. Crouch.  The
4         plaintiff, Mr. Crouch, called you.  It's
5         dated July 6, 2001.
6    A.  That's it.
7    Q.  That's it?
8    A.  Yeah.
9    Q.  Okay.  You were asked about a sentence in
10        that exhibit.  It says:  He went on to say
11        that I did an annuity for his father.  I
12        told him I could not release that
13        information one way or another.  He said he
14        had the paperwork in front of him.
15        And my question to you is, did he tell
16        you he had the paperwork regarding his --
17        the annuity that Mrs. Crouch, the
18        defendant, and the decedent, Mr. Crouch,
19        purchased?
20        MR. MCHARD:  Well, I'm going to --
21        I'm going to object to the
22        form of this --
23   Q.  What did he tell you?

Videotaped Deposition of Rhonda Robinson

August 23, 2006

Page 162

1     MR. MCHARD: Object as to form.
2     A. That's correct. He was there, and I heard
3        him ask her specifically to sign that for
4        him because he had forgotten his glasses.
5     MR. GREGGS: Thank you.
6     MR. PATERSON: No further
7        questions.
8        EXAMINATION
9  BY MR. MCHARD:
10    Q. Did you just e-mail this document back
11       then?
12    A. I thought I was finished with you.
13    Q. I know that that's your erstwhile desire,
14       but you -- this affidavit, Exhibit 19, you
15       said that you e-mailed it back and forth.
16    A. If I recall correctly, I think it was
17       e-mailed to me.
18    Q. With exhibits that had been scanned in?
19    A. No, I --
20    Q. Did you ever see the exhibits that were
21       attached or what?
22    A. Did I see these?
23    Q. Yeah.

Page 163

1     A. Well, I had -- yes, I had a copy of the
2        affidavit and the -- and the forms here.
3     Q. Had those been supplied to you by
4        Mr. Paterson?
5     A. Had the affidavit been supplied?
6     Q. No. Had the exhibits that are attached to
7        your affidavit been supplied by
8        Mr. Paterson?
9     A. I can tell you ... I don't know if I have
10       everything that's in here, but I do have a
11       copy of the profile and a copy of the
12       contract.
13    Q. How did you get the exhibits?
14    A. When or how did I get these?
15    Q. How and when, from whom did you get them?
16    A. This was given to me by Mr. Paterson.
17    Q. When were you first given the exhibits in
18       connection with the affidavit Mr. Paterson
19       wanted from you?
20    A. I would need to look at my calendar. That
21       would have been ...
22    Q. That's a manual calendar or is that on your
23       computer, too?

Page 164

1     A. It's a manual calendar.
2     Q. And you would have kept a notation of when
3        you would have gotten those?
4     A. I would have -- yeah, I would have made a
5        note on my calendar.
6     Q. Was that because you came here to get them?
7     A. No, I did not.
8     Q. Well, were they mailed to you?
9     A. No, they were not.
10    Q. Were they faxed to you?
11    A. No.
12    Q. Were they scanned in and e-mailed to you?
13    A. No, they were not scanned in an e-mail.
14    Q. Well, then how did you get them from
15       Mr. Paterson?
16    A. These were -- these were given to me when I
17       saw the -- well, no, it wouldn't have been
18       at that point. Last ... I can't remember
19       if it was Wednesday or if it was maybe
20       Tuesday.
21    Q. So you didn't see the exhibits until --
22       that were attached to your affidavit until
23       last --

Page 165

1     A. It was last week.
2     Q. -- last week; is that correct?
3     A. That -- that would be correct.
4     Q. And that's when you came here and got ready
5        for your deposition, discussed the matter
6        with Mr. Paterson?
7     A. Actually, I did not come here.
8     Q. Well, how did that work then?
9     A. Mr. Paterson met me.
10    Q. For how long?
11    A. Maybe 20 minutes.
12    Q. Where?
13    A. At my --
14    Q. At work?
15    A. At work.
16    Q. And talked about what the deposition was
17       going to be and what questions we were
18       going to be going over?
19    A. Basically gave me these to review.
20    Q. That is, the affidavit?
21    A. Affidavit of myself and Mrs. Crouch.
22    Q. Both of them, right?
23    A. Yes.

1    Q.    Yes?

2    A.    Yes.

3    Q.    And is this your signature on the bottom of

4          that dated August 20th, '97?

5    A.    That's correct.

6    Q.    And you specifically agreed in paragraph

7          four to comply with the rules, regulations

8          and procedures of Lincoln National Life,

9          didn't you?

10   A.    That's correct.  Yes.

11   Q.    And what I'm trying to find out, after you

12         certified to that, what rules, regulations

13         and procedures of Lincoln National Life did

14         you receive, review and attempt to follow?

15   A.    Well, that would be information presented

16         to us in our training.  But you asked

17         specifically about a manual, and I'm sure

18         that there was manuals there.  But, you

19         know, to tell you where that manual was at

20         that particular time, I can't tell you

21         that.  I don't know.

22   Q.    You also agreed not to alter, modify, waive

23         or change any of the terms or forms of

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| Southern | DISTRICT OF | Mississippi |

James E. Crouch

V.

AmSouth Bank, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 2:06-CV-00111-MEF
Middle District of Alabama

TO: Lincoln National Life Insurance Co.
c/o Bradley G. Hall
1675 Lakeland Dr., Ste. 500
Jackson, MS 39216

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A

| PLACE    Bryan Nelson, P.A., P.O. Drawer 18109, 6524 Highway 98, Hattiesburg, MS 39404 | DATE AND TIME |
|---|---|
|  | 6/14/2006 5:00 pm |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  | 5/30/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Samuel S. McHard, P.O. Drawer 18109, Hattiesburg, MS 39404,    (601) 261-4100

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance,



EXHIBIT
14

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | June 5, 2006 | Lincoln National Life Insurance Co., 1825 Lakeland Dr, Ste. 500, Jackson, MS, 39216 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Bobby G. Hall | Personal |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Gary J. Windham | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _June 5, 2006_
DATE

SIGNATURE OF SERVER

**METRO PROCESS SERVERS**
ADDRESS OF SERVER ~~P.O. BOX 97665~~
PEARL, MS 39288-7665

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# Exhibit "A"

You are commanded to produce the following documents and things for inspection at the place and time listed on the subpoena duces tecum to which this exhibit is attached.

1. Annuity Contract No. 774944 (hereinafter, "the Annuity").

2. Each contract or agreement between Lincoln National Life Insurance Company (hereinafter, "Lincoln") and Ronda Robinson, who is or was an employee or agent of AmSouth Bank (or AmSouth Investments) in Wetumpka, Alabama that were in effect during the period of May 7, 1998, and February 14, 2001.

3. The complete copy of any contracts or agreements between Lincoln and AmSouth Bank and/or AmSouth Investments that were in effect during the period of May 7, 1998, to February 14, 2001, and which concern the sale and/or service of Lincoln insurance products and/or investments including, and not limited to, the Annuity, by employees or agents of AmSouth Bank.

4. All manuals, instructions, regulations, policies, procedures, standards or similar documents that were issued by Lincoln to Ronda Robinson, AmSouth Bank, and/or AmSouth Investments relating to the sale and service of Lincoln insurance products and investments, such as the Annuity, and which were in effect during the period of May 7, 1998 to February 14, 2001.

5. Copies of any and all insurance licenses issued by the Alabama Department of Insurance to Ronda Robinson. AmSouth Bank, and/or AmSouth Investments.

6. All statements filed by Lincoln with the Alabama Commissioner of Insurance (or the Department of Insurance) that reflects:

   (a) The kind or kinds of insurance or classifications thereof Ronda Robinson was authorized to solicit or write on behalf of Lincoln;

   (b) What investigation Lincoln made of Ronda Robinson's qualifications, character and fitness for the duties to be assumed;

   (c) The results of said investigation; and

   (d) All appointments of Ronda Robinson, AmSouth Bank, and/or AmSouth Investments by Lincoln

7. Copies of each and every notice concerning any proceeding by the Alabama Department of Insurance to suspend or revoke the license(s) held by Ronda Robinson, whether received from Robinson, the Alabama Department of Insurance, or some third party.

8. All communications between any of the following entities (including their respective agents and representatives) relating to the Annuity, including, but not limited to, any notices of errors in the Annuity application and changes in the designation of the beneficiary:

 (a) James Edward Crouch;

 (b) Ina Sue Crouch;

 (c) James Earl Crouch;

 (d) Lincoln National Life Insurance Company; and

 (e) AmSouth Bank;

 (f) AmSouth Investments; and

 (g) Ronda Robinson.

9. Provide all documents which relate to activity of the following person or businesses regarding the Annuity:

 (a) James Edward Crouch;

 (b) Ina Sue Crouch;

 (c) James Earl Crouch;

 (d) Lincoln National Life Insurance Company;

 (e) AmSouth. Bank;

 (f) AmSouth Investments; and

 (g) Ronda Robinson.

10. Provide all documents that relate to money paid to the following persons or businesses in relation to the Annuity: