IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

JAMES E. CROUCH                                                                    PLAINTIFF

VS.                                                       CIVIL ACTION NO. 2:06-CV-00111-MEF

AMSOUTH BANK, INA SUE                                                      DEFENDANTS
CROUCH, AMSOUTH INVESTMENT
SERVICES, INC., LINCOLN
NATIONAL LIFE INSURANCE
COMPANY, and
JOHN and JANE DOES 3-10

**PLAINTIFF'S PRELIMINARY COMBINED RESPONSE TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW**

COMES NOW, the Plaintiff, James E. Crouch ("James"), and files his Preliminary Response to all Defendants' Motions for Summary Judgment. In support thereof, Plaintiff states:

HISTORY AND FACTUAL BACKGROUND

1.  For the reasons set forth in the Motion to Continue simultaneously filed herewith and pursuant to Federal Rule of Civil Procedure 56(e), James files this preliminary response without prejudice to his request to conduct discovery and to further respond after completion of discovery.

2.  This action arose from a series of events concerning Plaintiff James E. Crouch, his father, James Earl Crouch ("James Earl"), and his mother, Ina Sue Crouch ("Ina Sue").

3.  On or about May 7, 1998, James Earl and Ina Sue applied with AmSouth Bank and its wholly owned subsidiary, AmSouth Investment Services, Inc. (referred to collectively as "AmSouth") to purchase a tax-deferred annuity from Lincoln National Life Insurance Company (hereinafter, "the Annuity") in the amount of $250,000.00. In that application, they listed James as the sole beneficiary.

4.      On or about April 4, 2000, a form was allegedly filled out to change the primary beneficiary under the annuity from James to Ina Sue. One of the key issues to this litigation is whether Ina Sue Crouch signed her husband's signature with his knowledge, consent, and authorization or whether that signature of James Earl is a forgery.

5.      After James Earl's death, James was told that the beneficiary of the annuity had been changed without his father's consent.

6.      James began this litigation on September 25, 2002, when he filed a Complaint in the Chancery Court of Forrest County, Mississippi, demanding from AmSouth Bank a copy of any and all annuities purchased by James Earl through AmSouth, as well as any related documents. For a full year, which included two sets of interrogatories and answers, AmSouth Bank refused to provide the documents necessary for the Plaintiff to establish the validity of the beneficiary status of the Annuity Contract. Even when confronted with a Motion to Compel, AmSouth Bank failed to produce the documents. Finally, in November 2003, the counsel for AmSouth Bank acknowledged that AmSouth possessed the documents and agreed to produce them. Months later, AmSouth's counsel stated that they could not produce them due to federal privacy laws. AmSouth requested that Ina Sue Crouch, who was the new beneficiary, be made a party to the Complaint before AmSouth would release the documents. Discovery was propounded to AmSouth on the Complaint for Discovery, and AmSouth again failed to produce the documents.

7.      The Plaintiff amended the suit to include claims related to the enforcement of the settlement agreement, along with the original allegations related to the change of beneficiary. Plaintiff sought enforcement of the above-mentioned settlement agreement, sought specific performance in the form of payment of the annuity to him as beneficiary, and he made claims of

negligence, breach of fiduciary duty, breach of contract, and tortious interference with contract.

8.    On or about February 7, 2005, this case was removed to the United States Court for the Southern District of Mississippi. On April 27, 2005 at the first federal court status conference, counsel for AmSouth Bank stated that AmSouth Bank planned to move to change the venue of this action to Alabama. The Court instructed counsel for AmSouth Bank to produce the annuity documents so that Plaintiff's counsel could determine whether the signature on the change of beneficiary forms was valid. If forgery or unauthorized signature was indicated, AmSouth Bank was directed by the Court to promptly file its motion to be taken up at the rescheduled conference on June 24, 2005. On May 5, 2005, Plaintiff's counsel received AmSouth Bank's Pre-Discovery Disclosure. Although the documents failed to contain the annuity contract that has been repeatedly requested for more than two and one half years, the disclosure did contain the original application and the purported "change of beneficiary" form. (Both the application and the form are also Exhibits 1 and 7, respectively, to Exhibits A and B attached hereto). Those exhibits clearly demonstrate that the signature of James Earl was forged on the change of beneficiary form and that his purported signature on the form is identical to that of Ina Sue. Despite this, counsel for AmSouth represented that the signature of James Earl was valid and was witnessed by AmSouth's employee, Ronda Robinson.

9.    On February 6, 2006, this action was transferred to the Middle District of Alabama. To date, no discovery has taken place in federal court due to the fact that the scheduling conference has not occurred. Despite the lack of discovery, Defendant AmSouth Bank ("AmSouth") filed a Motion for Summary Judgment on or about March 9, 2006. Thereafter, on June 23, 2006, this Court granted Plaintiff leave to file a Second Amended Complaint and to add AmSouth Investment

Services, Inc. and Lincoln National Life Insurance Company (hereinafter "Lincoln") as additional named defendants. On July 31, 2006, Lincoln filed an Answer. As a courtesy, Plaintiff sent Lincoln the letter inquiring if Lincoln and its counsel would be available for depositions on August 17, 2006, in Montgomery. On or about September 18, 2006, Lincoln filed its Motion for Summary Judgment; on or about September 19, 2006, AmSouth filed their Motion for Summary Judgment; and on or about September 22, 2006, Ina Sue Crouch filed her Motion for Summary Judgment.

10. Plaintiff incorporates by reference the Motion to Continue Defendant's Motions for Summary Judgment filed herein on October 3, 2006.

## GROUNDS TO DENY AMSOUTH'S MOTION

11. Defendants' Motions are premature in that the parties have participated in limited discovery. *See Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988); *Alabama Farm Bureau Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979) ("Summary Judgment [sic] ***should not, therefore, ordinarily be granted before discovery has been completed***.") (emphasis added).[1]

12. At least one issue of material fact remains for the finder of fact to decide — that facts discovered thereby regarding execution of the changes of beneficiary form, the mental and physical health of James Earl Crouch, the proper procedure for changes of beneficiaries, and the certified copy of the AmSouth contract, together with the interpretation of the manner of change of an "annuitant designated beneficiary" such as James Earl Crouch under the application for annuity as

---

[1] Plaintiff has also filed a Motion to Continue Defendants' Motions for Summary Judgment Pending Discovery. Nothing in this Motion should be construed as Plaintiff waiving his Motion to Continue.

opposed to change of an owner designated beneficiary as attempted by Ronda Robinson and Ina Sue Crouch all create genuine issues of material fact, precluding summary judgment.

13. Defendants' premature Motions are also fatally flawed. Defendants' rely upon the previously filed affidavits of Ina Sue Crouch and Ronda Robinson (both of which were created by counsel for AmSouth), and the deposition testimony of Ina Sue Crouch and Ronda Robinson. (*See* AmSouth's initial Motion for Summary Judgment). In that affidavit and testimony, Ina Sue states that she signed her husband's name with his permission. This directly contradicts her earlier sworn testimony. When one supports a motion for summary judgment with an affidavit that contradicts earlier sworn testimony, that affidavit must be disregarded. *Simler v. Conner*, 372 U.S. 221, 222-23 (1963); *Road Sprinkler Fitters Local Union v. Simplex Grinnell LP*, 251 F.Supp. 2d 1201, 1204-05 (W.D.N.Y. 2003); *Cheatwood v. Roanoke Indus.*, 891 F.Supp. 1528, 1533 n.1 (N.D. Ala. 1995); *cf. Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 223) (nonmovant cannot manufacture an issue of material fact by submitting an affidavit contradicting earlier testimony).

14. Ina Sue gave a deposition in *In re James Earl Crouch*, Case No. 01-272, in the Probate Court of Elmore County, Alabama on January 22, 2002. The relevant portion of that deposition (the transcript of which is attached as Exhibit 6 to Exhibit A (hereinafter, "Exhibit 6")) reads:

> Q: Have you ever signed Mr. Crouch's name to anything?
>
> A: Unh-unh.
>
> Q: Never?
>
> A: Unh-unh. Unh-unh. ***Never. Mr. Crouch was always able to sign his own name whenever we done business. No, I've never signed his name to nothing.*** [sic]

(Exhibit 6, pp. 74-75 (emphasis added)). Ina Sue also admits that James Earl did not authorize any transactions past the date on which he and Ina Sue applied for the Annuity:

> A. There was never no money changes or nothing unless he was there and aware of it. We had no money changes. No bank changes was made since May the 8th, 1998. And I think very he was very, very aware then.
>
> Q. And when you say bank changes, you mean –
>
> A. Changed something.
>
> Q. – y'all didn't transact any business?
>
> A. No. Transact no business whatsoever after May the 8th, 1998.
>
> Q. Okay. And it's your testimony from May the 8th, 1998, until he died, your husband transacted no business?
>
> A. Well, we just had CDs; and when they come due, we just let them review theirselves [sic].
>
> Q. So it's an automatic renewal.
>
> A. We didn't take them out. Just automatic renewal.

(Exhibit 6, pp. 44-45). Further, Ina Sue also testified that she and James Earl never changed the beneficiary of the annuity:

> Q. Tell me about the annuity that your husband had.
>
> A. I told you that a while ago.
>
> Q. Okay. Tell me again. I'm slow.
>
> A. Well, we just had an annuity with Lincoln Life Insurance Company.
>
> Q. And how many times has the beneficiary been changed on that?
>
> A. Never.

> Q. Never. So from the time it was first purchased until the time of your husband's death, the beneficiary was you?
>
> A. Yes. Right.

(Exhibit 6, p 93). Clearly, Ina Sue earlier stated that she had never signed James Earl's name and that he was always able to sign his name. This statement stands in direct contradiction to the affidavit of Ina Sue prepared and submitted by AmSouth in support of its earlier Motion for Summary Judgment, and her later testimony in her deposition and the deposition exhibits. Further, Ina Sue stated that she was always the beneficiary on the annuity, an assertion that is clearly contradicted by the facts.

15. The Eleventh Circuit has considered the issue of affidavits that conflict with earlier testimony and decided that summary judgment is generally inappropriate when the motion is supported by such contradictory affidavits. When the affidavit raises a flat, unexplained contradiction to the earlier deposition, the affidavit is to be ignored. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). However, if the discrepancy may be "inherently inconsistent" with the deposition testimony, the inconsistency raises issues of credibility, which is the sole province of a jury. *Id.* at 953-54. In the instant case, either Ina Sue's affidavit is inherently inconsistent with her deposition testimony, in which case the affidavit should be ignored by the Court, or it raises issues of credibility for a jury to decide. In either situation, the Court should deny Defendants' Motions for Summary Judgment.

16. Likewise, the affidavit of Ronda Robinson contradicts her earlier declaration filed in the United States District Court for the Southern District of Mississippi in support of another

motion to transfer. In that affidavit, she states that she witnessed both James Earl and Ina Sue sign the purported change of beneficiaries form. (See Declaration attached hereto as Exhibit C).

      17.      Additionally, Rule 56(e) requires that affidavits supporting a motion for summary judgment "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence . . . ." Fed. R. Civ. P. 56(e). The affidavits of Ina Sue and Ronda Robinson submitted to support AmSouth's initial Motion rely on inadmissable evidence. For example, Exhibit 1 attached to AmSouth's Motion is an affidavit by Ina Sue. This affidavit is replete with hearsay statements which are inadmissible pursuant to F.R.E. 801 and are not excepted by F.R.E. 804. In the affidavit, Ina Sue makes the following inadmissible hearsay statements:

- "In 1998, my husband and I had some discussions about our financial security and we decided to look into the possibility of purchasing an annuity." (¶ 2)

- "Ronda T. Robinson informed us that she was a licensed representative of AmSouth Investment Services, Inc. and we could purchase an annuity through her." (¶ 2)

- "We intended to purchase an annuity which we would own jointly with the survivor of us getting the benefit of the annuity." (¶ 2)

- "Ronda T. Robinson informed us that she had made a mistake on the application form and that some additional paperwork had to be completed."(¶ 3)

- "Ronda T. Robinson explained to us that at the time annuity contract #774944 was issued, our son, James Edward Crouch was incorrectly named as the primary beneficiary of the annuity . . . ." (¶ 3)

- "[W]e told Ronda T. Robinson that we could come by the bank to complete the necessary forms . . . ." (¶ 3)

- "Ronda T. Robinson explained that we would need to fill out an annuity service request so that the primary beneficiary on the annuity contract #774944 could be changed from our son, James Edward Crouch to me and have our son listed as contingent beneficiary." (¶ 4)
- "[James Earl] asked me to sign his name as well as my own name on the form." (¶ 4).

These statements go to James Earl's purported intentions, and are clearly inadmissible as hearsay. Likewise, ¶¶ 5, 6, and 7 of the affidavit of Robin Robinson contain similarly inadmissable hearsay statements. A motion for summary judgment should not be granted upon evidence that would not be admissible at the trial of the matter. *Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (further citations omitted); *Sires v. Luke*, 544 F.Supp. 1155, 1160 (S.D. Ga. 1982); *Smith v. Crosrol, Inc.*, 498 F.Supp. 697, 700 (M.D. Ala. 1980). In addition, these statements are in violation of the Alabama Dead Man's Act. Ala. Code § 12-21-163.

18.   In addition, Ina Sue Crouch admitted the following in her deposition:

| Pg. | Line | |
|---|---|---|
| 34 | 06-08 | "owner beneficiary information", the owner beneficiary is blank. |
| 34 | 15-19 | there is a note that specifically states that owner beneficiary designations are applicable only when there is no joint owner |
| 35 | 02-08 | therefore an owner beneficiary designation doesn't come into play |
| 35-36 | 19-05 | there is a specific annuitant beneficiary designation as opposed to an owner beneficiary designation. |

| | | |
|---|---|---|
| 37 | 04-08 | There is only an annuitant beneficiary designation in connection with this paper. |
| 37 | 18-22 | annuitant beneficiary, a primary beneficiary names as James Edward Crouch. |
| 39 | 05-07 | there is no contingent beneficiary listed in the contract. |
| 39 | 11-17 | If there was an owner who was not the annuitant, then and only then would the surrender value proceeds be paid to the surviving owner as beneficiary. |
| 53-54 | 16-03 | on the 7th ...Ronda Robinson informed us that she'd made the mistake. |
| 54 | 08-11 | She did call me and said we needed to come back to the bank. |
| 74 | 11-18 | annuity application and the documents that were prepared and submitted in connection with the purchase of the Lincoln National Life Insurance annuity and signed by Earl, he was able to read and write and understand them. |
| 75 | 08-11 | He was not suffering from physical or mental incapacity that would prevent him from signing documents. |
| 78 | 02-07 | I have specifically stated under oath that there were no bank changes to any documents at the bank, no money changes since May 8, 1998 when the annuity was purchased. |
| 79 | 02-07 | You previously said under oath that you have never signed your husband's name to anything because he was always able to sign his own name. |
| 81 | 03-06 | Did you say that Mr. Crouch was always able to sign his own name whenever we done business. No, I never signed his name to nothing. Didn't you say that? |

| | | |
|---|---|---|
| 92 | 02-09 | You also specifically testified that you had a conversation with your son, James Edward, about the annuity letting him know that he was the beneficiary. We went over to his home and told him we had took it. |
| 96 | 14-18 | You specifically testified under oath that you fully understood the actions taken with respect to the purchase |
| 103-104 | 08-01 | I understand the distinction as shown in the contract data sheet between an annuitant beneficiary and an owner's beneficiary as noted in the contract data sheet. |
| 112-113 | 16-01 | on May 7, 1998… |
| 113 | 08-10 | He was able to read and sign and make his mark on it. He had his glasses on. He wrote it. |
| 141 | 09-14 | Ronda Robinson told me immediately after the contract was issued that there was a mistake, two years went by before anything was done regarding it. |
| 155-156 | 21-07 | I signed James Earl Crouch's name on the owner's line of Exhibit 22, the annuity service request of April 4, 2000. |
| 190-191 | 20-06 | I refuse to sign an authorization for the bank to give you those documents. |

19.  In addition, Ronda Robinson admitted in her deposition that she made mistakes in servicing the account and failed to follow the rules and procedures of AmSouth and Lincoln National. *See* Exhibits D and E.

20.  The Court should note that Ina Sue admits in her affidavit that she and her late husband were "tardy" in changing the beneficiary after receiving notice of their alleged error. The change in beneficiary was made almost two years after applying for the annuity. Surely, if this was

indeed a mistake, the Crouches would have corrected this mistake as soon as possible. The fact that the change in beneficiary was done almost two years later casts enough doubt upon the Defendants' version of the facts to make summary judgment inappropriate.

21. Because genuine issues of material fact remain, this Court should deny Defendants' Motions for Summary Judgment.

22. Should this Court grant Plaintiff's Motion to Continue Defendant's Motions for Summary Judgment, which was filed on October 3, 2006, Plaintiff reserves the right to amend this Response with any newly-discovered evidence.

WHEREFORE, PREMISES CONSIDERED, Plaintiff James E. Crouch respectfully requests this Court deny Defendants' Motions for Summary Judgment and enter an order to the same.

Respectfully submitted,
JAMES R. CROUCH


By:   s/ Samuel S. McHard
        Samuel S. McHard, MS Bar No. 100295
        *pro hac vice*

BRYAN NELSON P.A.
Attorneys at Law
6524 U.S. Highway 98
P.O. Drawer 18109
Hattiesburg, MS 39404-8109
T: (601) 261-4100
F: (601) 261-4106

**CERTIFICATE OF SERVICE**

    I do hereby certify that on October 4, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

**Glenda Wingard Hughes**
ghughes.atty@ATT.net
**Attorney for Ina Sue Crouch**

Paul J. Delcambre, Jr.
pdelcambre@balch.com
lhale@balch.com

**Joseph Seawell Moore**
jsmoore@balch.com
dharris@balch.com

**Charles Burton Paterson**
cpaterson@balch.com
bleveille@balch.com
**Attorney for AmSouth Bank**

**Edwin G. Waldrop, Jr**
gwaldrop@lfwlaw.com
denised@lfwlaw.com

**Mitchell D. Greggs**
mgreggs@lfwlaw.com
**Attorney for Lincoln National Life Insurance Co.**

                                                                     s/Samuel S. McHard