## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA

**JAMES E. CROUCH**                                                      **PLAINTIFF**

**VS.**                                          **CIVIL ACTION NO. 2:06-CV-00111-MEF**

**AMSOUTH BANK, INA SUE**                                    **DEFENDANTS**
**CROUCH, AMSOUTH INVESTMENT**
**SERVICES, INC., LINCOLN**
**NATIONAL LIFE INSURANCE**
**COMPANY, and**
**JOHN and JANE DOES 3-10**

### PLAINTIFF'S COMBINED RESPONSE TO DEFENDANTS'
### MOTIONS FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

COMES NOW, the Plaintiff, James E. Crouch ("James"), and files his Preliminary Response to all Defendants' Motions for Summary Judgment. In support thereof, Plaintiff states:

### HISTORY AND FACTUAL BACKGROUND

This action arose from a series of events regarding an Annuity and concerning Plaintiff James E. Crouch, his father, James Earl Crouch ("James Earl"), and his mother, Ina Sue Crouch ("Ina Sue") and the companies that sold and serviced the Annuity.

On May 7, 1998, James Earl and Ina Sue met with their personal banker, Ronda Robinson at AmSouth Bank and its wholly owned subsidiary, AmSouth Investment Services, Inc. (referred to collectively as "AmSouth"). ( Deposition of Ronda Robinson, Page 8). Ronda Robinson convinced James Earl to purchase a tax-deferred annuity through AmSouth from Lincoln National Life Insurance Company ("the Annuity") in the amount of $250,000.00. (Deposition of Ronda Robinson, Page 63. The depositions of Ina Sue, James and Ronda Robinson having been previously filed as Exhibits to Lincoln National Life Insurance Company's Motion for Summary Judgment are not refiled but are adopted by reference as specified herein). AmSouth purportedly had a National

Marketing Agreement with Lincoln National Life Insurance Company ("Lincoln") to sell said investments, but no agreement for the applicable period was produced by Defendants. Ronda Robinson was a designated agent for AmSouth and Lincoln (Exhibit 1). In the Application for the Annuity (Exhibit 2), James was specified by the Annuitant, James Earl, as the sole beneficiary pursuant to "annuitant beneficiary" designation option. The Application provides that a non-annuitant owner's death causes the benefits to go the joint owner and the owner beneficiary designations control only if was no joint owner. By contrast, an annuitant beneficiary could be designated only by the annuitant and would receive the proceeds of the Annuity upon death of the annuitant regardless of the existence of a joint owner because James Earl was the annuitant and his son James was the annuitant beneficiary designee. Therefore, Ina Sue would get nothing under the contract merely because she was a "joint owner." These facts are spelled out in the Annuity Application which is part of the contract and in the May 18, 1998, letter from Lincoln National to Ronda Robinson (Exhibit 3). Likewise, these facts of "annuitant driven" annuities is confirmed by the selling agent Ronda Robinson. ( Deposition of Ronda Robinson, Pages 45 and 47).

> ...about Exhibit 12? This the actual application for the annuity. This particular paperwork was fairly new. My license were obtained in '97. This was in May of '98. Annuities was not necessarily something that you sell a lot of every day. The paperwork being new – On a fixed rate annuity, they are annuitant-drive which is –
>
> Q.    What do you mean by that?
> A.    Well, it means that basically you have to name a beneficiary for the annuitant, even though you may have a joint owner. That's not the case with a bank product, with a CD product. Those are – Those are joint...
> A.    The bank ones would be ownership-driven.
> Q.    As opposed to these that are annuitant-driven, correct?
> (Ronda Robinson Deposition, Page 45).

2

> Q.     But somebody who's not the annuitant can't make a change in the
>         designation of the annuitant's beneficiary – can they?
> A.     No.
> (Ronda Robinson Deposition, Page 77).

Therefore, "but for" the purported change of beneficiary form dated April 4, 2000, and now allegedly signed by Ina Sue, on behalf of James Earl, James would have gotten all the proceeds. The purported change of beneficiary form is signed only as owner and joint owner and not as annuitant. See April 4, 2004, Change of Beneficiary Form (Exhibit 4).

As set forth in the affidavits of James and his wife, Teresa, (incorporated by reference) and as confirmed in the depositions of James (page 19) and Ina Sue (page 92), James Earl and Ina Sue called James in May/June 1998 and advised James that he was the sole beneficiary of the $250,000 Annuity and would receive all of the proceeds upon the death of James Earl. This was confirmed in early January, 2001, when James and his wife, Teresa, visited James Earl's home located at 360 Old 231 North, Wetumpka, Alabama. During the visit, James Earl stated that his health was failing and reminded James and Teresa that when James Earl died regardless of what Ina Sue did or said, James would get all the money from the Annuity at AmSouth. (See Affidavits of James and Teresa, previously filed and incorporated by reference herein).

Also, contrary to the impeached recall of Ronda Robinson and speculation of Ronda Robinson (Exhibit 5), James Earl did not change the annuitant designation beneficiary because of a purported subsequent gift of $100,000 to James.

> A.     And then, you know, I did say that it seems after that, they decided to
>         remove him from the contract as beneficiary.
> ***
> Q.     Well, it couldn't be a motivation to remove him as the primary
>         beneficiary that they made him a $100,00 gift if the gift was, in fact,
>         made before they made him the primary beneficiary?

3

(Ronda Robinson Deposition, Pages 130, 133).

Ronda Robinson incorrectly recalled the $100,000 gift was made in the period of time after the Annuity was purchased(May 1998) and before the purported change of beneficiary (April 2000). Instead, the $100,000 gift was made to James on August 28, 1997, eight months before the purchase of the Annuity as shown by Exhibit 6.

On April 4, 2000, a form was allegedly prepared by Ronda Robinson to change the sole beneficiary under the Annuity from James to Ina Sue. One of the key issues to this litigation is whether Ina Sue signed her husband's signature with his knowledge, consent, and authorization or whether that signature of James Earl is a forgery. The change of beneficiary form provides under Section A that change of beneficiaries could be made only in accordance with the provision of the contract. (Exhibit 4; see also Page 147 of Deposition of Ina Sue). It is undisputed that Ina Sue signed her husband's name as "owner" on the change of beneficiary form. See Page 152 of Deposition of Ina Sue.

In late January or early February, 2001, James Earl's health continued to deteriorate. Ina Sue made repeated efforts to have an attorney prepare a Power of Attorney and a new Will for James Earl and to have the doctor for James Earl declare him incompetent. On February 14, 2001, James Earl died. The day before the funeral for James Earl, James and his half siblings agreed to read James Earl's Will at the Wetumpka homestead the following morning before the funeral. When James and his wife arrived, David Shaddix, Ina Sue's son from a prior marriage, went out into the yard and began burning documents in the burn barrel behind the home. He and Ina Sue advised James and his wife that they could not find the Will of James Earl. Later, James was told that the beneficiary

4

of the Annuity had been changed without his father's consent.  (See Affidavit of James and Deposition of James, previously filed).

James began this litigation on September 25, 2002, when he filed a Complaint in the Chancery Court of Forrest County, Mississippi, demanding from AmSouth Bank a copy of any and all annuities purchased by James Earl through AmSouth, as well as any related documents.  For a full year, which included two sets of interrogatories and answers, AmSouth Bank refused to provide the documents necessary for James to establish the validity of the beneficiary status of the Annuity contract.  Even when confronted with a Motion to Compel, AmSouth Bank failed to produce the documents.  Finally, in November 2003, the counsel for AmSouth Bank acknowledged that AmSouth possessed the documents and agreed to produce them.  Months later, AmSouth's counsel stated that they could not produce them due to federal privacy laws.  AmSouth requested that Ina Sue, who was the new beneficiary, be made a party to the Complaint before AmSouth would release the documents.  Discovery was propounded to AmSouth on the Complaint for Discovery, and AmSouth again failed to produce the documents.

James amended the suit to include claims related to the enforcement of the settlement agreement, along with the original allegations related to the change of beneficiary.  James sought enforcement of the above-mentioned settlement agreement, sought specific performance in the form of payment of the annuity to him as beneficiary, and he made claims of negligence, breach of fiduciary duty, breach of contract, and tortious interference with contract.    On or about February 7, 2005, this case was removed to the United States Court for the Southern District of Mississippi. On April 27, 2005, at the first federal court status conference, counsel for AmSouth Bank stated that AmSouth Bank planned to move to change the venue of this action to Alabama.  The Court

instructed counsel for AmSouth Bank to produce the Annuity documents so that James' counsel could determine whether the signature on the change of beneficiary forms was valid.  If forgery or unauthorized signature was indicated, AmSouth Bank was directed by the Court to promptly file its motion to be taken up at the rescheduled conference on June 24, 2005.  On May 5, 2005, James' counsel received AmSouth Bank's  Pre-Discovery Disclosure.  Although the documents failed to contain the Annuity contract that has been repeatedly requested for more than two and one half years, the disclosure did contain the original application for Annuity and the purported "change of beneficiary" form. (Both the application and the form are also Exhibits 1 and 7, respectively, to the Affidavits of James and Teresa, which are incorporated by reference).   Those exhibits clearly demonstrate that the purported signature of James Earl on the form is identical to that of Ina Sue. Despite this, counsel for AmSouth, Paul Delcambre, represented that the signature of James Earl was valid and was witnessed by AmSouth's employee, Ronda Robinson.  (See Affidavit of Samuel McHard, Exhibit 8).  Furthermore, AmSouth's attorneys prepare and had Ronda Robinson execute a "Declaration" (Exhibit 9) under penalties of perjury.  Ronda Robinson's declaration represents that both Ina Sue and James Earl each respectively signed their names to the Change of Beneficiary form. See deposition of Ronda Robinson, Page 115.

As to the "declaration,"

A.     ... The best I recall, this was an attorney, I think, from - - I think it would have been maybe from AmSouth in Mississippi that had contacted me and asked me just to basically write down or give them the information as far as this particular transaction, what I remembered.

Q.     And that was Paul Delcambre, wasn't it, from Balch & Bingham in Mississippi?

***

Q.     And that was all you recalled at the time, correct?

6

A.     Well, this is the information I gave them at the time.

\*\*\*

Q.     But some attorney they typed it up, right?

A.     Yeah.  Yeah, the attorney or their office would have typed it up and asked me to basically sign the declaration.

(Ronda Robinson Deposition, Pages 109-111).

Q.     Page two, second full sentence.

A.     Okay.

Q.     Quote: "I later assisted the Crouches in completing certain documentation signed by them," plural, for the change of beneficiary, correct?

A.     That is what it says.

Q.     And you would agree "them" is two people signing, isn't it?

A.     Documentation signed by them for the change of beneficiary.

Q.     That's what it says, isn't it?

A.     That's what – That's what the sentence says, yes.  Signed by them for a change of beneficiary.

(Ronda Robinson Deposition, Page 115).

On February 6, 2006, this action was transferred to the Middle District of Alabama.  Despite the lack of discovery, Defendant AmSouth filed a Motion for Summary Judgment on or about March 9, 2006.  A subpoena duces tecum was served upon Lincoln (Exhibit 10), and Lincoln served a response which failed to contain the Annuity contract or any policies, rules or regulations provided by Lincoln to Annuitant in connection with the Annuity.  This information was later confirmed by phone call (Exhibit 11). Thereafter, on June 23, 2006, this Court granted James leave to file a Second Amended Complaint and to add AmSouth Investment Services, Inc. and Lincoln as additional named defendants.  On July 31, 2006, Lincoln filed an Answer. As a courtesy, James sent Lincoln a letter inquiring if Lincoln and its counsel would be available for depositions on August 17, 2006, in Montgomery. On or about September 18, 2006, Lincoln filed its Motion for Summary Judgment; on or about September 19, 2006, AmSouth filed their Motion for Summary Judgment; and on or about September 22, 2006, Ina Sue Crouch filed her Motion for Summary Judgment.

Plaintiff incorporates by reference the Plaintiff's Motion to Continue Defendants' Motions for Summary Judgment filed herein on October 3, 2006 and Plaintiff's Preliminary Responses filed March 24, 2006 & October 4, 2006.

<u>STANDARD OF REVIEW</u>

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties are entitled to summary judgment." Fed. R. Civ. Pro. 56(c); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 1260 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving parties bear the burden of establishing that there is not genuine issue of material fact and that they are entitled to judgment as a matter of law. *Williamson Oil Co., Inc. v. Philip Morries USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no issues of material fact. *Hickson*, 357 F.3d at 1260 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record

and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Acevado v. First Nat'l Bank*, 357 F.3d 1244, 1247 (11th Cir. 2004).

However, when the moving party also bears the burden of proof at trial, the moving party must establish as a matter of law that it is entitled to judgment as a matter of law. *See Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550-51 (11th Cir. 1990). First, in the case at issue, Defendants' motions for summary judgment are based on an unpled and now time-barred affirmative matter which was not pled as an affirmative defense under Rule 8.[1] Despite evidence that James Earl, as the sole annuitant, did not sign the purported change of beneficiary form to change the sole annuitant designation beneficiary from James to Ina Sue, despite his representations to James and despite the representations of AmSouth's counsel, the gravamen of the unpled affirmative defense is that James Earl's forged signature is valid because his wife signed it pursuant to his request. This unpled affirmative defense is barred by laches and by the scheduling order.

Second, prior inconsistent statements regarding a material issue may be considered by the court to raise doubts about deposition testimony submitted in support of a motion for summary judgment. *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1312 (8th Cir. 1993). Hence, if the moving party has the burden of proof and claims to have the only evidence regarding the material issue, impeachment evidence is sufficient to defeat a motion for summary judgment. *Id.* (citing *Playboy Enters. v. Public Serv. Comm'n of Puerto Rico*, 906 F.2d 25, 40 (1st Cir. 1990)). Wright and Miller succinctly explain the situation which this Court faces:

---

[1]     The Answer to the Second Amended Complaint of AmSouth, filed July 10, 2006, Ina Sue, who is in default for failing to Answer, and Lincoln National filed July 31, 2006. The time to amend pleadings expired on June 21, 2006 per the Court's Scheduling Order.

> Clearly, if the credibility of the movant's witness is challenged by the opposing party and specific bases for possible impeachment are show, summary judgment should be denied and the case allowed to proceed to trial, inasmuch as this situation present the type of dispute over a genuine issue of material fact that should be left to the trier of fact. Thus, for example, if conflicting testimony appears in affidavits and depositions that are filed, summary judgment may be inappropriate as the issues involved will depend on the credibility of the witnesses. 10A Wright Miller & Kane, Federal Practice and Procedure § 2726 (1990 ed.)

Wright and Miller also address the problems the structure of summary judgment procedure create when all evidence regarding the material issue is within the exclusive control of the moving party:

> A similar problem involving credibility arises when the knowledge of the events or occurrences on which the action is based lies exclusively within the control of the party moving for summary judgment. This situation occurs most common in actions in which the main issue involves the movant's state of mind, such as in fraud or defamation cases. Courts have been reluctant to deprive the nonmoving party of the opportunity of testing the credibility of the movant or the movant's witnesses in open court in this context. As explained by one commentator, "there is justifiable judicial fear of the injustice which could result from the judgment based on affidavits asserting facts that are, because of their nature, incapable of being effectively controverted." *Id.*

The above quoted passages explain very clearly the manner in which the Defendants are attempting to utilize Rule 56. The above quoted passages demonstrate that this Court should be highly skeptical of granting summary judgment when all evidence is within the possession of the moving party.

## GROUNDS TO DENY AMSOUTH'S MOTION

Defendants' Motions are premature in that the parties have participated in limited discovery. *See Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988); *Alabama Farm Bureau Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979) ("Summary Judgment [sic] ***should not, therefore, ordinarily be granted before discovery has been completed***.") (emphasis added).

Material fact issues remain for the finder of fact to decide — namely facts regarding execution of the change of beneficiary form, the mental and physical health of James Earl Crouch,

the proper procedure for changes of beneficiaries, and the existence and content of the Annuity contract, together with the interpretation of the manner of change of an "annuitant designated beneficiary" such as James Earl Crouch under the application for annuity as opposed to change of an owner designated beneficiary as attempted by Ronda Robinson and Ina Sue Crouch all create genuine issues of material fact, precluding summary judgment.

Defendants' premature Motions are also fatally flawed. Defendants' rely upon the previously filed affidavits of Ina Sue and Ronda Robinson (both of which were created by counsel for AmSouth) , and the deposition testimony of Ina Sue and Ronda Robinson. (See Deposition of Ina Sue, Pages 22-23; see Deposition of Ronda Robinson, Page 109-111; and see AmSouth's initial Motion for Summary Judgment). In that affidavit and testimony, Ina Sue states that she signed her husband's name with his permission. In addition to being a barred affirmative defense, this directly contradicts Ina Sue's earlier sworn testimony. When a party supports a motion for summary judgment with an affidavit that contradicts earlier sworn testimony, that affidavit must be disregarded. *Simler v. Conner*, 372 U.S. 221, 222-23 (1963); *Road Sprinkler Fitters Local Union v. Simplex Grinnell LP*, 251 F.Supp. 2d 1201, 1204-05 (W.D.N.Y. 2003); *Cheatwood v. Roanoke Indus.*, 891 F.Supp. 1528, 1533 n.1 (N.D. Ala. 1995); *cf. Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 223) (nonmovant cannot manufacture an issue of material fact by submitting an affidavit contradicting earlier testimony).

Ina Sue gave a deposition in *In re James Earl Crouch*, Case No. 01-272, in the Probate Court of Elmore County, Alabama on January 22, 2002. The relevant portion of that deposition (the transcript of which was previously provided as Exhibit 6 to the Affidavit of James and which reads:

Q:    Have you ever signed Mr. Crouch's name to anything?

11

A:     Unh-unh.

Q:     Never?

A:     Unh-unh. Unh-unh. ***Never. Mr. Crouch was always able to sign his own name whenever we done business.  No, I've never signed his name to nothing.*** [sic]

(Pages 74-75 (emphasis added)). Ina Sue also admits that James Earl did not authorize any transactions past the date on which he and Ina Sue applied for the Annuity:

A.     There was never no money changes or nothing unless he was there and aware of it.  We had no money changes.  No bank changes was made since May the 8th, 1998.  And I think very he was very, very aware then.

Q.     And when you say bank changes, you mean –

A.     Changed something.

Q.     – y'all didn't transact any business?

A.     No.  Transact no business whatsoever after May the 8th, 1998.

Q.     Okay. And it's your testimony from May the 8th, 1998, until he died, your husband transacted no business?

A.     Well, we just had CDs; and when they come due, we just let them review theirselves [sic].

Q.     So it's an automatic renewal.

A.     We didn't take them out.  Just automatic renewal.

(Pages 44-45). Further, Ina Sue also testified that she and James Earl never changed the beneficiary of the annuity:

Q.     Tell me about the annuity that your husband had.

A.     I told you that a while ago.

Q.     Okay. Tell me again.  I'm slow.

12

A.     Well, we just had an annuity with Lincoln Life Insurance Company.

Q.     And how many times has the beneficiary been changed on that?

A.     Never.

Q.     Never.  So from the time it was first purchased until the time of your husband's death, the beneficiary was you?

A.     Yes.  Right.

(Page 93). Clearly, Ina Sue earlier stated that she had never signed James Earl's name and that he was always able to sign his name. This statement stands in direct contradiction to the affidavit of Ina Sue prepared and submitted by AmSouth in support of its earlier Motion for Summary Judgment, and her later testimony in her deposition and the deposition exhibits. Further, Ina Sue stated that she was always the beneficiary on the annuity, an assertion that is clearly contradicted by the facts.

The Eleventh Circuit has considered the issue of affidavits that conflict with earlier testimony and decided that summary judgment is generally inappropriate when the motion is supported by such contradictory affidavits. When the affidavit raises a flat, unexplained contradiction to the earlier deposition, the affidavit is to be ignored.  *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). However, if the discrepancy may be "inherently inconsistent" with the deposition testimony, the inconsistency raises issues of credibility, which is the sole province of a jury. *Id.* at 953-54. In the instant case, either Ina Sue's affidavit is inherently inconsistent with her deposition testimony, in which case the affidavit should be ignored by the Court, or it raises issues of credibility for a jury to decide. In either situation, the Court should deny Defendants' Motions for Summary Judgment.[2]

---

[2]     The Affidavit of Ina Sue was prepared for her by AmSouth's attorneys.  (See Deposition of Ina Sue, Pages 22-23).

13

Additionally and alternatively, the conflicting deposition testimony which is outlined above is sufficient to impeach the Defendants. As described above in the standard of review section, impeachment evidence is all that is required to defeat a motion for summary judgment when the movant has the burden of proof. *Firemen's Fund*, 8 F.3d at 1312; Wright & Miller, § 2726. The Plaintiff has strong evidence that the signature is a forgery; Ina Sue Crouch admits that she signed Mr. Crouch's name on the change of beneficiary form. Hence, there is a material issue regarding Ina Sue's intent while signing the change of beneficiary form. Was she signing the form at Mr. Crouch's request, or was she forging her signature so that she would benefit from the annuity upon his death? As explained by Wright & Miller, there should "justifiable judicial fear of the injustice" when a judgment is based on intent, which is incontrovertible by nature. Wright & Miller, § 2726. Therefore, based on the impeachment evidence submitted in Plaintiff's response to summary judgment and the fact that evidence of Ina Sue's intent lies solely in her possession, the Court should deny summary judgment in order to allow the fact finder to be ultimate judge of credibility.

Likewise, the affidavit of Ronda Robinson contradicts her earlier declaration filed in the United States District Court for the Southern District of Mississippi in support of another motion to transfer. In that affidavit, she states that she witnessed both James Earl and Ina Sue sign the purported change of beneficiaries form. (See Declaration attached hereto as Exhibit 9). Ronda Robinson's affidavit provides the Plaintiff with admissible impeachment evidence. See Fed. R. Evid. 613. When the evidence is viewed in the light most favorable to the nonmoving party, the plaintiff, the original change of beneficiary form in which the Ina Sue Crouch admittedly signed Mr. Crouch's signature is plenty of evidence for the jury to find that Mr. Crouch's signature was a

forgery. This evidence is buttressed by prior inconsistent statements by the Defendants' key witnesses, Ina Sue Crouch and Ronda Robinson.

Additionally, Rule 56(e) requires that affidavits supporting a motion for summary judgment "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence . . . ." Fed. R. Civ. P. 56(e). The affidavits of Ina Sue and Ronda Robinson submitted to support AmSouth's initial Motion rely on inadmissable evidence. For example, Exhibit 1 attached to AmSouth's Motion is an affidavit by Ina Sue. This affidavit is replete with hearsay statements which are inadmissible pursuant to F.R.E. 801 and are not excepted by F.R.E. 804. In the affidavit, Ina Sue makes the following inadmissible hearsay statements:

- "In 1998, my husband and I had some discussions about our financial security and we decided to look into the possibility of purchasing an annuity." (¶ 2)

- "Ronda T. Robinson informed us that she was a licensed representative of AmSouth Investment Services, Inc. and we could purchase an annuity through her." (¶ 2)

- "We intended to purchase an annuity which we would own jointly with the survivor of us getting the benefit of the annuity." (¶ 2)

- "Ronda T. Robinson informed us that she had made a mistake on the application form and that some additional paperwork had to be completed."(¶ 3)

- "Ronda T. Robinson explained to us that at the time annuity contract #774944 was issued, our son, James Edward Crouch was incorrectly named as the primary beneficiary of the annuity . . . ." (¶ 3)

- "[W]e told Ronda T. Robinson that we could come by the bank to complete the necessary forms . . . ." (¶ 3)

- "Ronda T. Robinson explained that we would need to fill out an annuity service request so that the primary beneficiary on the annuity contract #774944 could be changed from our son, James Edward Crouch to me and have our son listed as contingent beneficiary." (¶ 4)

- "[James Earl] asked me to sign his name as well as my own name on the form." (¶ 4).

These statements go to James Earl's purported intentions, and are clearly inadmissible as hearsay. Likewise, ¶¶ 5, 6, and 7 of the affidavit of Robin Robinson contain similarly inadmissable hearsay statements. A motion for summary judgment should not be granted upon evidence that would not be admissible at the trial of the matter. *Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (further citations omitted); *Sires v. Luke*, 544 F.Supp. 1155, 1160 (S.D. Ga. 1982); *Smith v. Crosrol, Inc.*, 498 F.Supp. 697, 700 (M.D. Ala. 1980).

## THE JAMES CROUCH SIGNATURE ON THE APRIL 2000 CHANGE OF BENEFICIARY IS NOT VALID AS A MATTER OF LAW

First, the Defendants rely on common law to support their proposition that it was permissible for Ina Sue Crouch to sign Mr. Crouch's name for him.  First, this is an improper argument based upon an unfiled and time-barred affirmative defense.  Second, an annuity is a private contract which contains private law binding to the parties to the contract.  *See Gibson v. Henderson*, 459 So. 2d 845, 847 (Ala. 1984) ("Generally the designation of the beneficiary of a life insurance policy is governed by the provisions of the policy itself.").  Despite a number of years of litigation and a multitude of requests, the Defendants have yet to produce the annuity contract.  Therefore, there is no way for the Court or the Plaintiff to determine whether there was private law regarding signatures.  Further, it

16

appears that Alabama requires, at minimum, substantial compliance with contract requirements regarding change of beneficiary. *Gibson*, 459 So. 2d at 848-849. *Gibson* could read as requiring strict compliance; however, the Court defined substantial compliance as the insured doing "all he could reasonably have done to effect the change." *Id.* Ina Sue and Ronda Robinson both admitted in their respective depositions that James Earl was physically and mentally capable of signing his name and was always concerned about handling his banking business. If eyeglasses were a problem, James Earl's home was only five minutes away, and the glasses could easily have been "fetched" and should have been for such an important document, which was not even read to him. In her deposition, Ina Sue stated:

> My husband liked seeing the things. He'd want – When we'd go to the bank, he wanted to check things and see, keep up with everything on track. (Ina Sue Crouch Deposition, pg. 141).
>
> A.      He bothered them about looking at everything. ... He wanted to see. He wanted to see if it was secured right.
> Q.      And it was important to him that he be able to see those documents to see that they contained what he intended?
> A.      It was important. They can tell you. He'd be right there at the last minute to see.
> (Ina Sue Crouch Deposition, Page 142).
>
> A.      I said, I'll have to go back to the house and get your glasses. And she said, no, you won't, Ms. Crouch.
> Q.      How far away is your home from the bank?
> A.      Oh, about five minutes.
> Q.      So a man that wanted to see all these important bank documents and would go to the bank to see documents that he was interested with, you wouldn't wait ten minutes so that he could see a change with regard to a document involving $290,000?
> (Ina Sue Crouch Deposition, Page 153).

He was not suffering from physical or mental incapacity that would prevent him from signing documents....He just couldn't see good.  Even on April 4, 2000, James Earl was capable of making his mark or signing his name on a document, but could not sign his name without his glasses because he could not see the line.(Ina Sue Crouch Deposition, Page 75).

But Ronda Robinson contradicted her stating:

> Q.    Well, do you remember Mrs. Crouch saying, gee, I'll just run home and get your glasses.  It's only five minutes or so.  Get your glasses, bring them back so you can read it over and sign it, correct?
> A.    I don't recall that.
> (Ronda Robinson Deposition, Page 120).
>
> Q.    And you would agree that you were the person who told Mrs. Crouch not to go home, but in fact, to sign her husband's name?
> A.    No.
> (Ronda Robinson Deposition, Pages 122-23).
>
> A.    On what day, now?
> Q.    April 4th of 2000.
> A.    I'm not familiar with any particular health problems if that's what you're asking me.
> Q.    He was not under a mental incapacity or physical incapacity?
> A.    Not to my knowledge, he wasn't.
> A.    And he was not incapable of making his mark or signing his name on this or any other form, correct?
> (Ronda Robinson Deposition, Page 124).

Based upon these facts and the absence of the Annuity Contract and Rules, there is no way for the Court to determine whether James Crouch substantially, or strictly, complied with the annuity requirements regarding change of beneficiary.  This void of evidence is due solely to the Defendants failure to provide the annuity contract in discovery.  Due to this void created by Defendants, the Court cannot determine as a matter of law private contract that James Crouch and/or Ina Crouch actually changed the annuitant beneficiary.

Defendants cite a multitude of cases for the proposition that one may sign the name of another in a manner which is binding as long as the principal party to be bound and the signature is made at his/her request. Assuming for the sake of argument that Defendants correctly state the law, there are at least four factual issues which remain in dispute in this case. Did Ina Sue sign Mr. Crouch's signature at his direction? Was Mr. Crouch present when Ina Sue signed his name to the change of beneficiary form? If Mr. Crouch was present when Ina Sue signed his name, was he of sound mind and body? What was James Earl's ability to read without his glasses?

In the cases cited by Defendants, the Court often relied upon a jury to determine whether the factual requirements of substituted signature were met. *See Hollimon v. McGregor*, 143 So. 902, 904 (Ala. 1932); *Lewis v. Watson*, 13 So. 570, 571 (Ala. 1893) ("It is not entirely clear, on this testimony, that Thompson was actually and immediately present when his name was subscribed to the deed by Fletcher, by his direction; but, **manifestly, there was room for an inference to be drawn to that effect by the jury**."). As noted by *Hollimon* and *Lewis*, it for the jury to determine whether the requirements for validity of a substituted signature have been met. In the case at bar, we have two very impeachable witnesses who have given diametrically opposed explanations as to who signed the change of beneficiary form and the manner in which it was signed. It is the province of the jury to determine whether Ina Sue's signing of James Crouch's name was at his direction and in his presence.

In addition, Ina Sue Crouch admitted the following in her deposition:

| Pg. | Line | |
|-----|------|---|
| 22-23 | 16-06 | Balch & Bingham prepared an affidavit which I read and signed and the only change I made was, immediately above my signature changing the date |

19

| | | |
|---|---|---|
| | | from February to March (as to the date I signed it). I am able to read and understand this document. |
| 34 | 06-08 | "owner beneficiary information", the owner beneficiary is blank. |
| 34 | 15-19 | there is a note that specifically states that owner beneficiary designations are applicable only when there is no joint owner |
| 35 | 02-08 | therefore an owner beneficiary designation doesn't come into play |
| 35-36 | 19-05 | there is a specific annuitant beneficiary designation as opposed to an owner beneficiary designation. |
| 37 | 04-08 | There is only an annuitant beneficiary designation in connection with this paper. |
| 37 | 18-22 | annuitant beneficiary, a primary beneficiary names as James Edward Crouch. |
| 39 | 05-07 | there is no contingent beneficiary listed in the contract. |
| 39 | 11-17 | If there was an owner who was not the annuitant, then and only then would the surrender value proceeds be paid to the surviving owner as beneficiary. |
| 53-54 | 16-03 | on the 7th ...Ronda Robinson informed us that she'd made the mistake. |
| 54 | 08-11 | She did call me and said we needed to come back to the bank. |
| 74 | 11-18 | annuity application and the documents that were prepared and submitted in connection with the purchase of the Lincoln National Life Insurance annuity and signed by Earl, he was able to read and write and understand them. |

| | | |
|---|---|---|
| 75 | 08-11 | He was not suffering from physical or mental incapacity that would prevent him from signing documents. |
| 75 | 16-23 | He just couldn't see good.  Even on April 4, 2000, James Earl was capable of making his mark or signing his name on a document, but could not sign his name without his glasses because he could not see the line. |
| 78 | 02-07 | I have specifically stated under oath that there were no bank changes to any documents at the bank, no money changes since May 8, 1998 when the annuity was purchased. |
| 79 | 02-07 | You previously said under oath that you have never signed your husband's name to anything because he was always able to sign his own name. |
| 81 | 03-06 | Did you say that Mr. Crouch was always able to sign his own name whenever we done business.  No, I never signed his name to nothing.  Didn't you say that? |
| 92 | 02-09 | You also specifically testified that you had a conversation with your son, James Edward, about the annuity letting him know that he was the beneficiary. We went over to his home and told him we had took it. |
| 96 | 14-18 | You specifically testified under oath that you fully understood the actions taken with respect to the purchase |
| 103-104 | 08-01 | I understand the distinction as shown in the contract data sheet between an annuitant beneficiary and an owner's beneficiary as noted in the contract data sheet. |
| 112-113 | 16-01 | on May 7, 1998... |
| 113 | 08-10 | He was able to read and sign and make his mark on it. He had his glasses on.  He wrote it. |

| 141 | 09-14 | Ronda Robinson told me immediately after the contract was issued that there was a mistake, two years went by before anything was done regarding it. |
| 147 | 02-08 | I do not understand that it specifically says that in order for a beneficiary change to occur, under Section A at the top of the document, the document had to be changed in accordance with the provisions of the contract. |
| 155-156 | 21-07 | I signed James Earl Crouch's name on the owner's line of Exhibit 22, the annuity service request of April 4, 2000. |
| 152 | 12-13 | I signed his name after owner. |
| 190-191 | 20-06 | I refuse to sign an authorization for the bank to give you those documents. |

In addition, Ronda Robinson admitted in her deposition that she made mistakes in servicing the account and failed to follow the rules and procedures of AmSouth and Lincoln National. *See* Exhibits D and E to Plaintiff's Preliminary Combined Response to Defendants' Motions for Summary Judgment and Memorandum of Law.

The Court should note that Ina Sue admits in her affidavit that she and her late husband were "tardy" in purportedly changing the beneficiary on April 4, 2000, after receiving notice of their alleged error in designation in June 1998. This purported change in beneficiary was made almost two years after applying for the annuity. Surely, if this was indeed a mistake, the Crouches would have corrected this mistake as soon as possible. The fact that the change in beneficiary was done almost two years later casts enough doubt upon the Defendants' version of the facts to make summary judgment inappropriate. It is additionally suspicious that the Crouch's would wait two

years two years to change the beneficiary, and then couldn't wait ten minutes for Mr. Crouch to run home and get his glasses.

## LINCOLN NATIONAL IS NOT IMMUNE AS A MATTER OF LAW

Lincoln National cites Ala. Code § 24-14-24 and *Fortis Benefits Ins. Co. v. Pinkley*, 926 So. 2d 981 (Ala. 2005) in support of its proposition that Lincoln became immune as a matter of law once it paid the benefits of the annuity to Ina Sue.  James concedes that § 24-14-24 and *Fortis* hold that Lincoln National may be immune for improper payment of proceeds once benefits have been paid and no written notice has been received that another is entitled to the benefits.  However, failure to pay a claim and breach of contract are not the only avenues of relief available to the James.  James clearly alleges in his Amended Complaint that Lincoln National was negligent in "fail[ing] to provide policies, procedures, rules, and regulations for the sales and administration of the Annuity Contract . . . ."  Further, that Lincoln National was negligent  in failing supervise the work of its inexperienced and untrained agent, Ronda Robinson.  Finally, James claims that Lincoln was negligent in failing to provide rules, regulations, policies, procedures, education and training to Amsouth and AISI regarding the sale and administration of annuity contracts.  Thus, it clear that the Plaintiff has alleged that Lincoln directly and vicariously liable for its actions and other defendants' actions in manners which do not fall within the bounds of Ala. Code § 24-14-24 and/or *Fortis*.[3]

---

[3]      Defendants AmSouth and Lincoln National did raise as an affirmative defense the issue of fictitious parties; however, that defense is contrary to the applicable law, namely Mississippi law.  According to both the 11th and the 5th Circuits, if the claim at issue is a state law claim, then the state's procedure on fictitious party practice, statute of limitations, and relation back of amendments applies.  *See Harris v. Beaulieu Group, LLC*, 394 F. Supp. 2d 1348, 1356-57 (M.D. Ala. 2005); *Essary v. Wal-mart Stores, Inc.*, 200 WL 33907699, *2-3 (N.D. Miss.).  *See also Saxton v. ACF Indus., Inc.*, 254 F.3d

Although Ronda Robinson admitted that the Change of Beneficiary form required that changes in beneficiaries be made in accordance with the contract and the rules of Lincoln, neither the Annuity contract or rules were provided:

> AmSouth had set guidelines as far as the training that we had to do before we would be able to sell any – any product, and that training was from AmSouth Investment Services. They would actually call in Lincoln National to do that training, and we would have attended that." (Ronda Robinson Deposition, Page 28).

> Q.    Walk me through the training that Lincoln came and did after November of 1997 to train you to sell the Lincoln annuities.
> A.    I wouldn't be able to do that. I can tell you that after we obtained our license, there was training classes scheduled ... and then classes that would actually show us paperwork and how to complete the paperwork and how to get the proper disclosures.
> (Ronda Robinson Deposition, Page 30).

> Q.    [W]hat rules, regulations and procedures of Lincoln National Life did you receive, review and attempt to follow?
> A.    Well, that would be information presented to us in our training.
> (Ronda Robinson Deposition, Page 49).

> Q.    [T]he parties involved that have rights in and to the contract are specifically listed in the Lincoln training materials as the owner, annuitant, and beneficiary, correct? ...
> A.    That's correct.
> (Ronda Robinson Deposition, Page 57).

---

959, 962-63 (11th Cir. 2001) (overruling prior 11th Circuit precedent and holding that state law relation-back rules apply to amendments in diversity cases). Therefore, the law of Mississippi on this removed case will apply regarding the statute of limitations and fictitious parties in this case.

Mississippi law allows fictitious party practice. *See* Miss. R. Civ. Pro 9(h). "Rule 9(h) pleadings are not considered amendments changing a party against whom a claim has been asserted and allowed under Rule 15(c) to relate back to the date of the original pleading." *Wilner v. White, M.D.*, 929 So.2d 315, 322-23 (Miss. 2006).

> Q.    And you had a copy of the rules and regulations and policies of Lincoln National with regard to how to fill out these forms and the explanation of how to do it and what it meant, correct?
>
> A.    That's correct.

(Ronda Robinson Deposition, Page 58).

Procedures would have been issued by Lincoln National as to how to complete the form.  (Ronda Robinson Deposition, Page 150).

AmSouth provided Balch & Bingham as attorney for Ronda Robinson for her deposition

(Ronda Robinson Deposition, Page 9), and she met with them to sign her declaration and to execute

her affidavit both of which contained blatent "coaching" errors.

_____    _____

Ma'am, taking your comments during the break to heart, you signed an affidavit for Balch & Bingham also in connection with this case, didn't you?  (Ronda Robinson Deposition, Page 150).

> Q.    [T]his affidavit, Exhibit 19,. You said that you e-mailed it back and forth.
>
> A.    If I recall correctly, I think it was e-mailed to me.
>
> Q.    With exhibits that had been scanned in?
>
> A.    No, I –
>
> ***
>
> Q.    So you didn't see the exhibits until – that were attached to your affidavit until last –
>
> A.    It was last week.

(Ronda Robinson Deposition, Pages 162, 164-65).

> Q.    And how many times have you talked with, met with, or provided documents to AmSouth Bank and their attorney in connection with the Crouch matter since you left AmSouth?
>
> A.    I don't know.
>
> Q.    More than half a dozen?  A dozen, in that range?
>
> A.    I don't know.  I mean –
>
> Q.    Well, how many hours have you spent with them?
>
> A.    I wouldn't say I've spent hours.  I mean, I honestly don't know because I did not – I did not write down every time I got a phone call or every time I spoke with someone.  I didn't keep up with that.
>
> Q.    Now, have they agreed to pay you for the time that you spend assisting them in connection with this lawsuit against them?

25

A.    No.

Q.    Well, showing you Exhibit Number 20, this declaration which carries with it the penalties of perjury being made to federal court, is that you signature on that document?

A.    It is.

(Ronda Robinson Deposition, Pages 108-109).


                          INA SUE'S MOTION

Ina Sue's Motion should be denied not only for the reasons set forth above, but also for the reason that Ina Sue is in default for failing to answer the Second Amended Complaint filed by James on June 23, 2006.

                      SUMMARY OF THE ARGUMENT

It is positively undisputed that Ina Sue Crouch used her hand to James Crouch's name to the change of annuity form. The "undisputed" nature of this civil action stops there. Unfortunately, the only person who could unequivocally resolve this dispute passed away. The Plaintiff has presented this Court with a signature which it claims is a forgery. The Defendants rely on a rarely used practice in which one person signs the name of another as their defense to the forgery claim. The Defendants refuse to provide this Court with the annuity contract to determine if there are any private law requirements within the contract regarding change of beneficiary. Regarding their common law defense that Ina Sue Crouch could validly sign Mr. Crouch's name, there are at least three requirements: (1) Mr. Crouch must have directed Ina Sue to sign his name; (2) Mr. Crouch must have been present; and (3) Mr. Crouch must have been of sound mind. First of all, the Defendants have refused to provide Mr. Crouch's medical records to determine whether he was of sound mind during April, 2000. Next, the Defendants' defense is structured in such a way that they possess the

                                   26

only evidence (outside of the document) which can disprove requirement one and two.  Despite having a monopoly on the evidence, Ina Sue Crouch and Ronda Robinson have provided wildy varying accounts of what truly happened.

If this Court grants summary judgment to the Defendants, precedent will condone fraud without legal remedy.  This is a case which calls for the reincarnation of the Dead Man's Statute.  Mr. Crouch is deceased and Ina Sue Crouch and Ronda Robinson are parties which stand to benefit by testifying against the deceased.  The comment to Alabama Rule of Evidence 601, which revoked the Dead Man's Statute, states that "the unavailability of the deceased person will merely be a factor for the jury to consider in determining the weight to give the survivor's testimony."  Jury is the key word.  It would be an injustice to hold legally binding the testimony of two clearly biased parties when the only other witness has been silenced by death.

Thus, the Court has before it a motion for summary judgment which puts a clearly forged document against Defendants who have concocted a defense which grants them a monopoly on the evidence.  To invoke Wright and Miller once again: "[T]here is justifiable judicial fear of the injustice which could result from the judgment based on affidavits asserting facts that are, because of their nature, incapable of being effectively controverted."   Because genuine issues of material fact remain, this Court should deny Defendants' Motions for Summary Judgment.

WHEREFORE, PREMISES CONSIDERED, Plaintiff James E. Crouch respectfully requests this Court deny Defendants' Motions for Summary Judgment and enter an order to the same.

Respectfully submitted,
JAMES R. CROUCH


By:     s/ Samuel S. McHard

27

Samuel S. McHard, MS Bar No. 100295
*pro hac vice*

BRYAN NELSON P.A.
Attorneys at Law
6524 U.S. Highway 98
P.O. Drawer 18109
Hattiesburg, MS 39404-8109
T: (601) 261-4100
F: (601) 261-4106

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on October 23, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

**Glenda Wingard Hughes**
ghughes.atty@ATT.net
**Attorney for Ina Sue Crouch**

Paul J. Delcambre, Jr.
pdelcambre@balch.com
lhale@balch.com

**Joseph Seawell Moore**
jsmoore@balch.com
dharris@balch.com

**Charles Burton Paterson**
cpaterson@balch.com
bleveille@balch.com
**Attorney for AmSouth Bank**

**Edwin G. Waldrop, Jr**
gwaldrop@lfwlaw.com
denised@lfwlaw.com

**Mitchell D. Greggs**
mgreggs@lfwlaw.com
**Attorney for Lincoln National Life Insurance Co.**

28

s/Samuel S. McHard