IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES E. CROUCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:06-cv-111-MEF |
| ) | (WO) |
| AM SOUTH BANK, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

In this diversity action, Plaintiff James Edward Crouch ("Crouch") alleges that he is the rightful beneficiary to the proceeds of an annuity contract purchased by his late father, James Earl Crouch ("James Earl"). Specifically, Crouch argues that the change in beneficiary form executed by his father was procured by fraud. Pursuant to a variety of state law causes of action, Crouch seeks redress against the following defendants: Lincoln National Life Insurance Company ("Lincoln National"), the issuer of the annuity; AmSouth Bank ("AmSouth") and AmSouth Investment Services, Inc. ("AIS"), the banking institutions from which the annuity was purchased; and Ina Sue Crouch ("Ina Sue"), Crouch's mother and the ultimate beneficiary of the annuity proceeds. This cause is before the Court on the Motions for Summary Judgment filed by Lincoln National (Doc. # 61), AmSouth and AIS (Doc. # 64), and Ina Sue (Doc. # 69). For the reasons discussed below, Lincoln National's motion is due to be GRANTED, AmSouth

and AIS's motion is due to DENIED, and Ina Sue's motion is due to DENIED.

## II.  JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence

showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV. FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

On May 7, 1998, Ina Sue and James Earl went to their local AmSouth bank in

Wetumpka, Alabama. Ina Sue and James Earl, who together maintained several accounts at this bank branch, expressed an interest in applying for an annuity. With the help of Ronda T. Robinson ("Robinson"), an AmSouth banker, the couple applied for an "Investor's Choice" annuity from Lincoln National and made an initial premium deposit of $250,000.00. The application listed James Earl as the annuitant, Ina Sue as the joint owner, and Crouch, their son, as the primary beneficiary.

When Robinson received the annuity documents back from Lincoln National, she realized that she had made a mistake. The annuity as issued by Lincoln National made the following designations: James Earl was the annuitant; James Earl and Ina Sue were co-owners; and Crouch was the primary beneficiary. Therefore, upon James Earl's death, all the proceeds of the annuity would go directly to Crouch, the primary beneficiary, even though Ina Sue was a co-owner. Robinson realized that this was an error because James Earl and Ina Sue had intended that the survivor of the two receive the benefits, similarly to how the couple had set up their certificate deposits at the bank. Robinson called James Earl and Ina Sue and informed them of her mistake and advised them that a separate document would be required to fix the error.

On April 4, 2000, nearly two years after they initially applied for the annuity, James Earl and Ina Sue returned to the AmSouth to complete the required paperwork.[1] Robinson filled out the top portion of the Annuity Service Request form which indicated a beneficiary change.

---

[1] The record is unclear as to who initiated this particular meeting or why James Earl and Ina Sue waited so long to fix Robinson's error.

4

On this form, Ina Sue was now designated as the primary beneficiary and Crouch as the contingent beneficiary. Given that Ina Sue was a co-owner of the annuity, Robinson instructed Ina Sue and James Earl that both of them, as joint owners, would need to sign the form. According to both Robinson and Ina Sue, James Earl did not have his reading glasses on hand and instructed Ina Sue to sign his name for him. While Ina Sue has given inconsistent testimony regarding whether she ever signed a document for her husband, what is clear is that Robinson signed her name as the witness to both signatures.

Robinson then sent the annuity service request back to Lincoln National. In a letter dated May 16, 2000 and sent to James Earl and Ina Sue, Lincoln National confirmed the beneficiary change. James Earl never "questioned, called, inquired or otherwise contacted Lincoln National concerning the change in beneficiary that had been processed." Doc. # 63-6 at 3 (affidavit of Sharon Bowman, a manager of client services at Lincoln National).

On February 14, 2001, at the age of seventy-two, James Earl died of respiratory failure. On February 20, 2001, Robinson called Lincoln National to notify the company that James Earl had passed away. On March 5, Robinson filed the appropriate forms with Lincoln National requesting a cancellation of the annuity contract and a single sum distribution to Ina Sue. On March 22, 2001, Lincoln National issued a check payable to the primary beneficiary, Ina Sue, in the amount of $290,487.96. As of the date of payment of the annuity contract proceeds, there was no indication in Lincoln National's files of any claim to the proceeds other than the stated beneficiary or of any objection or inquiry into the change of beneficiary from Crouch to

Ina Sue.

On July 9, 2001, Crouch called Lincoln National and was informed by the company that the death claim had been fully paid. In an undated letter received by Lincoln National on September 4, 2001, Crouch gave written notice that he questioned the change of beneficiary. In the letter, Crouch suggests that the change in beneficiary was made without his father's knowledge.

On September 25, 2002, Crouch filed a Complaint for Discovery in the Chancery Court of Forrest County, Mississippi. *See* Doc. # 1. On February 7, 2005, AmSouth removed the case to the United States District Court for the Southern District of Mississippi. *See* Doc. # 1. On January 31, 2006, Senior United States District Judge L.T. Senter, Jr. granted AmSouth's motion to transfer the case to this Court. *See* Doc. # 25. On March 28, 2006, this Court denied as premature AmSouth and Ina Sue's motions for summary judgment. On June 23, 2006, Crouch filed with leave of the Court a Second Amended Complaint. *See* Doc. # 52. The instant motions for summary judgment were filed by Lincoln National, AmSouth/AIS, and Ina Sue on, respectively, September 18, 2006, September 19, 2006, and September 22, 2006. *See* Docs. # 61, 64, and 68. On October 17, 2006, this Court denied Crouch's motion to continue defendants' motions for summary judgment. *See* Doc. # 85.

## V. DISCUSSION

### A.  *Claims Against Lincoln National*

In Crouch's Second Amended Complaint, he alleges that Lincoln National breached the annuity contract by paying proceeds of the annuity contract to Ina Sue and that, in doing so,

6

Lincoln National was negligent. However, as briefed by the parties, Ala. Code § 27-14-24 provides as follows:

> Whenever the proceeds of, or payments under, a ... annuity contract ... become payable in accordance with the terms of such policy or contract ... and the insurer makes payment thereof in accordance with the terms of the policy or contract ... such payments shall fully discharge the insurer from all claims under the policy or contract, unless before payment is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such other person claims to be entitled to such payment or some interest in the policy or contract.

While Crouch admits that he did not give Lincoln National the written notice required by the statute, he contends that Lincoln National is not immune from suit because his claim of negligence would not be barred. This position, however, was squarely rejected by the Supreme Court of Alabama in *Fortis Benefits Insurance Company v. Pinkley*, 926 So. 2d 981 (2005).

In *Fortis*, Jay Pinkley ("Pinkley") purchased a $100,000 life insurance policy, the obligations of which were ultimately assumed by Fortis Benefits Insurance Company ("Fortis"). When Pinkley made the application, he listed his wife, Bertha, as the primary beneficiary and his step-son, Paul, as the contingent beneficiary. Subsequently, under questionable circumstances but circumstances that nonetheless complied with the stated terms of the policy, Fortis received a change of beneficiary request that designated Paul's wife as the primary beneficiary. When Pinkley died, Paul's wife filed a claim for the policy benefits, and Fortis promptly paid the proceeds. Bertha did not file a claim for the benefits until nearly two years after the proceeds were paid. Bertha sued Fortis under a variety of tort theories. On

7

interlocutory appeal after the denial of Fortis's motion for summary judgment, the Supreme Court of Alabama held that

> 27-14-24 does not cast upon the insurer a duty to investigate and discover whether a change of beneficiary has been procured by forgery, and that where an insurer in good faith pays life-insurance benefits in reliance on a forged change-of-beneficiary request form, which appears regular in all respects, the insurer is fully discharged 'from all claims under the policy or contract.'

*Fortis*, 926 So. 2d at 989 (quoting Ala Code § 27-14-24). Therefore, the statute made Fortis immune from all claims by Bertha, including one for negligence. Similarly, in the instant case, Lincoln National is "fully discharge[d] ... from all claims under the policy or contract." In light of the absence of any genuine issue as to the material facts that pertain to Lincoln National, Lincoln National's Motion for Summary Judgment is due to be GRANTED.

### B. *Claims Against AmSouth, AIS, and Ina Sue*

The remaining claims against AmSouth, AIS, and Ina Sue as set forth in Crouch's Second Amended Complaint are predicated on the fact that James Earl's signature on the change of beneficiary form was a forgery.[2] Crouch's remaining claims include the following: breach of contract against AmSouth, AIS, and Ina Sue; negligence against AmSouth and AIS; fraud against AmSouth, AIS and Ina Sue; and tortious interference with contract against

---

[2]Crouch opposes the motions for summary judgment on the grounds that these motions are premature. This line of argument is without merit as this Court has already addressed this issue in a previous memorandum opinion and order. *See* Doc. # 85 (denying Crouch's motion to continue defendants' motions for summary judgment).

AmSouth, AIS, and Ina Sue.[3]

The law is clear and well-established in Alabama that it would be proper for Ina Sue to sign James Earl's name on his behalf and at his direction. *See, e.g.*, *Hamilton v. Adams*, 108 So. 1, 1 (1926). Crouch alleges, however, that there is a genuine issue of material fact as to the circumstances under which the change in beneficiary form was signed. Specifically, Crouch points to Ina Sue's earlier sworn testimony that she had never signed her husband's name to anything. Crouch is correct to point out this inconsistency. In a deposition taken in a separate proceeding on January 22, 2002 in the Probate Court of Elmore County, Alabama, Ina Sue testified as follows:

> Q: Have you ever signed Mr. Crouch's name to anything?
> A: Unh-unh.
> Q: Never?
> A: Unh-unh. Unh-unh. Never. Mr. Crouch was always able to sign his own name whever we done business. No, I've never signed his name to nothing.

Doc. # 75-2 at 17. Ina Sue further testified that she and her late husband never changed the beneficiary of the annuity:

> Q: Tell me about the annuity that your husband had.
> A: I told you that a while ago.
> Q: Okay. Tell me again. I'm slow.
> A: Well, we just had an annuity with Lincoln Life Insurance

---

[3] It should be noted that the defendants have not briefed the specific merits of the actual causes of action against them. Therefore, if a reasonable trier of fact could find that there is a genuine issue of material fact as to the authenticity of James Earl's signature, then the Court is no position to evaluate the remaining motions and must therefore deny summary judgment.

>     Company.
>     Q: And how many times has the beneficiary been changed on that?
>     A: Never.
>     Q: Never. So from the time that it was first purchased until the time of your husband's death, the beneficiary was you?
>     A: Yes. Right.

*Id.* at 19. While the Court does not impute ill motive to this discrepancy – a faulty memory, among other things, could be a factor given Ina Sue's advancing age – it is an inconsistency nonetheless. The Eleventh Circuit faced a similar situation in *Tippens v. Celotex Corp.*, 805 F.2d 949 (11th Cir. 1986). In *Tippins*, an apparent inconsistency between an affidavit and deposition testimony was "evidence that impeaches [the witness's] memory, and impairs the probative weight of his testimony" and "[b]ecause assessing the credibility and weight of the evidence are questions of fact for the trier of fact, the District Court's grant of summary judgment was improper." *Id.* at 955.

As hard as the Defendants may try to dismiss this inconsistency in Ina Sue's testimony and argue that the Court should rely instead on Robinson's deposition and affidavit, this inconsistency creates a genuine issue of material fact. When reviewing a motion for summary judgment, the district court must consider all evidence in the record and can only grant summary judgment "'if *everything* in the record ... demonstrates that no genuine issue of material fact exists.'" *Id.* at 952 (quoting *Keiser v. Coliseum Props., Inc.*, 614 F.2d 406, 410 (5th Cir. 1980) (emphasis in original). Summary judgment is, as the Eleventh Circuit warned, "a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use." *Id*. (quoting *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 612 (5th Cir. 1967)). Ina

10

Sue's inconsistent deposition testimony in the probate hearing – as innocent as it may be – creates a genuine issue of material fact. With respect to these remaining claims against AmSouth, AIS, and Ina Sue, the Court finds that a genuine issue of material fact precludes summary judgment. For this reason, the motions for summary judgment filed by AmSouth, AIS, and Ina Sue are due to DENIED.

## VI. CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1) The Motion for Summary Judgment (Doc. # 61) filed by Lincoln National is GRANTED and all claims against Lincoln National are DISMISSED WITH PREJUDICE. Given that Lincoln National's involvement with this litigation is now terminated, counsel for Lincoln National need not appear at the pre-trial hearing.

(2) The Motion for Summary Judgment (Doc. # 64) filed by AmSouth and AIS is DENIED.

(3) The Motion for Summary Judgment (Doc. # 68) filed by Ina Sue Crouch is DENIED.

DONE this the 14th day of August, 2007.

                                /s/ Mark E. Fuller
                           CHIEF UNITED STATES DISTRICT JUDGE