## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA

**JAMES E. CROUCH**                                        **PLAINTIFF**

**VS.**                                        **CIVIL ACTION NO. 2:06-CV-00111-MEF**

**AMSOUTH BANK, INA SUE**                                        **DEFENDANTS**
**CROUCH, AMSOUTH INVESTMENT**
**SERVICES, INC., LINCOLN**
**NATIONAL LIFE INSURANCE**
**COMPANY, and**
**JOHN and JANE DOES 3-10**

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW, the Plaintiff, James E. Crouch, and files this his proposed findings of fact

and conclusions of law:

### STIPULATIONS BY AND BETWEEN THE PARTIES:

(a)     James Edward Crouch is the son of the late James Earl Crouch and Defendant Ina Sue Crouch a/k/a Sue Crouch.

(b)     On May 7, 1998, James Earl and Ina Sue met with their personal banker, Ronda Robinson at AmSouth Bank and its affiliated corporation, AmSouth Investment Services, Inc. in Wetumpka, Alabama.

(c)     A tax-deferred annuity through AmSouth Investment Services was purchased at that time from Lincoln National Life Insurance Company ("the Annuity") in the amount of $250,000.00 upon which James Earl and Ina Sue were joint owners.

(d)     Ronda Robinson was an employee of AmSouth Bank and an agent of AmSouth Investment Services, Inc. and Lincoln in connection with the sale of the Annuity.

(e)     In the Application for the Annuity, James was specified as the primary beneficiary in the "Annuitant Information" section of the 5/7/98 annuity application submitted to Lincoln National.

(f)     The April 4, 2000, Annuity Service Request form names Ina Sue Crouch as primary beneficiary and James E. Crouch as contingent beneficiary.

(g)     The April 4, 2000, Annuity Service Request form was signed by Ina Sue Crouch as an owner.

(h)     Ina Sue Crouch signed her name and James Earl Crouch's name on the April 14, 2000, Annuity Service Request form.

(i)     On or about February 14, 2001, James Earl died.

(j)     Ina Sue Crouch submitted a death benefits claim, including a death certificate, to Lincoln, asking that the proceeds of the Annuity be paid to her. On March 22, 2001, Lincoln mailed a check in the amount of $290,487.96 payable to Ina Sue Crouch, in care of the agent, Ronda Robinson. Ina Sue Crouch received and negotiated this check.

(k)     On September 25, 2002, James Crouch filed suit in Forrest County, Mississippi against AmSouth, as evidenced by the original Complaint in this case.

(l)     Ronda Robinson was acting in the course and scope of her duties with AmSouth Investment Services when she sold and serviced said Annuity.

(m)     The Addressees received the letter dated May 18, 1998, in the regular course of U.S. mail shortly after its date.

## PLAINTIFF'S PROPOSED FINDINGS OF FACT:

1.      The case was commenced with the filing of a Complaint for Discovery in Forrest County Chancery Court in Mississippi on September 25, 2002, and served on AmSouth on October 10, 2002. The Complaint alleged a fraudulent change of beneficiary in the Annuity Contract, and demanded all documents in the possession of AmSouth Bank related to the Annuity purchased by James Earl Crouch, in order to allow the Plaintiff to properly seek a claim to the proceeds of the Annuity Contract.

2.      Plaintiff James Edward Crouch is the son of James Earl Crouch, deceased. In 1998, the senior Mr. Crouch informed his son that he had purchased an annuity at AmSouth Bank from Lincoln Financial Group in an amount of $250,000 and listed Plaintiff James Edward Crouch as the beneficiary. In order for James Edward to establish a claim to the Annuity purchased for him by his father, it was necessary that he examine the annuity. James Edward applied to AmSouth Bank and to Lincoln Financial for an opportunity to examine the required documents, but was unable to obtain examination thereof. (Plaintiff's Complaint for Discovery.)

3.      When the Discovery Action was filed, copies of the documents being sought by the original Complaint, while not generated by AmSouth, were in the possession of AmSouth. According to AmSouth, these documents related to an annuity contract purchased by James Earl Crouch and Ina Sue Crouch who were the parents of James Edward Crouch, the Plaintiff herein. (See AmSouth's Motion to Transfer Pursuant to 28 USC Section 1404(a).)

4.  Ina Sue Crouch filed an Answer to the Amended Complaint denying the allegations in paragraph 11, among other items, which allege that she stated, under oath, that the beneficiary was never changed from the date of purchase, and that she was the original and sole named beneficiary.  Ina Sue Crouch did state in a deposition on January 22, 2002 that the beneficiary of the Lincoln annuity was never changed; that the policy always named only her as beneficiary and that she never signed Mr. Crouch's name to any document.

5.  In AmSouth's Brief in Support of Motion to Transfer Pursuant to 28 USC Section 1404(a), AmSouth stated:

   (a)  "When the Discovery Action was filed, copies of the documents being sought by the original Complaint, while not generated by AmSouth, were in the possession of AmSouth.  These documents related to an annuity contract purchased by James Edward Crouch's father, James Earl Crouch . . .   AmSouth refused to release the documents . . ."

   (b)  The files and other records or documents relating to this transaction, except those maintained by Lincoln National Life Insurance Co., are maintained in Wetumpka or Birmingham, Alabama (Declaration of Robinson).

   (c)  All of the key witnesses who can be expected to be called are residents of Alabama where they are subject to process.  Substantially all of the documentary evidence that will be offered at trial is located within the State of Alabama, either in Birmingham, Alabama, or Wetumpka, Alabama.

   (d)  An additional witness, who gathered the records and maintained the files, Carol Spricht, is also in Alabama.

   (e)  All of AmSouth's documents related to the allegations in the Complaint are located at its corporate headquarters in Birmingham, Alabama or in its branch in Wetumpka.

6.  After the marriage between James Edward and Teresa, James Earl advised us that he had prepared his Will which left One Dollar ($1.00) to each of his other children with the remainder of his property to be divided with half to go to Ina Sue, and half to my husband.

7.  On August 28, 1997, James Earl Crouch gave James Edward Crouch one hundred thousand dollars ($100,000.00) as shown in the AmSouth official check.

8.  In May or June, 1998, Ina Sue Crouch and James Earl called James Edward, and explained that James Earl had purchased a $250,000.00 annuity at AmSouth Bank and that James Edward would receive the money from that annuity when James Earl died.

9.  The annuity contract consisting of the application shows James Earl as annuitant and son James Edward a primary beneficiary.  Ina Sue Crouch is listed as joint owner.  Upon a non-

    annuitant owners death, the proceeds will be paid to the joint owner as beneficiary.  The owners' beneficiary section is left blank and the form states that "owner beneficiary designations are applicable only when there is no joint owner."

10.    The May 18, 1998 letter from Lincoln states the original contract and these conformation pages should be kept as important purposes.  The attached contract date sheet showed James Edward as beneficiary.

11.    The May 18, 1998 letter from Lincoln National to Ronda Robinson Lincoln National pointed out in bold that upon the death of the annuitant, all benefits will be payable to the primary beneficiaries, not the joint owner.

12.    Ronda Robinson admitted that at the time of execution of the Crouch annuity application she understood that the primary beneficiary under the Crouch application was the first in line to receive annuity benefits on death of the annuitant and that proper beneficiary designation was essential to enable th exact wishes of the annuitant to be carried out.

13.    Ronda Robinson admitted that she knew at the time of execution of the Crouch annuity that if Mr. Crouch was the annuitant-owner the proceeds would go on his death to the annuitant designated beneficiary to the exclusion of any owner beneficiary.

14.    Ronda Robinson admitted that with regard to this Crouch annuity contract a person who was not the annuitant could not make a change in the designation of the annuitant's beneficiary.

15.    Ronda Robinson admits that in May 1998 and April 4, 2000 James Earl was not weak, he could read and write and sign his name, could review and understand banking documents, and was not suffering any physical or mental incapacity and was not incapable of making his mark or signing his name.

16.    Although James Earl had prescription "reading glasses" for several years prior to 1998, he rarely wore them and did not need them to sign his name.  In fact, he rarely took them with him when he left the home.

17.    The application for change of beneficiary dated April 4, 2000, clearly demonstrates that the signature of Mr. Crouch, Sr. was forged and that his purported signature on the form is identical to that of Ina Sue Crouch.  In addition, the document bears the signature of AmSouth's employee, Ronda Robinson, who sold the annuity in question and purported to witness the obviously forged signature.

18.    Ina Sue Crouch did not write on the April 4, 2000, Annuity Service Request that she was signing James Earl Crouch's name on his behalf, or at his request nor did she present any power of attorney.

19.    Ronda Robinson did not write on the April 4, 2000, Annuity Service Request that she

witnessed Ina Sue Crouch sign James Earl Crouch's name on his behalf, or at his request.

20.    James Edward Crouch is familiar with the signature of his father and witnessed that signature many times throughout the course of his life. The purported signature of his father on the 'Change of Beneficiary' form is not the signature of his father.

21.    In early January, 2001, James Edward and his wife visited his parents' at their home located at 360 Old 231 North, Wetumpka, Alabama. During that visit James Earl stated that his health was failing and reminded us that when he died he didn't care what Ina Sue did but my husband would get all the money from the annuity at AmSouth.

22.    The day before the funeral for James Earl, my husband and his half siblings agreed to read James Earl's Will at the Wetumpka homestead the following morning before the funeral. When we arrived, David Shaddix, Ina Sue's son from a prior marriage, went out into the yard and began burning documents in the burn barrel behind the home. He and Ina Sue advised Teresa and James that they could not find the Will of James Earl.

23.    In the Declaration of Ronda Robinson in Support of the Motion to Transfer, she states: "I later assisted the Crouchs in completing certain documentation signed by them for the change of beneficiary."

24.    The testimony of Ina Sue Crouch regarding the change of beneficiaries issues including agency and authorization is not credible and is disregarded based upon the following:

(a)    On January 22, 2002, Ina Sue Crouch testified in a deposition involving contested probate proceedings regarding James Earl Crouch's estate as follows:

(i)    Neither she nor James Earl made any money changes in documents at bank or transacted any business after May 1988 (p. 44, l. 11-23).

(ii)    Ina Sue never signed Mr. Crouch's name to any document because he was always able to sign his own name whenever they did business (p. 74, line 23; p. 75, lines 1-7).

(iii)    As to the Lincoln National annuity the beneficiary was never changed from the time of purchase until the time of James Earl's death (p. 9, lines 11-23).

(iv)    Virtually all of the checks which purport to bear the signature of James Earl were signed by Ina Sue Crouch.

(v)    Contrary to her sworn testimony that she never signed James Earl's name on any document, Ina Sue Crouch signed James Earl Crouch's names on hundreds of checks, which are reflected in Plaintiff's Exhibit 29.

(vi)    Whenever James went to AmSouth Bank, he wanted to see everything and check things and keep up and keep everything on track and always demanded to see the documents to determine that they said what he intended.

(vii)   The AmSouth Wetumpka branch bank was only five minutes from the Crouch's home.

(viii)  Mrs. Crouch contends that she told her husband that she could not sign his name to the change of beneficiary document and would have to go back to the house and get his glasses but was persuaded not to get the glasses by Ronda Robinson who represented she was a notary and Ina Sue Crouch should sign James Earl's name. Ronda Robinson denies this.

(vix)   Ina Sue's testimony that she had never signed James Earl's name and that he was always able to sign his name stands in direct contradiction and is inherently inconsistent with her current position that she signed the April 4, 2000 change of beneficiary form at the direction and consent of James. Ina Sue admits in her affidavit that she and her late husband were "tardy" in changing the beneficiary on April 4, 2000, after receiving notice of their alleged error in designating a beneficiary on May 7, 1998. The fact that the change in beneficiary was done almost two years later casts great doubt upon the Defendants' version of the facts.

25.    The testimony of Ronda Robinson is not credible and is disregarded based upon the following:

(a)    Ronda Robinson stated under penalties of perjury in her Declaration filed by AmSouth in connection with the Motion to Transfer Venue and Amsouth's Reply in 2005 that she personally witnessed James Earl Crouch sign his own name on the signature line of the 4/4/00 change of beneficiary form.

(b)    From 1996-2001 Ronda Robinson was a customer service representative for AmSouth Bank and simultaneously, commencing with licensing on 11/26/97, worked as an AmSouth Investment Service representative who received commissions for sale of annuities.

(c)    Exhibit 12 is the annuity contract. The annuity paperwork was new to Ronda because she had only been selling annuities on rare occasions after she was licenced at the end of March 1997.

(d)    Ronda Robinson admitted that the annuitant had to designate the beneficiary not the owner in the Annuity.

(e)    Ronda Robinson contends that she told the Crouches in May 1998 that the

beneficiary designation was in error but her purported contemporary notes state that the Crouches may want to look at changing beneficiaries later. No effort to change beneficiaries occurred for two years.

(f)     AmSouth represented to the Court that Ronda Robinson, its former employee, "witnessed the signature of the deceased" (Reply Brief of AmSouth in Support of AmSouth's Motion to Transfer.)

(g)     Ronda Robinson states in her purported contemporaneous notes that the reason the beneficiary was changed from James Edward to Ina Sue Crouch was because the Crouches gave James Edward a certified check for $100,000 after the initial designation of him as the sole annuitant designated beneficiary. In fact the check was delivered to James Edward in September 1997 a year <u>before</u> the purchase of the Annuity and three years before the purported changes of beneficiary.

(h)     Ina Sue testified that Ronda Robinson signed the change of beneficiary form before she gave it to Ina Sue to sign but Ronda Robinson denies this.

(i)     Ronda Robinson made a purported memo to file dated 7/6/01 which stated "I specifically remember the Crouch's purchasing a $100,000 cashier's check to give to this son of theirs. Seems after that, they decided to remove him from the contract as beneficiary."

26.     As an agent for AmSouth Bank, AmSouth Investment and Lincoln, Ronda Robinson admits that the persons who have rights under the annuity contract were the owner, the annuitant and the beneficiary.

27.     Ronda Robinson admits that in April 2000 she was familiar with the practice of having someone who signs for another demonstrate an appropriate written power of attorney and note on the document that he/she is signing on behalf of another.

28.     During the period from 1998 through the date of death of James Earl Crouch, James and Ina Sue had approximately $250,000 in the annuity income from James' Alabama retirement and social security and approximately $250,000 of other assets.

29.     AmSouth failed to produce the annuity contract, or any training or operation procedures or manuals regarding the Annuity.

30.     AmSouth denied under oath in answers to discovery that it had possession of the annuity contract other than the application despite its representations that the relevant documents were in its possession or contract.

**PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW:**

(a)     Jurisdiction exists by reason of diversity of citizenship and the amount in controversy.  Venue is proper in the United States District Court for the Middle District of Alabama Northern Division.

(b)     Plaintiff has standing to challenge a change of beneficiary.  *In re Estelle*, 2007 WL WL 2019590 (Ala.).

(c)     James Edward Crouch was a third party beneficiary to the Annuity.

(d)     The Plaintiff has proved by a preponderance of evidence that the signature on the April 14, 2000, change of beneficiary form was not signed by James Earl Crouch.

(e)     If James Earl as annuitant wanted to change the beneficiary under the contract from his son to his wife he had two options:

   (i)     James Earl could execute an annuitant designated beneficiary form inserting the name of Ina Sue Crouch; or

   (ii)    He could execute an annuitant designated beneficiary from inserting "None" so that the proceeds would pass to his surviving spouse if Ina Sue Crouch survived him.

He did neither, and Ina Sue Crouch's forgery is ineffective.

(f)     If James Earl Crouch or Ronda Robinson had truly made an error in the original May 7, 1998 annuity application as Ina Sue Crouch and Ronda Robinson now contend, Ronda Robinson should have had an amendment of application form (Ex 31) prepared and executed by James Earl Crouch as annuitant to verify correction to conform with his intentions.  No such form was ever requested, executed, or submitted.

(g)     The Defendants have failed to prove by a preponderance of evidence that Ina Sue Crouch did have actual authority to sign the name of James Earl Crouch.

(h)     Ina Sue Crouch testified that Exhibit 2 is the Annuity Contract with Lincoln.

(i)     When the Annuity documents were prepared and submitted in May 1998 regarding the Lincoln National Annuity, James Earl was able to read and write and understand the documents.

(j)     In April 2000, James Earl was not suffering physical or mental disability or incapacity that would prevent him from signing a document.

(k)     As to the application for annuity, James Earl was the annuitant and owner; James

8

Edward was the annuitant designated beneficiary; Ina Sue Crouch was a joint owner with James Earl; there was no owner beneficiary and none would be effective due to the joint ownership of the annuity.

(l)     Ina Sue Crouch had no right merely as a joint owner to change the annuitant beneficiary designation of the Annuity.

(m)     By submitting the change of beneficiary form with actual and constructive notice the signature of James Earl Crouch was forged, AmSouth, and Ina Sue Crouch breached the Annuity.

(n)     By facilitating the payment of Annuity proceeds to Ina Sue Crouch, AmSouth breached the Annuity.

(o)     The negligence of AmSouth, AmSouth Investment Services, and/or Ina Sue Crouch was the proximate cause of damages to James Edward Crouch.

(p)     AmSouth, and Ina Sue Crouch conspired and fraudulently submitted the change of beneficiary form knowing that it was a forged document signed only by Ina Sue Crouch who had no independent contractual right to change the beneficiary of the Annuity Contract.

(q)     AmSouth and Ina Sue Crouch conspired to change their original representations to the United States District Court that the signature of the sole annuitant, James Edward Crouch, was his valid signature witnessed by Ronda Robinson after AmSouth was forced to disclose the change of beneficiary form which bore the obvious forgery.  Only thereafter did said Defendants contend that the forged signature of James Earl Crouch was, instead, the purported "authorized signature"

(r)     By submitting the forged change of beneficiary form and by submitting the request for payment of the annuity proceeds in lump sum to Ina Sue Crouch, AmSouth tortuously interfered with the Annuity Contract between James Earl Crouch and Lincoln, of which the Plaintiff was a third party beneficiary.

(s)     A change in beneficiary of an annuity or life insurance policy resulting from fraud is void and the original policy would remain in effect, and the original beneficiary's interest vests on the annuitant's death.  Under such circumstances, the beneficiary has standing to challenge the fraud because the beneficiary's interest is not a mere expectancy.  *Ex parte Estelle* 2007 WL 2019590 (Ala 2007).  Therefore James Edward Crouch as the original annuitant designates beneficiary has standing to bring this action alleging fraud in the forgery of the annuitant's signature.

(t)     Forgery is a species of fraud as is undue influence and a change of beneficiary procured by forging is like one procured through undue influence and is not the act

9

of the policy owner. *Fortis Benefits Insurance Company v. Pinkley*, 2005 WL 1793346 (Al 2005).

(u)    Federal Rule of Civil Procedure 8(c) requires that defendants must "set forth affirmatively...license...and any other matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c). The license or authorization from one person to execute his signature is an affirmative defense. Because Defendants failed to plead license or authorization as an affirmative defense in their respective answers, Defendants are barred from introducing any evidence related thereto.

(v)    During the course of this litigation which commenced over five (5) years ago, the Defendants have implemented a complete shift in strategy. Initially, the Defendants claimed that James Earl Crouch personally signed his name to the change of beneficiary form, i.e. his signature was not that of Ina Sue Crouch. (*See* ECF 21) Reply Brief of AmSouth Bank in Response to the Memorandum Filed by the Plaintiff in Opposition to AmSouth Bank's Motion to Transfer Pursuant to 28 U.S.C. 1404(a), p. 6 (referring to Ronda Robinson, stating "she witnessed the signature of the deceased"). AmSouth then goes on to state that Ronda Robinson is "the most critical witness to their defense" based on her alleged observation of the James Earl Crouch signing his own name to the change of beneficiary form. Further, the Declaration of Ronda Robinson (ECF 15, exhibit 2) mentions nothing of Ina Sue Crouch signing James Earl Crouch's name at his request, authorization or direction. In fact, she declares "I later assisted the Crouchs [sic] in completing certain documentation ***signed by them*** for the change of beneficiary. . ." *Id.* (emphasis added).

(w)    The rational for permitting a licensee or agent to sign the name of the licensor/principal under such circumstances is explained in *Lewis v. Watson*, 13 So. 570 (Al. 1893). In *Lewis*, the licensor/principal "could not write his name" and the reason for premitting licensed signature is:
1.    Disposing mental capacity
2.    "Incapacity . . .to do the physical act of making a written sign or mark"
3.    Express and witnessed license granted by the licensor/principal to the licensee/agent in the presence of attending witnesses
4.    The signature was in the presence of the licensor/principal.
*Id.* at 571. Here, both Ronda Robinson and Ina Sue Crouch admit that James Earl Crouch was physically and mentally able to sign his own name.

(x)    Under Alabama law, a party asserting the existence of a principal/agent relationship has the burden of proving that relationship. *Wallace v. Frontier Bank, N.A.* 903 So. 2d 792, 801 (Ala. 2004) (". . . agency is a question of fact, and agency may not be presumed; the party asserting it has the burden of adducing sufficient evidence to prove its existence."); *Kennedy v. Western Sizzlin Corp.*, 857 So. 2d 71, 77 (Ala. 2003) ("This is not to say, however, that agency may be presumed; the party asserting it has the burden of adducing [substantial] evidence to prove its existence."); *Lincoln*

*Log Home Enter., Inc. v Autrey*, 836 So. 2d 804, 806 (Ala. 2002) ("The party asserting the existence of an agency relationship has the burden of adducing sufficient evidence to prove its existence.")

(y)     The Defendants have the burden of proving that James Earl Crouch requested and authorized Ina Sue Crouch to sign his name to the change of beneficiary form. The Plaintiff has put forth a prima facie case of forgery and the Defendants cannot deny that fact. "An affirmative defense is an assertion raising new facts and arguments that, if proven, defeat the plaintiff's claim even if the allegations in her complaint are true." *Sterten v. Option One Mortgage Corp.*, 479 F.Supp.2d 479, 482-83 (E.D.Pa. 2007). "In other words, assuming a plaintiff's factual allegations make out a cause of action, an affirmative defense bars it." *Id.* This case involves a classic case of affirmative defense. The Plaintiff plead a valid cause of action of forgery. While the case was in procedural limbo due to AmSouth's removal and change of venue, AmSouth represented that the document was not a forgery. As stated above, AmSouth represented that its agent, Ronda Robinson, "witnessed the signature of the deceased." Later in the litigation, AmSouth altered its course to allege that Ina Sue Crouch did in fact sign her husband's name, but it was at the direction of James Earl Crouch. Likewise, Ina Sue Crouch denied in her prior deposition testimony that she had ever signed her husband's name to any documents or made any changes to documents at the bank. Such bait and switch tactics are improper and Defendants should be estopped to switch positions.

(z)     Failure to assert an affirmative defense in the Answer to the Complaint constitutes a waiver of said defense. Fed. R. Civ. P. 8(c).

(aa)    The Annuity Contract provides that a non-annuitant owner's death causes the benefits to go to the joint owner and the owner beneficiary designations control only if there is not a joint owner; however, annuitant beneficiary designations control over the rights of joint owners.

(bb)    "But for" the purported change of beneficiary form dated April 4, 2000, and signed only as owner and joint owner, Plaintiff would have gotten all the proceeds.

(cc)    AmSouth provided no rules, regulations, or procedures and no education or training to Ronda Robinson.

(dd)    Ina Sue Crouch had no contractual right to change the annuitant beneficiary designation of the Annuity Contract.

(ee)    By purporting to permit a joint annuity owner to change the annuitant beneficiary designee under the annuity contract, AmSouth and Ina Sue Crouch breached the Annuity Contract.

11

(ff)    By submitting the beneficiary change form, knowing the signature of James Edward Crouch was forged, AmSouth, and Ina Sue Crouch breached the annuity contract.

(gg)    AmSouth was negligent in the following respects:

    (i)    Defendant AmSouth failed to provide policies, procedures, rules, and regulations for the sales and administration of the Annuity Contract to Ronda Robinson.

    (ii)    Defendant AmSouth failed to provide education and training to Ronda Robinson regarding the sale and administration of the Annuity Contract.

    (iii)    Defendant AmSouth failed to supervise the work of its inexperienced and untrained agent, Ronda Robinson.

    (iv)    Defendant Lincoln failed to provide rules, regulations, policies, procedures, education, and training to AmSouth and AISI regarding the sale and administration of the Annuity Contracts.

    (v)    As a direct and proximate result of said breaches of their duties, Defendants Lincoln, AmSouth, and AISI proximately caused Plaintiff's damages, namely the loss of his right as the sole annuitant beneficiary designated to receive the benefits of $290,487.96 as of March 19, 2001.

    (vi)    AmSouth and Ina Sue Crouch improperly conspired and fraudulently submitted the change of beneficiary form (Exhibit 2) knowing it was a forged document signed by Ina Sue Crouch who had no contractual right to change the beneficiary fo the annuity contract.

(hh)    The proceeds of the Annuity Contract, which were improperly paid to Ina Sue Crouch, are deemed to be held in constructive trust and ordered to be paid to Plaintiff as the rightful owner thereof.

(ii)    The Court determines that the amount of compensatory damages recoverable by James Edward Crouch is $290,487.96 plus pre-judgment interest thereon after March 19, 2001.

(jj)    Plaintiff is entitled to punitive damages.

(kk)    Plaintiff is entitled to consequential damages, including attorneys fees, costs of suit, post judgment interest and all other consequential damages.

DATED this 24th day of September, 2007.

12

RESPECTFULLY SUBMITTED,
JAMES E. CROUCH


/s/ Samuel S. McHard
SAMUEL S. McHARD, MSB#100295
*Pro hac Vice*


McHARD & ASSOCIATES, PLLC
32 MILBRANCH ROAD, SUITE 50
HATTIESBURG, MS 39402
T: 601-450-1715
F: 601-450-1719

13

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on September 28th, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

**Glenda Wingard Hughes**
gwhughes@elmore.rr.com
**Attorney for Ina Sue Crouch**

**Paul J. Delcambre, Jr.**
pdelcambre@balch.com
lhale@balch.com

**Joseph Seawell Moore**
jsmoore@balch.com
dharris@balch.com

**Charles Burton Paterson**
cpaterson@balch.com
bleveille@balch.com
**Attorneys for AmSouth Bank**

s/Samuel S. McHard

14