```
 1                IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE MIDDLE DISTRICT OF ALABAMA

 3                          NORTHERN DIVISION

 4  JAMES E. CROUCH,

 5       Plaintiff,

 6  Vs.                          CASE NO.: 2:06cv111-MHT

 7  AMSOUTH BANK, INA SUE CROUCH,
    AND JOHN AND JANE DOES 1-10,
 8
         Defendants.
 9
                 * * * * * * * * * * * * * * *
10
                       EXCERPT OF BENCH TRIAL
11
              FINDINGS OF FACT AND CONCLUSIONS OF LAW
12
                  * * * * * * * * * * * * * *
13
         BEFORE THE HONORABLE MYRON H. THOMPSON, UNITED STATES
14
    DISTRICT JUDGE, at Montgomery, Alabama, on Friday, October 5,
15
    2007, commencing at 9:05 a.m.
16
                              APPEARANCES
17
    FOR THE PLAINTIFF:       Mr. Samuel S. McHard
18                           Mr. Erica McHard
                             BRYAN NELSON RANDOLPH, PA
19                           Attorneys at Law
                             Post Office Box 18109
20                           Hattiesburg, Mississippi  39404

21  FOR THE DEFENDANT
    AMSOUTH:                 Mr. Charles B. Paterson
22                           Mr. Joseph S. Moore
                             BALCH & BINGHAM
23                           Attorneys at Law
                             105 Tallapoosa Street, Suite 200
24                           Montgomery, Alabama

25
```

```
 1                     APPEARANCES (continuing)

 2  FOR THE DEFENDANT
    INA SUE CROUCH:           Ms. Glenda W. Hughes
 3                            Attorney at Law
                              2306 Mt. Hebron Road
 4                            Eclectic, Alabama

 5                            Ms. Jacqueline E. Austin
                              Attorney at Law
 6                            108 Court Street
                              Wetumpka, Alabama  36092
 7
               Proceedings reported stenographically;
 8
                  transcript produced by computer.
 9

10       (The following excerpt of proceedings were heard before the

11  Honorable Myron H. Thompson, United States District Judge at

12  Montgomery, Alabama, on Friday, October 5, 2007, commencing at

13  9:10 a.m.:)

14            THE COURT:  The Court now enters its findings of fact

15  and conclusions of law.

16            In this lawsuit, plaintiffs James -- plaintiff James

17  Edward Crouch alleges that his mother forged his father's name

18  on a banking form, thereby wrongfully depriving him, after his

19  father's death, of the proceeds of an annuity contract purchased

20  by his father.  The son further contends that the banking

21  institutions from which the annuity was purchased had actual and

22  constructive knowledge that the mother forged the signature, and

23  that these institutions failed to train, educate, and supervise

24  their employees.  The son names as defendants his mother, Ina

25  Sue Crouch, and the two banking institutions, AmSouth and
```

1  AmSouth Investment Services, Inc.  The son asserts four claims
2  against the defendants:  breach of contract; negligence; fraud;
3  and tortious interference with contract.  The diversity
4  jurisdiction of the Court has been invoked pursuant to Section
5  1332 of Title 28 of the United States Code.
6         For reasons that follow, the court finds in favor of
7  the mother and the banking institutions and against the son.
8         The facts, as established by a preponderance of the
9  evidence, are as follows:  On May 7, 1998, the mother and the
10 father went to their local AmSouth Bank in Wetumpka, Alabama.
11 With the assistance of bank official Rhonda Robinson, the couple
12 applied for an Investors Choice annuity and made an initial
13 premium deposit of $250,000.  The application listed the father
14 as the annuitant, the mother as the joint owner, and the son as
15 the primary beneficiary.  The application was sent to Lincoln
16 National Life Insurance Company so that company could process
17 and issue the annuity.
18        Shortly thereafter, on May 7, upon receiving the
19 annuity documents back from Lincoln National, Robinson noticed
20 that she had made a mistake in filling out the application for
21 an annuity.  As the application was written, if the father
22 passed away, all the proceeds of the annuity would go directly
23 to the son as the primary beneficiary.  This was an error
24 because the father and mother both had made clear their
25 intention that the survivor of the two would receive the

1  benefits.  This intention is also strongly evidenced by the
2  facts that all the father and mother's other financial
3  arrangements provided for an arrangement in which the survivor
4  of the two would receive the benefits; the money that funded the
5  annuity came from a CD that had both the father's and mother's
6  names on it and for which the survivor of the two would receive
7  the benefits; and that it is an anomaly in the banking industry
8  to have an annuity where there are two joint owners without the
9  benefits going to the surviving owner.
10        Robinson telephoned the couple of her mistake in
11 filling out the application.  She advised them that a separate
12 document would be required to fix the error.
13        On April 4, 2000, nearly two years after they initially
14 applied for the annuity, the mother and father finally returned
15 to AmSouth to complete the required paperwork.  The Annuity
16 Service Request form read, in accordance -- quote, in accordance
17 with the provisions of this contract, I hereby revoke all former
18 designations and replace them as follows, end of quote.  The new
19 form designated the mother as the primary beneficiary, while
20 designating the son as the contingent beneficiary.
21        While filling out the new form, Robinson instructed the
22 mother and father that both of them as joint owners would need
23 to sign it.  Because the father did not have his reading glasses
24 on hand and could not see the line for his signature, he
25 instructed the mother to sign his name for him.  As expressly

1  requested by the father, the mother signed the father's name.
2  Robinson signed the document as well, indicating her role as
3  agent witness.  Both the father and the mother knowingly and
4  without any coercion intended this change, and both were
5  mentally competent to make the change.  After Robinson sent the
6  Annuity Service Request back to Lincoln National, Lincoln
7  National sent a letter to the mother and father on May 16, 2000,
8  confirming the beneficiary change.
9         In February 2001, at the age of 72, the father died of
10 respiratory failure.  Robinson called Lincoln National to notify
11 the company that the father had passed away and later filed the
12 appropriate forms with Lincoln National requesting a
13 cancellation of the annuity contract and a single sum
14 distribution to the mother.  Lincoln National issued a check to
15 the mother in the amount of $290,487.96.
16         In July 2001, the son called Lincoln National and was
17 informed by the company that it had paid the death claim in
18 full.  The son questioned the change of beneficiary, suggesting
19 that the change was made without the father's knowledge.
20         This lawsuit then ensued.
21         The first legal issue for the Court is whether the
22 father authorized the mother to sign his name and, if so,
23 whether the authorization was legal.  The court has already
24 found that the father knowingly, willingly, and competently
25 authorized the mother to sign his name.  Moreover, even if this

1  issue is an affirmative defense, defendants have overwhelmingly
2  met it.  That is, the defendants have established by a
3  preponderance of the evidence, indeed overwhelmingly, that the
4  father knowingly, willingly, and competently authorized the
5  mother to sign the same.
6         Also, under Alabama law, a person, even if physically
7  and mentally capable of signing her own name, may authorize
8  another to do so in the presence of a witness.  In this regard,
9  the Court cites the cases of *Lewis v. Watson*, 13 So. 570 (Ala.
10 1993), *Middlebrooks v. Barefoot*, 25 So. 102 (Ala. 1899), *Purser
11 v. Smith*, 76 So. 931 (Ala. 1917).  In *Middlebrooks* the Alabama
12 Supreme Court stated that a person, quote, may affix his
13 signature by the hand of another, the subscription being made in
14 his presence and at his direction, however capable he may be
15 mentally and physically at the time of the writing of his own
16 name, end of quote.
17         The courts from other jurisdictions have similarly
18 held.  In *Patterson v. Leyden*, 947 F. Supp. 1211 (N.D. Ill
19 1996), the Court stated that under Illinois law, one person may
20 authorize another to sign a document on his behalf, and in
21 *Phillip Werlein, Ltd. v. Daniels*, 538 So.2d 722 (La. Ct. App.
22 4th Cir. 1989), at page 725, the Court stated that, quote, a
23 person is bound by her signature being executed by another
24 person when done in her presence and under her authority, end of
25 quote.

1       Here, the father's authorization of the mother to sign
2  his name was legal.
3       The Court now turns to the four claims in this case:
4  breach of contract; tortious interference with contract;
5  negligence; and fraud.
6       The elements of an action for breach of contract are:
7  existence of a contract between plaintiff and defendant;
8  performance by the plaintiff; defendant's failure to perform;
9  and resulting damage to the plaintiff.  Here the son alleges
10 that the original application for an annuity, which was signed
11 by the father, mother and Robinson, constituted a valid annuity
12 contract.  He further argues that the subsequent change to this
13 contract was not valid because the owner of the annuity did not
14 sign it and did not authorize anyone else to sign it.  The
15 breach of contract claim is meritless because, as the Court has
16 found, the subsequent change to the annuity was valid; that is,
17 the mother and father legally changed the annuity to designate
18 the mother as the primary beneficiary, while designating the son
19 as the contingent beneficiary.
20      To establish a tortious interference claim, the son
21 must prove the following:  That there was a contract between him
22 and another; that the defendants knew of the contract; that they
23 intentionally disrupted or interfered with the performance of
24 this contract; and that the son was harmed by the defendants'
25 conduct.  The tortious interference claim fails for two

1  reasons.  First, as the court stated in *Waddell & Reed, Inc. v.*
2  *United Investors Life Insurance Company*, 875 So.2d 1143 (Ala.
3  2003), at page 1154, quote, a party to a contract or a business
4  relationship cannot be liable for tortious interference with
5  that contract or business relationship.  In *BellSouth Mobility,*
6  *Inc. v. Cellulink, Inc.*, 814 So.2d 203 (Ala. 2001), at page 212,
7  the Court concluded that the plaintiff could not maintain -- I
8  should say the court, quote, concluded that the plaintiff could
9  not maintain a tortious interference action in the context of a
10 three-way relationship where the parties were mutually dependent
11 upon one another, because, in that context the plaintiff could
12 not establish, as a matter of law, that the defendant was a
13 stranger to the relationship, end of quote.
14         Second, the tortious interference claim fails because,
15 for reasons already given, the son simply had no claim to the
16 annuity benefits.  The mother and father knowingly, willingly,
17 competently, and legally changed the annuity to designate the
18 mother as the primary beneficiary.
19         In *Life Insurance Company of Georgia v. Smith*, 719
20 So.2d 797, (Ala. 1998), at page 809, the Court stated that,
21 quote, forgery is a species of fraud under Alabama law.  In
22 *Duckworth v. National Bank of Commerce*, 656 So.2d 340 (Ala.
23 1994), the Court held that a bank was liable for fraud when it
24 knew that a party to a contract had forged a signature on a bank
25 document, but the bank failed to report that knowledge.  The

1  bank had held the mortgage of property that the plaintiff
2  investors had been paying a developer to build upon, and,
3  therefore, the Court found that the bank had a duty under the
4  law to tell the plaintiffs that the developer forged a signature
5  on a document.
6          The forgery claim fails here because there was, simply
7  put, no forgery.  The father knowingly, willingly, competently,
8  and thus legally authorized the mother to sign his name.
9          Finally, the son claims that the banks failed to
10 provide Robinson with proper policies, and failed to educate or
11 train her regarding the sale and administration of an annuity
12 contract.  This negligence claim fails because even if Robinson
13 was negligent, the son was not injured or damaged.  The mother
14 and father, as stated, knowingly, willingly, competently, and
15 legally later changed the annuity to designate the mother as the
16 primary beneficiary.
17         Do I need to make any additional findings, Mrs. Crouch?
18         MS. AUSTIN:  No, Your Honor.
19         THE COURT:  AmSouth Bank counsel?  Do I need to make
20 any additional findings?
21         MR. PATERSON:  No, sir.  Thank you.
22         THE COURT:  Anything else from the plaintiff
23 Mr. Crouch?
24         MR. McHARD:  No, Your Honor.
25         THE COURT:  The Court will enter a judgment finding, as

```
 1  I said, in favor of the defendants and against the plaintiff.
 2         (Excerpt concluded at 9:22 a.m.)
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```